UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ARMOR ALL/STP PRODUCTS COMPANY,<br>    Plaintiff,<br><br>v.<br><br>TSI PRODUCTS, INC., MICHAEL QUEST, and WILLIAM QUEST,<br>    Defendants. | No. 3:17-cv-1131 (MPS) |

**RULING ON MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

Plaintiff, Armor All/STP Products Company ("Plaintiff"), brings this action against Defendants TSI Products, Inc., Michael Quest, and William Quest (collectively, "Defendants") for allegedly deliberately copying Plaintiff's trademarks, trade dress, and creative works in order to compete with Plaintiff in the market for "do-it-yourself" refrigerant kits for vehicle air conditioners. Plaintiff brings claims for trademark infringement, trademark counterfeiting, unfair competition, trade dress infringement, and false advertising under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and copyright infringement under the Copyright Act, 17 U.S.C. § 501 *et seq.* Plaintiff also brings claims for trademark infringement, unfair competition, and unjust enrichment under Connecticut common law, and for unfair competition under the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §§ 42-110a, *et seq.* Finally, Plaintiff brings a claim for false patent marking under 35 U.S.C. § 292. (*See* Amended Complaint, ECF No. 9.)

Defendants Michael and William Quest ("the Quests") move to dismiss the complaint for lack of personal jurisdiction (ECF No. 24.)[1] Because the complaint alleges in-state tortious conduct

---

[1] The Defendants have also moved to compel arbitration (ECF No. 22) and to transfer venue to the Northern District of Texas (ECF No. 26). I address those motions in separate rulings.

1

and Connecticut's long-arm statute confers jurisdiction over such conduct, and because exercising jurisdiction would comport with due process, the motion is DENIED.

I. Factual Allegations

The relevant jurisdictional facts are taken from the amended complaint (ECF No. 9) and the exhibits attached to the parties' briefs. The factual allegations are set out more fully in another ruling issued today in this case, familiarity with which is assumed. (ECF No. 59.) What follows is a summary of the allegations pertinent to this motion.

A. Plaintiff's Brand and Products

Plaintiff Armor All/STP Products Company is a corporation organized under the laws of Delaware with its principal place of business in Danbury, Connecticut. (ECF No. 9 ¶ 2.) Plaintiff is "the recognized leader" in the industry of "do-it-yourself" kits for replenishing lost chemical refrigerant in vehicle air conditioners. (ECF No. 9 ¶ 12.) Plaintiff's products allow consumers to add refrigerant to their own vehicles, avoiding the need to take the car to be serviced by a professional mechanic. (*Id*.) Plaintiff sells its products at major hardware and automotive supply retail stores throughout the United States. (*Id*. ¶ 15.) Plaintiff also maintains three websites that provide consumers with instructions for using its kits and other information about its products. (*Id*. ¶ 17.)

Plaintiff's brands of do-it-yourself refrigerant kits and refill products are sold under several trademarks, including "HIGH MILEAGE," "A/C PRO," "ARCTIC FREEZE," "SUB-ZERO," "EZ CHILL," and "BIG CHILL." (*Id*. ¶ 14.) The United States Patent and Trademark Office has issued Plaintiff two federal trademark registrations for the "HIGH MILEAGE" mark, one for the word mark HIGH MILEAGE for use in connection with "refrigerant chemical preparations for use in connection with automobile air conditioners," and one for a stylized mark displaying the word

HIGH in diagonal, upward sloping letters above the word MILEAGE, which is also displayed in diagonal, upward sloping letters in "an odometer style format." (*Id*. ¶ 18.) The HIGH MILEAGE marks were registered in 2011 and 2012, respectively, but Plaintiff and its predecessor IDQ have sold refrigerant products under the marks since at least as early as 2004, using online, print, and in-store advertising. (*Id*. ¶ 20.) The HIGH MILEAGE marks were originally registered to IDQ but were acquired by Plaintiff during its merger with IDQ in 2015. (*Id*. ¶ 23.)

Plaintiff also uses certain trade dress on its "A/C PRO" and "HIGH MILEAGE" families of products. (*Id*. ¶ 24.) Plaintiff's A/C PRO trade dress includes a black canister with a large black and white A/C PRO logo along the top of the front face of the canister with a black and white image of a man positioned behind the logo, a blue banner along the middle of the canister, and a set of icons and short phrases along the bottom of the canister summarizing the benefits of the product. (*Id*. ¶ 25.)

Plaintiff has sold do-it-yourself refrigerant products featuring its BIG CHILL and ARCTIC FREEZE marks since 2005. (*Id*. ¶ 28.) Plaintiff's BIG CHILL product line features a "prominent mountain design mark and trade dress," displaying a snow-covered mountain behind the BIG CHILL logo on the face of the product. (*Id*.) Plaintiff's ARCTIC FREEZE products have featured a blue trade dress since 2005. (*Id*. ¶ 29.) In 2014, Plaintiff commissioned the design of new ARCTIC FREEZE product labels and advertising materials featuring images of snow-covered mountains. (*Id*. ¶ 30.) Plaintiff began distributing ARCTIC FREEZE products with the redesigned label featuring the snow-covered mountain design mark in 2016. (*Id*. ¶ 32.)

In 2017, Plaintiff filed applications with the U.S. Copyright Office to register as creative works the labels featured on its A/C PRO and HIGH MILEAGE-branded products. (*Id*. ¶ 35.)

**B. Defendants' Brand and Products**

Defendant TSI Products, Inc. ("TSI") is a Texas corporation with its principal place of business in Texas. (*Id.* ¶ 3.) Defendants William and Michael Quest together founded the "Avalanche" division of TSI Products, Inc. in 2014. (ECF No. 9 ¶ 38.) The Avalanche division produces automotive refrigerant products. (*Id.*) Defendant Michael Quest is the president of the Avalanche division of TSI. (*Id.* ¶ 5.) He resides in Tennessee, and has also resided in North Carolina and Texas at times relevant to this dispute. (ECF No. 31 ¶ 4.) Defendant William Quest is co-founder of the "Avalanche" division of TSI and is Chairman of TSI's Board of Directors. (ECF No. 9 ¶ 6; ECF No. 30 ¶ 2.) He has resided in Texas at all times relevant to this dispute. (ECF No. 9 ¶ 6.)

Plaintiff alleges that in January 2015, the Quests caused TSI to launch a family of Avalanche refrigerant products featuring a blue and white trade dress with a label design and snow-covered mountain design mark similar to those used by Plaintiff. (*Id*. ¶ 43.) Since 2015, Avalanche products have competed directly with Plaintiff's BIG CHILL and ARCTIC FREEZE products. (*Id*. ¶ 43.)

Defendants launched a new line of premium refrigerant products, the Avalanche Black Diamond products, in April 2016. These products allegedly compete directly with Plaintiff's A/C PRO line of premium products. (*Id*. ¶ 47.) Plaintiff alleges that one of these products uses a "counterfeit imitation of Plaintiff's HIGH MILEAGE Marks," and replaced the blue and white color scheme used on Defendants' mid-tier refrigerant products with a dark grey or black label resembling Plaintiff's A/C Pro and High Mileage trade dress. (*Id*. ¶¶ 47-48.) Plaintiff alleges that these products feature a stylized snow-covered mountain logo resembling Plaintiff's ARCTIC FREEZE mountain mark and compete directly with Plaintiff's ARCTIC FREEZE products. (*Id*. ¶ 47.) The products also feature the words "HIGH MILEAGE" in upward-sloping diagonal lettering

4

and the word "MILEAGE" in an "odometer format." (*Id.* ¶ 50.) Plaintiff alleges that TSI copied its trade dress and trademarks and used them on Avalanche products with the intent to trade on Plaintiff's recognition in the market and goodwill. (*Id.* ¶ 45.)

Plaintiff alleges that Defendants sell products, including the infringing Avalanche products, at AutoZone retail stores throughout Connecticut. (ECF No. 9 ¶ 54.) Plaintiff points to a display at an AutoZone retail store in Danbury, Connecticut, where Defendants' allegedly infringing product is located directly next to Plaintiff's own genuine product. (ECF No. 9 ¶ 53.) Plaintiff also claims that, in a recent purchase of the Defendants' counterfeit product at the Danbury AutoZone location, the name of Plaintiff's genuine product erroneously appeared on the receipt, thereby evidencing "actual confusion." (ECF No. 9 ¶ 54.) Defendants' products may be ordered online through the AutoZone website and picked up at AutoZone retail locations in Connecticut. (*Id.*; *see also* ECF No. 9-3.) Defendants also allegedly market products imitating A/C Pro Trade Dress at the Danbury AutoZone (*id.* ¶ 54), at other AutoZone stores in Connecticut (*id.*), and through a website that allegedly markets the infringing products (*id.* ¶ 60.)

Plaintiff alleges that Defendants Michael and William Quest are personally involved "in causing and orchestrating the sale and marketing of Avalanche products," including those that infringe on Plaintiff's trademarks and imitate Plaintiff's trade dress. (*Id.* ¶ 58.) Plaintiff alleges that Defendants deliberately copied Plaintiff's trademarks and trade dress, and that the Quests each acquired specific knowledge of Plaintiff's trademarks and trade dress from their previous association with Plaintiff's corporate predecessors and long before they assumed their current positions with Defendant TSI Products. (ECF No. 9 ¶¶ 57-58.)

## II. Legal Standard

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that the Court has jurisdiction over each defendant. *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999). Where, as here, the court has not held an evidentiary hearing, "the plaintiff need make only a *prima facie* showing of jurisdiction through its own affidavits and supporting materials." *Bank Brussels*, 171 F.3d at 784. At this stage, "all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor." *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001) (internal quotation marks and alterations omitted). "Eventually, of course, the plaintiff must establish jurisdiction by a preponderance of the evidence, either at a pretrial evidentiary hearing or at trial. But until such a hearing is held, a prima facie showing suffices, notwithstanding any controverting presentation by the moving party, to defeat the motion." *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981).

Because none of the federal statutes invoked by Plaintiff's claims provides for nationwide service of process, I must look to the law of Connecticut, as the forum state, to determine personal jurisdiction. *Am. Wholesalers Underwriting, Ltd. v. Am. Wholesale Ins. Grp., Inc.*, 312 F. Supp. 2d 247, 251 (D. Conn. 2004). More specifically, in this case, assessing personal jurisdiction requires a two-step inquiry. *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010). "First, we apply the forum state's long-arm statute." *Id.* "If the long-arm statute permits personal jurisdiction, the second step is to analyze whether personal jurisdiction comports with the Due Process Clause of the United States Constitution." *Id.* at 164.

### III. Discussion

#### A. Connecticut's Long-Arm Statute

The Quests argue that the Court lacks jurisdiction under any provision of the applicable Connecticut long-arm statute. That statute grants jurisdiction over an individual "who in person or through an agent:

    (1) [t]ransacts any business within the state;

    (2) commits a tortious act within the state . . . ; [or]

    (3) commits a tortious act outside the state causing injury to person or property within the state . . . ."

Conn. Gen. Stat. § 52-59b(a).[2] Under subsection (a)(3), which applies to a defendant's allegedly tortious conduct occurring entirely outside the state, a plaintiff must also show that "such person or agent . . . regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or . . . expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce . . . ." *Id.*

The Quests focus on these additional requirements of subsection (a)(3), arguing that Plaintiff cannot satisfy them and, therefore, that the Court lacks jurisdiction. This argument rests on a flawed premise, which is that the infringement alleged in the complaint constitutes "a tortious act *outside* the state" and thus implicates subsection (a)(3). But "in cases of trade-mark infringement and unfair competition, the wrong takes place not where the deceptive labels are affixed to the goods . . . , but where the passing off occurs, i.e., where the deceived customer buys the defendant's product in the belief that he is buying the plaintiff's." *Vanity Fair Mills, Inc. v. T. Eaton Co.*, 234 F.2d 633, 639 (2d Cir. 1956); *see also Broad. Mktg. Int'l, Ltd. v. Prosource Sales*

---

[2] These are the subsections Plaintiff invokes to support personal jurisdiction over the Quests. (ECF No. 42 at 4.)

7

*& Mktg., Inc.*, 345 F. Supp. 2d 1053, 1058 (D. Conn. 2004) ("Under Connecticut law, trademark infringement is considered a 'tort' for the purposes of determining personal jurisdiction pursuant to the state long-arm statute."). The same is true of copyright infringement, which Plaintiff also alleges here. *Evergreen Media Holdings, LLC v. Warren*, 105 F. Supp. 3d 192, 198 (D. Conn. 2015). As discussed below, Plaintiff's complaint includes allegations that "deceived customer[s]" bought TSI's product in Connecticut as a result of confusion with the Plaintiff's product. Therefore, the relevant provision of the long-arm statute is § 52-59(a)(2), covering tortious acts *inside* the state. Further, "[t]he plaintiff's burden of showing where a passing off occurs is low, requiring only an offering for sale of even one copy of an infringing product in the state, even if no sale results." *Am. Wholesalers Underwriting, Ltd.*, 312 F. Supp. 2d at 253.

The Plaintiff carries its burden here. Plaintiff points to a specific AutoZone retail store in Danbury, Connecticut, where two of TSI's allegedly-infringing products are offered for sale. (ECF No. 9 ¶¶ 53-54.) In one instance, Plaintiff alleges, TSI's counterfeit product was confusingly placed next to the Plaintiff's genuine product. *Id.* at ¶ 53. In another, due to "actual confusion" between Plaintiff's products and TSI's products, the name of the Plaintiff's product incorrectly appeared on a receipt in a purchase of TSI's product. *Id.* at ¶ 54. Each of these allegations suffices to establish a *prima facie* case that Defendants' wrongful conduct constituted a tort within Connecticut, satisfying the jurisdictional requirement of the long-arm statute. Conn. Gen. Stat. § 52-59b(a)(2).

Ordinarily, jurisdiction lies under the in-state tort provision of the long-arm statute only if the defendant was physically present when committing the tort. *See, e.g.*, *Bank Brussels*, 171 F.3d at 790 (noting that the analogous provision in New York "reaches only tortious acts performed by a defendant who was physically present in New York when he performed the wrongful act")

(quotations omitted); *see also Zartolas v. Nisenfeld*, 184 Conn. 471, 474 (1981) ("[I]n enacting § 52-59b, the [Connecticut] legislature used New York Civil Practice Law § 302 (McKinney 1980-81 Supp.) as a model. . . . We therefore find pertinent the judicial interpretation given to that New York statute.") (citations omitted). However, courts routinely hold that the Connecticut provision and the analogous New York provision apply as long as the defendant's agent was physically present, with "agent" being interpreted broadly in this context. *See Evergreen Media Holdings, LLC*, 105 F. Supp. 3d at 198 (collecting cases); *Communico, Ltd. v. DecisionWise, Inc.*, No. 3:14-CV-1887 (RNC), 2018 WL 1525711, at *3 (D. Conn. Mar. 28, 2018) (holding that third-party distributors were agents for the purposes of the Connecticut long-arm statute); *see also* Conn. Gen. Stat. § 52-59b(a) (referring to acts committed "in person or through an agent"). Plaintiff alleges that TSI "offers for sale products in the United States that are regularly sold to retailers and customers" in Connecticut and that those products are "sold through AutoZone retail stores." (ECF No. 9 ¶¶ 7, 55.) Plaintiff alleges that such sales activities "are directed by Defendants Michael Quest and William Quest." (*Id.* ¶ 7.) Defendants acknowledge contracts with AutoZone that resulted in the sale of their products in the state. (ECF No. 31 ¶ 31.) Thus, Plaintiff has made out a *prima facie* case that Defendants acted through an agent to commit a tort in Connecticut.

Next, the Quests contend that they are not subject to the Court's jurisdiction because the complaint does not allege that they *personally* directed AutoZone to commit torts in Connecticut, and TSI's conduct cannot be imputed to them. While it is true that the acts of a corporation are not "automatically attributed to top level employees," (ECF No. 53 at 3), the Quests' "status as employees does not somehow insulate them from jurisdiction," *Calder v. Jones*, 465 U.S. 783, 790 (1984); *see also Bankers' Bank Ne. v. Ayer*, No. 3:11-CV-262 (JBA), 2012 WL 1067677, at *4 (D. Conn. Mar. 30, 2012) (collecting recent Connecticut cases rejecting the "fiduciary shield" doctrine

9

and holding that an employee may be subject to jurisdiction for acts taken on behalf of a corporation). In the absence of an evidentiary hearing, the Court considers all allegations "in the light most favorable to the plaintiff." *Whitaker*, 261 F.3d at 208 (quotation omitted). Under this standard, there are sufficient allegations in the complaint to establish a *prima facie* case that the Quests personally caused the sale of infringing products. Specifically, the complaint alleges that each of the Quests (1) had personal knowledge, obtained prior to and independently from their employment with TSI, of Plaintiff's brands and products (ECF No. 9 ¶¶ 56-57); (2) personally caused TSI to enter the refrigerant industry using trade dress and marks similar to those used by Plaintiff (ECF No. 9 ¶ 43); (3) acted deliberately to copy Plaintiff's trademarks and trade dress (ECF No. ¶ 58); and (4) participated in "causing and orchestrating the sales and marketing of . . . counterfeit imitations of Plaintiff's" products (ECF No. 9 ¶¶ 7, 58). Taken together and construed in the light most favorable to the Plaintiff, these allegations support an inference that the Quests were personally responsible for the sale of infringing products in Connecticut. Plaintiff thus carries its burden of making a *prima facie* showing the Court has jurisdiction under Connecticut's long-arm statute.

There is some dispute in the record over William Quest's personal involvement in the sale and marketing of Avalanche products. While Plaintiff alleges that the Quests have both personally orchestrated the marketing and sale of infringing products (ECF No. 9 ¶ 58), William Quest asserts that he has not personally had any "direct role" (ECF No. 30 ¶ 27.) "Where the plaintiff's complaint and the defendant's affidavits conflict, the Court may provisionally accept disputed factual allegations as true" in deciding whether the plaintiff has made a *prima facie* showing of personal jurisdiction. *Gerber Trade Fin., Inc. v. Davis, Sita & Co., P.A.*, 128 F. Supp. 2d 86, 89-90 (D. Conn. 2001) (quoting *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 153 (2d Cir.

1999). For purposes of this motion, I provisionally credit Plaintiff's allegations and find it has carried its burden to make out a *prima facie* case; however, I must "eventually . . . determine whether the defendant in fact subjected itself to the court's jurisdiction. . . . either at an evidentiary hearing or at trial." *Credit Lyonnais*, 183 F.3d at 153. Where, as here, the Quests have submitted affidavits that contest some of the Plaintiff's jurisdictional allegations, the Plaintiff retains the burden to prove jurisdiction by a preponderance of the evidence, *id.*, and the Defendants are free to move for summary judgment on that issue after an opportunity for discovery.

### B. Due Process

Given that the Court may exercise personal jurisdiction over the Quests under Connecticut's long-arm statute, the next question is whether doing so would comport with due process. The due process "analysis has two related components: the 'minimum contacts' inquiry and the 'reasonableness' inquiry." *Chloe*, 616 F.3d at 163.

#### 1. Minimum Contacts

The minimum contacts requirement is met when "the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction." *Id.* at 164. "Where the claim arises out of, or relates to, the defendant's contacts with the forum—i.e., specific jurisdiction—minimum contacts exist where the defendant purposefully availed [himself] of the privilege of doing business in the forum and could foresee being haled into court there." *Bank Brussels*, 305 F.3d at 127 (quotations omitted). "So long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985). Simply placing goods into the stream of commerce may not be enough to establish "minimum contacts" without "something more," *J. McIntyre Mach., Ltd. v. Nicastro*, 564

11

U.S. 873, 889 (2011) (Breyer, J., concurring); however, a regular course of sales in a particular state or other actions intentionally targeting consumers in that state are likely sufficient. *Id.*

In this case, the Defendants allegedly engaged intentionally in a regular course of business in Connecticut and reached Connecticut consumers with marketing. Specifically, the Plaintiff alleges that Defendants regularly sell their products in the United States through AutoZone (ECF No. 9 ¶ 55), and Plaintiff points out that AutoZone's website indicates that it has 47 locations in Connecticut (ECF No. 42 at 3). Plaintiff's complaint includes a photograph of Defendants' products available at a Danbury AutoZone location. (ECF No. 9 ¶¶ 53-54.) Connecticut consumers can also purchase Defendants' products online through AutoZone and then pick them up at AutoZone stores. (*Id.* at ¶ 54; ECFO No. 9-3.) And Defendants maintain a website marketing their allegedly infringing products. (ECF No. 9 ¶ 60.)

The Quests argue that neither they nor TSI intentionally targets Connecticut with their products. Rather, they contract with AutoZone in Tennessee, AutoZone picks up the products in Texas, and the products are distributed to Connecticut through AutoZone's warehouse in Pennsylvania. (ECF No. 31 ¶ 31.) Even when this account is credited, however, the record as a whole, again, when construed in Plaintiff's favor, supports a finding of personal jurisdiction. The Defendants assert that "only 1% of TSI's total sales of the accused Avalanche® Products occur in the state of Connecticut." (ECF No. 31 ¶ 31.) Given Connecticut's relative size, however, 1% of total sales is consistent with an intention to target *every* state. The Defendants' website similarly suggests an intention to reach a nationwide audience, including Connecticut. (*See* ECF No. 9 ¶¶60, 61, 63.) Together with the website, the distribution arrangement with AutoZone is sufficient to establish an "attempt to serve" Connecticut. *See Communico, Ltd.*, 2018 WL 1525711 at *6 ("[C]ourts have found that although the sale of a defendant's product by a third-party distributor

is alone insufficient to establish personal jurisdiction, it can be established when a defendant has advertised its product over the internet, a third-party distributor has sold the product in the forum state, and an agreement between the defendant and the distributor contemplated sales in the forum state."). Plaintiff has thus alleged enough facts to carry its burden to make out a *prima facie* case for personal jurisdiction at this stage because it "may be able to show that [Defendants] ha[ve] attempted to serve the Connecticut market through [their] distribution arrangements with [Autozone]." *Id.*

The Quests next contend that they do not have the requisite contacts with Connecticut *personally* to establish minimum contacts. As discussed earlier, though, the Plaintiff alleges that the Quests are personally responsible for the development, marketing, and sale of the allegedly infringing products and that TSI did not even participate in the relevant market until the Quests joined the company. (ECF No. 9 ¶¶ 38, 41-43, 56–59.) Even without physically visiting the state, then, the Quests purposefully availed themselves of the "the privilege of doing business in [Connecticut]," *Bank Brussels*, 305 F.3d at 127, by causing the corporate defendant to undertake regular sales of its products here through a distributor and with the support of its website advertising.

### 2. Reasonableness

Once a plaintiff makes out a *prima facie* case supporting personal jurisdiction, defendants may still defeat jurisdiction if they can make a "compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp.*, 471 U.S. 462, 477 (1985). The key question is "whether the assertion of personal jurisdiction comports with traditional notions of fair play and substantial justice—that is, whether it is reasonable to exercise personal jurisdiction under the circumstances of the particular case."

*Chloe*, 616 F.3d at 164 (quotations omitted). "Courts are to consider five factors in evaluating reasonableness: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." *Bank Brussels*, 305 F.3d at 129 (2d Cir. 2002) (quotations omitted).

Applying these factors, the Quests claim that retaining local counsel and traveling to Connecticut poses a burden. They also question Connecticut's interest in the litigation, claiming that any tortious conduct actually occurred in Texas. These objections are unpersuasive. Most importantly, Connecticut has significant interest in this litigation. The tort in this case occurred in Connecticut for the purposes of personal jurisdiction. *Vanity Fair Mills, Inc.*, 234 F.2d at 639. The Plaintiff alleges that Connecticut consumers are being misled by the Defendants' misappropriation of the Plaintiff's trademark and trade dress. (ECF No. 9 ¶ 53-54.) The trademarks and dress at issue are held by a corporation with its principal place of business in Connecticut. (ECF No. 9 ¶¶ 18, 20, 24). Traveling to this forum may be inconvenient for Defendants, but there is no reason to think that requiring Plaintiff to travel to Texas instead would be more efficient. Further, granting the Quests' motion could force the Plaintiff to file new lawsuits against them in other jurisdictions in addition to prosecuting this action against TSI. This would be inconsistent with both the Plaintiff's interest in obtaining convenient and effective relief and the interstate judicial system's interest in obtaining the most efficient resolution of the controversy. Ultimately, the Quests have not "present[ed] a compelling case" that exercising jurisdiction over them would be unreasonable. *Burger King Corp.*, 471 U.S. at 477.

### IV. Conclusion

For the reasons stated above, the Quests' motion to dismiss for lack of personal jurisdiction (ECF No. 24) is DENIED.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut
August 30, 2018