# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| THE ARMOR ALL/STP PRODUCTS COMPANY,<br><br>*Plaintiff,*<br><br>v.<br><br>TSI PRODUCTS, INC., MICHAEL QUEST AND WILLIAM QUEST<br><br>*Defendants.* | CIVIL ACTION NO. 3:17-CV-01131 (LEAD)<br><br>CIVIL ACTION NO. 3:18-cv-1682 (CONSOLIDATED) |

## MEMORANDUM OF LAW IN SUPPORT OF THE ARMOR ALL DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT FILED IN CIVIL ACTION NO. 3:18-CV-1682

## TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ...........................................................................................1

II.  PRELIMINARY STATEMENT ....................................................................1

III.  LEGAL STANDARD ....................................................................................2

IV.  ARGUMENT..................................................................................................4

  A.  TSI'S TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION CLAIMS (COUNTS 1 AND 2) SHOULD BE DISMISSED ......................................................................................4

    1.  TSI Has Failed To Plead Facts Sufficient To Support A Plausible Claim for Trademark Infringement or Unfair Competition Based Upon Keyword Advertising......................................................4

    2.  TSI Has Failed To Plead Facts Sufficient To Support Its Claim Of Unfair Competition Based Upon the Alleged Mountain Logo..........7

  B.  TSI'S TRADEMARK DILUTION CLAIM (COUNT 3) SHOULD BE DISMISSED BECAUSE THE AVALANCHE MARK IS NOT FAMOUS .......................................................................................10

    1.  Federal Trademark Dilution Claims Are Limited to Famous Marks .......10

    2.  TSI Has Failed To Allege Plausibly That The AVALANCHE Mark Is Famous ...........................................................................12

  C.  TSI'S FALSE ADVERTISING CLAIM (COUNT 4) SHOULD BE DISMISSED BECAUSE TSI BASES ITS CLAIM ON NON-ACTIONABLE PUFFERY ..................................................................13

  D.  TSI'S ANTITRUST CLAIMS UNDER THE SHERMAN ACT SHOULD BE DISMISSED ....................................................................15

    1.  TSI Fails to Define the Relevant Market.................................................16

    2.  TSI Fails to Allege Antitrust Injury.........................................................18

    3.  TSI Fails to Allege Unlawful, Anticompetitive Conduct.........................20

      a.  TSI's Section 1 claim (Count 5) fails to identify a conspiracy or any illegal conduct beyond a single contract that cut TSI out of a single retailer for one year ..................................................20

      b.  TSI's Section 2 monopolization claims (Counts 6-8) fail to identify anticompetitive behavior beyond mere recitation of the elements of a monopoly claim .................................................21

V.  CONCLUSION ............................................................................................23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*4C Foods Corp. v. Package Automation Co.,*
    No. 14-civ-2212, 2014 WL 6602535 (S.D.N.Y. Nov. 18, 2014) ........................................1

*A.V.E.L.A., Inc. v. Estate of Marilyn Monroe, LLC,*
    241 F. Supp. 3d 461 (S.D.N.Y. 2017) ......................................................................16, 22

*Acad. of Motion Picture Arts & Scis. v. GoDaddy.com, Inc.,*
    10-cv-03738, 2015 WL 5311085 (C.D. Cal. Sept. 10, 2015).............................................5

*AD/SAT, Div. of Skylight, Inc. v. Assoc. Press,*
    181 F.3d 216 (2d Cir. 1999) ...........................................................................................16

*Affinity LLC v. GfK Mediamark Research & Intelligence, LLC,*
    547 F. App'x 54 (2d Cir. 2013)........................................................................................21

*Allied Interstate LLC v. Kimmel & Silverman P.C.,*
    No. 12 Civ. 4204, 2013 WL 4245987 (S.D.N.Y. Aug. 12, 2013) ......................................6

*Alzheimer's Disease & Related Disorders Ass'n, Inc. v. Alzheimer's Found. Of Am., Inc.,*
    307 F. Supp. 3d 260 (S.D.N.Y. 2018) ..............................................................................5

*Alzheimer's Found. of Am., Inc. v. Alzheimer's Disease & Related Disorders Ass'n, Inc.,*
    No. 10-civ-3314, 2015 WL 4033019 (S.D.N.Y. June 29, 2015).........................................5

*Am. Footwear Corp. v. Gen. Footwear Co.,*
    609 F.2d 655 (2d Cir. 1979) .............................................................................................4

*Anderson News, L.L.C. v. Am. Media, Inc.,*
    680 F.3d 162 (2d Cir. 2012) ...........................................................................................20

*Arista Records LLC v. Lime Group LLC,*
    532 F.Supp.2d 556 (S.D.N.Y. 2007) ...............................................................................15

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)...........................................................................................1, 3, 9, 21

*Atl. Richfield Co. v. United States Petroleum Co.,*
    495 U.S. 328 (1990)........................................................................................................18

*Bailey v. Interbay Funding, LLC,*
    No. 3:17-CV-1457, 2018 WL 1660553 (D. Conn. Apr. 4, 2018) .......................................8

*Balaklaw v. Lovell,*
    14 F.3d 793 (2d Cir. 1994) ........................................................................ 18

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ............................................................... 2, 3, 16, 21

*Bookhouse of Stuyvesant Plaza, Inc. v. Amazon.com, Inc.,*
    985 F. Supp. 2d 612 (S.D.N.Y. 2013) ..................................................... 19

*Bridal Expo, Inc. v. Van Florestein,*
    No. 4:08-cv-03777, 2009 WL 255862 (S.D. Tex. Feb. 3, 2009) ................... 14

*Capital Imaging Assocs. v. Mohawk Valley Med. Assocs.,*
    996 F.2d 537, 543 (2d Cir. 1993) ............................................................ 19

*Cinema Vill. Cinemart, Inc. v. Regal Entm't Grp.,*
    No. 15-cv-05488, 2016 WL 5719790 (S.D.N.Y. Sept. 29, 2016) .................. 17

*CollegeSource, Inc. v. AcademyOne, Inc.,*
    No. 10-3542, 2012 WL 526921 (E.D. Pa., Oct. 25, 2012) ............................. 6

*Concord Assocs., L.P. v. Entm't Props. Tr.,*
    817 F.3d 46 (2d Cir. 2016) ...................................................................... 15

*Copperweld Corp. v. Indep. Tube Corp.,*
    467 U.S. 752 (1984) ........................................................................... 21, 23

*E & L Consulting, Ltd. v. Doman Indus. Ltd.,*
    472 F.3d 23 (2d Cir. 2006) ................................................................. 20, 21

*EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.,*
    228 F.3d 56 (2d Cir. 2000) ........................................................................ 7

*FLM Collision Parts, Inc. v. Ford Motor Co.,*
    543 F.2d 1019 (2d Cir.1976) .................................................................... 22

*Friesland Brands, B.V. v. Vietnam Nat'l Milk Co.,*
    228 F. Supp. 2d 399 (S.D.N.Y. 2002) ...................................................... 11

*FTC v. Cardinal Health, Inc.,*
    12 F.Supp.2d 34 (D.D.C. 1998) ............................................................... 16

*FTC v. Whole Foods Market, Inc.*
    548 F.3d 1028, 1037 (D.C. Cir. 2008) ...................................................... 17

*General Steel Domestic Sales, LLC v. Chumley,*
    No. 10-cv-01398, 2013 WL 1900562 (D. Colo. May 7, 2013) .........................................5

*Global Brand Holdings, LLC v. Church & Dwight Co., Inc.,*
    No. 17-cv-6571, 2017 WL 6515419 (S.D.N.Y. Dec. 19, 2017)...................................11, 12

*Goldline, LLC v. Regal Assets, LLC,*
    No. 14-cv-03680, 2015 WL 1809301 (C.D. Cal. Apr. 21, 2015) .......................................5

*Gruner + Jahr USA Pub. v. Meredith Corp.,*
    991 F.2d 1072, 1074 (2d Cir. 1993) .................................................................................4

*H.L. Hayden Co. of N.Y., Inc. v. Siemens Med. Sys., Inc.,*
    879 F.2d 1005 (2d Cir. 1989) .........................................................................................22

*Hacket v. Feeney,*
    No. 2:09-cv-02075, 2011 WL 4007531 (D. Nev. Sept. 8, 2011) ....................................14

*Hearst Bus. Publ'g, Inc. v. W.G. Nichols, Inc.,*
    76 F. Supp. 2d 459 (S.D.N.Y. 1999) ..............................................................................13

*Hill's Pet Nutrition, Inc. v. Nutro Prods., Inc.,*
    258 F. Supp. 2d 1197 (D. Kan. 2003).............................................................................14

*Home Show Tours, Inc. v. Quad City Virtual, Inc.,*
    827 F. Supp. 2d 924 (S.D. Iowa 2011) ...........................................................................14

*In re Elevator Antitrust Litigation,*
    502 F.3d 47 (2d Cir. 2007) .............................................................................................15

*In re Livent, Inc. Noteholders Sec. Litig.,*
    151 F. Supp. 2d 371, (S.D.N.Y. 2001) .............................................................................3

*In re Parcel Tanker Shipping Servs. Antitrust Litig.,*
    541 F. Supp. 2d 487 (D. Conn. 2008)...............................................................................3

*In re Zinc Antitrust Litig.,*
    155 F. Supp. 3d 337 (S.D.N.Y. 2016) ............................................................................23

*Lipton v. Nature Co.,*
    71 F.3d 464 (2d Cir. 1995) .............................................................................................13

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.,*
    454 F.3d 108 (2d Cir. 2006) ...........................................................................................10

*Louisiana Wholesale Drug Co. v. Shire LLC,*
    929 F. Supp. 2d 256 (S.D.N.Y. 2013) ............................................................................20

*Luv N' Care, Ltd. V. Regent Baby Prod. Corp.,*
    841 F.Supp.2d 753 (S.D.N.Y. 2012) ............................................................... 12

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
    475 U.S. 574 (1986) ......................................................................................... 20

*Mayor & City Council of Baltimore, Md. v. Citigroup, Inc.,*
    709 F.3d 129 (2d Cir. 2013) ............................................................................... 1

*NicSand, Inc. v. 3M Co.,*
    507 F.3d 442 (6th Cir. 2007) ........................................................... 18, 19, 21, 22

*PepsiCo, Inc. v. Coca-Cola Co.,*
    315 F.3d 101 (2d Cir. 2002) ..................................................................16, 18, 21

*Pizza Hut, Inc. v. Papa John's Int'l, Inc.,*
    227 F.3d 489 (5th Cir. 2000) ....................................................................... 13, 14

*Rexall Sundown, Inc. v. Perrigo Co.,*
    651 F. Supp. 2d 9 (E.D.N.Y. 2009) ................................................................. 14

*Ruffolo v. Oppenheimer & Co.,*
    987 F.2d 129 (2d Cir. 1993) ............................................................................... 4

*RxUSA Wholesale, Inc. v. Alcon Lab., Inc.,*
    661 F. Supp. 2d 218 (E.D.N.Y. 2009) ............................................................. 22

*Savin Corp. v. Savin Grp.,*
    391 F.3d 439 (2d Cir. 2004) ............................................................................. 10

*Schutte Bagclosures Inc. v. Kwik Lok Corp.,*
    193 F. Supp. 3d 245 (S.D.N.Y. 2016) ......................................................... 10, 11

*Schwimmer v. Sony Corp. of Am.,*
    677 F.2d 946, (2d Cir. 1982) ........................................................................... 21

*Spinelli v. Nat'l Football League,*
    96 F. Supp. 3d 81 (S.D.N.Y. 2015) ................................................................. 16

*Starbucks Corp. v. Wolfe's Borough Coffee, Inc.,*
    588 F.3d 97 (2d Cir. 2009) ............................................................................... 12

*Surgical Care Ctr. of Hammond, L.C. v. Hosp. Serv. Dist. No. 1 of Tangipahoa Par.,*
    309 F.3d 836 (5th Cir. 2002) ........................................................................... 23

*Tampa Elec. Co. v. Nashville Coal Co.,*
    365 U.S. 320 (1961)..................................................................................................16

*Telebrands Corp. v. Del Labs., Inc.,*
    719 F.Supp.2d 283, 287 (S.D.N.Y. 2010) .........................................................8

*Thompson Med. Co. v. Pfizer Inc.,*
    753 F.2d 208 (2d Cir.1985) ..................................................................................7

*Time Warner Cable, Inc. v. DIRECTV, Inc.,*
    497 F.3d 144 (2d Cir. 2007) ........................................................................13, 14

*United States v. E.I. du Pont de Nemours & Co.,*
    351 U.S. 377 (1956)..............................................................................................16

*United States v. Grinnell Corp.,*
    384 U.S. 563, 570 (1966)......................................................................................21

*Trex Co., Inc. v. CPG Int'l LLC,*
    No. 5:17-cv-00005, 2017 WL 3272013 (W.D. Va. Aug. 1, 2017)....................14

*Virgin Atlantic Airways, Ltd v. British Airways PLC,*
    257 F.3d 256 (2d Cir. 2001) ................................................................................18

*Vizio, Inc. v. Klee,*
    No. 3:15-cv-00929 (VAB), 2016 WL 1305116 (D. Conn. Mar. 31, 2016)........................4

**Page(s)**

**Statutes**

15 U.S.C. § 1 ................................................................................................20, 22

15 U.S.C. § 2 ............................................................................................20, 22, 23

15 U.S.C. § 1114 .................................................................................................4

15 U.S.C. § 1125(a) ............................................................................................4

15 U.S.C. § 1125(c)(2)(A) ...............................................................10, 11, 12, 20


**Page(s)**

**Other Authorities**

Fed. R. Civ. P. 7.................................................................................................1

Fed. R. Civ. P. 12(b)(6) ....................................................................................1

J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* (5th Ed. 2018) ...........11

I.      **INTRODUCTION**

Pursuant to Fed. R. Civ. P. 12(b)(6) and L. Civ. R. 7(a), Defendants The Armor All/STP Products Company ("AA/STP"), Spectrum Brands Holdings, Inc. ("Spectrum"), Guy Andrysick ("Andrysick") and Robert DeRidder ("DeRidder") (collectively "the Armor All Defendants") respectfully submit this Memorandum of Law in support of their Motion to Dismiss the First Amended Complaint ("FAC," Dkt. No. 9) filed by Plaintiff TSI Products, Inc. ("TSI") in *TSI Products, Inc., v. The Armor All/STP Products Company*, C.A. No. 3:18-CV-1682.

II.     **PRELIMINARY STATEMENT**

Early dismissal of complaints that fail to meet the threshold requirement of plausibility promotes judicial economy and eliminates the unwarranted burden and expense of "unlock[ing] the doors of discovery." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *see also Mayor & City Council of Baltimore, Md. v. Citigroup, Inc*., 709 F.3d 129, 137 (2d Cir. 2013) (affirming motion to dismiss and declining to "propel[ ] defendants into expensive antitrust discovery on the basis of acts that could just as easily turn out to have been rational business behavior as they could a proscribed antitrust conspiracy"); *4C Foods Corp. v. Package Automation Co*., No. 14-civ-2212, 2014 WL 6602535, at *5 (S.D.N.Y. Nov. 18, 2014) (granting motion to dismiss, denying plaintiff's request "to authorize a fishing expedition so it can try to fill in that glaring hole in its pleading," noting "[t]he point of *Twombly* and *Iqbal* was to end the practice of subjecting parties to the considerable expense and inconvenience of litigation without cause").

The present action is a retaliatory lawsuit filed by TSI in response to an earlier action brought by AA/STP against TSI and two of its officers (*i.e*., the lead case in this consolidated litigation, *The Armor All/STP Products Co. v. TSI Products, Inc. et al*., C.A. No. 3:17-cv-01131). Rather than responding to AA/STP's complaint, TSI instead assembled its own retaliatory

complaint, which was filed in the U.S. District Court for the Northern District of Texas and eventually transferred to this Court for consolidation with AA/STP's earlier-filed action.

Even at the pleading stage, the Court can dispose of all of TSI's claims, as they each suffer fatal deficiencies that render dismissal appropriate. For example, in Counts 5-8 of the FAC, TSI cobbles together implausible antitrust claims contradicted by its own pleadings. TSI suggests that the Armor All Defendants have engaged in a vaguely "over-arching anticompetitive conspiracy" to restrain TSI from participating in the refrigerant market, while at the same time asserting that its AVALANCHE mark "is famous and has name recognition in the refrigerant market." FAC ¶ 174. Notably, one cannot simultaneously be the owner of a brand that is "famous" in the refrigerant market and have been prevented from "selling its product in a significant and material percentage of the market" due to an alleged conspiracy. FAC ¶ 154. Among others, these kinds of mutually-exclusive allegations highlight the fact that TSI's FAC is premised on conclusory and self-serving allegations, rather than facts. TSI has also failed to allege facts that are necessary to sustain key elements of its antitrust claims (*e.g.*, it has not plead an antitrust injury or properly defined a relevant market, nor has it properly plead a conspiracy). The balance of the allegations in TSI's FAC suffer from similar flaws.

The overbreadth and implausibility of TSI's FAC combine to demonstrate this is a retaliatory complaint that fails to set forth a well-plead basis for relief. The Armor All Defendants respectfully submit that this Court should not allow such action to waste court time and the parties' expenses and should narrow this action at this stage by dismissing TSI's legally baseless claims and demands for damages.

## III.   <u>LEGAL STANDARD</u>

To survive a motion to dismiss, a plaintiff must plead sufficient "facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see*

*also Iqbal*, 556 U.S. at 679 ("[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."). Under this standard, a plaintiff must allege "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 679. Indeed, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). A plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (citation omitted). A court should not credit pleadings "that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the Court may take judicial notice." *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 405-06 (S.D.N.Y. 2001).

Courts must be rigorous in ensuring that a plaintiff's claims rise to the level of plausibility. This requirement serves a critical gate-keeping role in complex litigations, particularly those with antitrust claims where the threat of vast and costly discovery can provide plaintiffs with significant leverage, regardless of the ultimate merits of their claims. *Twombly*, 550 U.S. at 557-59 (explaining, in the context of an antitrust class action, that the "obvious" "potential expense" of discovery can permit plaintiffs to extract "*in terrorem*" settlements from defendants through far-reaching but groundless claims). A complaint that merely states "labels and conclusions" or tenders "naked assertion[s]," without "further factual enhancement" is insufficient. *Id.* at 555, 557; *see also In re Parcel Tanker Shipping Servs. Antitrust Litig.*, 541 F. Supp. 2d 487, 492 (D. Conn. 2008) (dismissing conspiracy claim because "[a]lthough the complaint alleges conspiratorial activity, it does not allege facts tending to show how these activities were accomplished" but merely used "labels and conclusions").

Finally, it is well established that courts may dismiss claims with prejudice when it is apparent that a plaintiff will be unable to state a viable cause of action. *See Vizio, Inc. v. Klee*, No. 3:15-cv-00929 (VAB), 2016 WL 1305116, at *28 (D. Conn. Mar. 31, 2016) (granting a motion to dismiss all claims with prejudice "because amendment of the Complaint would be futile"); *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) (affirming dismissal with prejudice because, "[w]here it appears that granting leave to amend is unlikely to be productive [] it is not an abuse of [the district court's] discretion to deny leave to amend").

## IV.    ARGUMENT

### A.    TSI'S TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION CLAIMS (COUNTS 1 AND 2) SHOULD BE DISMISSED

To succeed on its federal trademark infringement claim under 15 U.S.C. § 1114, TSI must prove that: (i) "its mark is entitled to protection;" and (ii) "even more important, that the defendant's use of its own mark will likely cause confusion with the plaintiff's mark." *Gruner + Jahr USA Pub. v. Meredith Corp.*, 991 F.2d 1072, 1074 (2d Cir. 1993). This same test also applies to TSI's claim for unfair competition under 15 U.S.C. § 1125(a). *See Am. Footwear Corp. v. Gen. Footwear Co.*, 609 F.2d 655, 664 (2d Cir. 1979).

#### 1.    TSI Has Failed To Plead Facts Sufficient To Support A Plausible Claim for Trademark Infringement or Unfair Competition Based Upon Keyword Advertising

TSI alleges that AA/STP used the term AVALANCHE in keyword advertising, and that this use constitutes infringement under Section 1114. TSI then claims that this use of the AVALANCHE and AC/AVALANCHE word marks in keyword advertising – without more – constitutes unfair competition under Section 1125(a) and that this is likely to cause consumer confusion in view of TSI's putative rights in the AVALANCHE and A/C AVALANCHE word marks.

4

To the contrary, "courts have repeatedly found that the purchase of a competitor's marks as keywords alone, *without additional behavior that confuses consumers*, is not actionable." *Alzheimer's Disease & Related Disorders Ass'n, Inc. v. Alzheimer's Found. of Am., Inc.*, 307 F. Supp. 3d 260, 287 (S.D.N.Y. 2018) (emphasis added). Indeed, "[t]here is a growing consensus in the case authorities that keyword advertising does not violate the Lanham Act." *Acad. of Motion Picture Arts & Scis. v. GoDaddy.com, Inc.*, 10-cv-03738, 2015 WL 5311085, at \*50-51 (C.D. Cal. Sept. 10, 2015). The U.S. District Court for the Southern District of New York has provided the following instructive guidance, which explains why such use is typically non-actionable:

> Companies can and do regularly purchase other companies' marks as search keywords and use those companies' trademarks in the text of their search advertising in order to draw a contrast with the searched-for product and offer their own as an alternative. For instance, a Yahoo! search for the term "Honda Civic" brings up ads linking to websites from Hyundai, Volkswagen, and Toyota, comparing the Civic to their cars and suggesting that the consumer purchase an Elantra, Jetta, or Corolla instead. Although such advertisements use trademarked terms in commerce and are geared toward increasing the ad buyer's business at the trademark holder's expense, they do not implicate the Lanham Act because they draw a clear distinction between the products and do not imply the trademark holder's sponsorship or approval.

*Alzheimer's Found. of Am., Inc. v. Alzheimer's Disease & Related Disorders Ass'n, Inc.*, No. 10-civ-3314, 2015 WL 4033019, at \*6 (S.D.N.Y. June 29, 2015). Courts have applied similar reasoning when dismissing claims for infringement and unfair competition at the motion to dismiss (and other) procedural stages. *See e.g., Goldline, LLC v. Regal Assets, LLC*, No. 14-cv-03680, 2015 WL 1809301, at \*3 (C.D. Cal. Apr. 21, 2015) (dismissing trademark claims based on keyword advertising because use of marks as a search engine keyword, alone, was unlikely to cause confusion as to the origin or affiliation of defendant's products or services); *General Steel Domestic Sales, LLC v. Chumley*, No. 10-cv-01398, 2013 WL 1900562, at \*9 (D. Colo. May 7, 2013) (holding no likelihood of confusion where defendant used plaintiff's trademark in its

Google AdWords advertisement and where defendant purchased plaintiff's trademark as keyword ad trigger for sponsored links); *CollegeSource, Inc. v. AcademyOne, Inc.*, No. 10-3542, 2012 WL 526921, at \*19-20 (E.D. Pa., Oct. 25, 2012) (finding no likelihood of confusion where search engine results labeled sponsored ad links).

Claims of trademark infringement and/or unfair competition related to the use of keywords may be decided at the motion to dismiss stage. *See also Allied Interstate LLC v. Kimmel & Silverman P.C.*, No. 12 Civ. 4204, 2013 WL 4245987, at \*6 (S.D.N.Y. Aug. 12, 2013) (granting motion to dismiss claim of unfair competition related to use of trademarked term). In *Allied*, the plaintiff provided quotations from the defendant's advertising and exemplary internet search results (*e.g.,* analogous to the cited support in TSI's FAC). The Court took notice of the fact that the format and labels provided with Google's search results mitigated the potential for confusion. "[T]he Google search result labels the sponsored advertising as 'Ads related to allied interstate' – a description that *in no way suggests that it is advertising for or by Plaintiff. Id.* (emphasis added). The Court further found that the display of the defendant's services in the search results associated with the trademarked keyword did not result in confusion stating:

> The allegations and exemplars demonstrate that, as a result of Defendants' use of the ALLIED INTERSTATE ™ mark, advertising for Defendants' services will be displayed in response to a query for "Allied Interstate." *That result is an indicator of the relevance, not of the source of Defendants' advertising.*

*Id.* (emphasis added).

An analogous analysis applies to TSI's pleadings in the present action. TSI's FAC provides quotations and images showing exemplary search results generated by Google's search engine in response to a query containing TSI's asserted trademark. *See* FAC ¶ 50. TSI's FAC relies on this screenshot as the foundation for its claim. *See e.g.*, FAC ¶¶ 49-52. However, TSI's

own pleadings show that the search results produced by this query prominently label AA/STP's link as an "Ad." FAC ¶ 50. Indeed, AA/STP's search result is only one of several such ads produced in response to this query. *See id.* (showing additional third-party ad links for automotive air conditioner repair websites). Notably, TSI has failed to plead that the A/C Pro webpage hosted at the address associated with AA/STP's search result contains *any* reference to TSI or its AVALANCHE products.[1] In short, TSI has failed to set forth a plausible claim for infringement or unfair competition under the Lanham Act and dismissal with prejudice is proper.

### 2.    TSI Has Failed To Plead Facts Sufficient To Support Its Claim Of Unfair Competition Based Upon the Alleged Mountain Logo

"A plaintiff claiming unfair competition under § 43(a) must show that it *owns* a valid trademark." *EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.,* 228 F.3d 56, 62 (2d Cir. 2000) (emphasis added); *see Thompson Med. Co. v. Pfizer Inc.,* 753 F.2d 208, 215 (2d Cir.1985) ("The starting point of our examination [of a claim under § 43(a)] is determining whether a mark is eligible for protection."). TSI alleges that it has *unspecified* rights in and to the use of a logo containing the words AC AVALANCHE and a mountain design (hereinafter "mountain logo") in connection with the sale of refrigerant products. *See* FAC ¶¶ 27-29.



TSI's alleged mountain logo

TSI has not alleged that it has all right, title and interest in and to this mountain logo. Indeed, TSI does not have any such rights: it never registered nor acquired any goodwill in this mountain logo nor had any right to sue for damages or alleged unfair competition of the mountain logo.

---

[1] TSI's FAC includes a link to this webpage in ¶ 53. However, it has not provided a screenshot showing the appearance of this webpage as of the date that the FAC was filed. The Internet Archive website captured a snapshot of this webpage as it appeared to visitors five days before TSI filed its FAC. A copy of this snapshot is provided as Exhibit 1 ("http://web.archive.org/web/20171103040848/http://acprocold.com/product/acp-100-ac-pro/", which shows the A/C Pro webpage identified in ¶ 53 of TSI's FAC as it appeared on November 3, 2017).

To the extent there are any rights in the asserted mountain logo, *Michael Quest has them*. The August 2, 2017 assignment document that TSI recorded at the U.S. Patent and Trademark Office ("USPTO") confirms that Michael Quest has retained these rights. *See* Exhibit 2 (courtesy copy of assignment document recorded at Reel No. 6121, Frame No. 0458 with USPTO ("Assignment document")).[2] Particularly:

- **Section I(A)** of this assignment document identifies Michael Quest "as owner of the trademarks and any and all trade dress associated therewith ('the Marks') as described in Exhibit A . . . [and] the goodwill of the business symbolized thereby in connection with the goods and services on which, or in conjunction with which, the Marks are used."

- **Exhibit A** of the assignment document is limited to four registered U.S. trademarks: AVALANCHE, SMART CLIP TECHNOLOGY, TRIPLE SEAL and BLACK DIAMOND AVALANCHE.

- **Section II (1.1)** of the assignment document appears to state that Michael Quest assigned "all of [his] worldwide right, title, and interest in and to the Marks" listed on Exhibit A as well as "the goodwill" associated with and "all rights to sue for past, present and future unfair competition" relating to these specific Marks.

- **Section II (1.2)** further sets forth that Michael Quest "conveys, transfers, assigns, delivers, and contributes to [TSI] all rights in the trade dress, labels, and designs associated with the Marks."

Notably, the assignment agreement and its exhibit fail to mention the mountain logo in any form. Rather, the wording of these provisions indicates that the scope of rights transferred by Section II (1.1) was more extensive than the scope of rights transferred by Section II (1.2). Section II (1.2) is notably silent as to any transfer of the goodwill associated with trade dress, labels and design *or* damages *or* the right to sue for unfair competition. In view of the attention to detail in Section II (1.1), which includes an inventory of the rights being transferred, the

---

[2] The Court may take judicial notice of this Assignment document when deciding the instant motion. *See Bailey v. Interbay Funding, LLC*, No. 3:17-CV-1457, 2018 WL 1660553, at *2 (D. Conn. Apr. 4, 2018) (granting a motion to dismiss and noting that "[a]t the pleading stage, courts may take judicial notice of matters of public record."); *Telebrands Corp. v. Del Labs., Inc.*, 719 F.Supp.2d 283, 287 n.3 (S.D.N.Y. 2010) ("The Court may properly take judicial notice of official records of the United States Patent and Trademark Office").

omission in Section II (1.2) confirms that TSI does not own these rights (*i.e.,* Michael Quest is the owner). TSI has thus failed to plead facts sufficient to show ownership of a right to sue for alleged unfair competition of the mountain logo or of the goodwill associated with this alleged mark and therefore has failed to state a plausible claim upon which relief can be granted.

TSI has also failed to plead plausible allegations of prior rights in the mountain logo that could support an actionable claim. TSI alleges a date of first commercial use of this mark in 2015. FAC ¶ 29 ("[s]ince January 2015, TSI has sold AVALANCHE/AC AVALANCHE refrigerants in packaging with a stylized mountain logo."). TSI asserts that AA/STP first used a mountain logo on its ARCTIC FREEZE products beginning in 2017, suggesting that AA/STP is the junior user of this mark in view of TSI's claimed date of first use in January 2015. *See* FAC ¶ 29, 81. This conclusory statement in the FAC regarding AA/STP's date of first commercial use is not based on any factual support. Indeed, in this case, AA/STP has asserted that its first commercial use of a mountain logo on product labels and in marketing materials for its ARCTIC FREEZE product line began "in or prior to May 2014." Dkt. No. 12 at 6 (showing exemplary images of AA/STP's ARCTIC FREEZE product featuring a mountain logo).

TSI's claim of unfair competition relating to AA/STP's use of a mountain logo on its ARCTIC FREEZE products should be dismissed. TSI's FAC sets forth a date of first commercial use in January 2015, at least several months *after* AA/STP's first commercial use of a mountain logo on its ARCTIC FREEZE products. While well-pleaded factual allegations in the complaint are presumed to be true for the purpose of a motion to dismiss, no such presumption is granted to conclusory statements. *See Iqbal*, 556 U.S. at 678. TSI's mere speculation regarding AA/STP date of first commercial use of a mountain logo lacks factual support and cannot sustain a plausible claim for relief. As such, TSI's unfair competition claim should be dismissed.

**B.     TSI'S TRADEMARK DILUTION CLAIM (COUNT 3) SHOULD BE DISMISSED BECAUSE THE AVALANCHE MARK IS NOT FAMOUS**

To state a claim for federal trademark dilution under the Trademark Dilution Revision Act ("TDRA"), a plaintiff must allege four elements that: (1) the mark is truly famous (not merely famous in a limited market); (2) the defendant is making use of the mark in commerce; (3) such use began after the mark became famous; and (4) there is a likelihood of dilution by blurring or tarnishment. *See Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 118 (2d Cir. 2006) (setting forth elements of claim for trademark dilution).

In such pleadings, "the element of fame is the key ingredient." *Savin Corp. v. Savin Grp.*, 391 F.3d 439, 449 (2d Cir. 2004). In *Savin*, the Second Circuit admonished the district courts to determine whether the senior mark is famous as early in the litigation as possible:

> [W]here it is possible for a district court to determine in the first instance the issue of the famousness of a senior mark, the court would be well advised to do so. Indeed, this will often obviate the costly litigation of potentially much thornier issues, such as whether actual blurring or tarnishing of the senior mark has in fact occurred.

*Id.* at 450.

Accordingly, if this Court can determine that TSI's AVALANCHE mark is not famous on a motion to dismiss, it should dismiss TSI's claim for trademark dilution.

**1.     Federal Trademark Dilution Claims Are Limited to Famous Marks**

Under the TDRA, "[a] trademark is famous for dilution purposes only 'if it is widely recognized by the *general consuming public* of the United States as a designation of source of the goods or services of the mark's owner." *Schutte Bagclosures Inc. v. Kwik Lok Corp.*, 193 F. Supp. 3d 245, 283 (S.D.N.Y. 2016), *aff'd*, 699 F. App'x 93 (2d Cir. 2017) (quoting 15 U.S.C. § 1125(c)(2)(A)). Indeed, courts within this Circuit have long recognized that "only marks approaching household names may qualify as 'famous'" marks for the purposes of a federal

10

trademark dilution claim. *Friesland Brands, B.V. v. Vietnam Nat'l Milk Co.*, 228 F. Supp. 2d 399, 412 (S.D.N.Y. 2002); *see Schutte*, 193 F. Supp. 3d at 283; *see also* J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* at §§ 24:107-108 and 24:311-316. (5th ed., West June 2018) (extraordinary level of fame required to support federal dilution claim under § 1125(c) is illustrated by such "famous" marks as AUDI, BUICK, BURBERRY, DUPONT, KODAK, NIKE, PEPSI, STARBUCKS, VICTORIA'S SECRET, VISA, CARTIER, FORD, POLO, TOYS 'R US, and TYLENOL).

In 2006, the TDRA was amended by Congress to establish affirmatively a stringent threshold for fame so as to limit the number of trademarks that may be afforded such protection. Particularly, the legislative history of the TDRA states:

> Dilution should once again be used sparingly as an 'extraordinary' remedy, one that requires a significant showing of fame. This bill narrows the application of dilution by tightening the definition of what is necessary to be considered a famous mark. *The bill eliminates fame for a niche market* and lists the factors necessary for a dilution by blurring claim. With these changes, it is our hope that the dilution remedy will be used in the rare circumstance and not as the alternative pleading.

McCarthy at § 24:104 (quoting Statement of Rep. Howard L. Berman, ranking member, Subcommittee on Courts, the Internet and Intellectual Property, reprinted in House Judiciary Committee Report H.R. 109-23 on H.R. 683 at 25 (109th Cong. 1st Sess.) (Mar. 17, 2006)) (emphasis added). The 2006 amendments specifically replaced the previous standard for fame (which had allowed trademark owners to assert fame in a "niche market") with the current standard that requires that a mark be "widely recognized *by the general consuming public* of the United States." 15 U.S.C. § 1125(c)(2)(A) (emphasis added). "This amendment ensures that dilution causes of action are restricted to 'those few truly famous marks like Budweiser beer, Camel cigarettes, Barbie Dolls, and the like.'" *Global Brand Holdings, LLC v. Church & Dwight*

*Co., Inc.*, No. 17-cv-6571, 2017 WL 6515419, at *3 (S.D.N.Y. Dec. 19, 2017) (quoting *Luv N'*
*Care, Ltd. V. Regent Baby Prod. Corp.*, 841 F.Supp.2d 753, 758 (S.D.N.Y. 2012)); *see also*
*Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 105 (2d Cir. 2009) ("[T]he
requirement that the mark be 'famous' and 'distinctive' significantly limits the pool of marks that
may receive dilution protection"). Therefore, in order for TSI's trademark dilution claim to
survive the instant Motion, TSI must have plausibly alleged this level of fame.

### 2.     TSI Has Failed To Allege Plausibly That The AVALANCHE Mark Is Famous

As required by the federal dilution statute, the mark in question must be famous among
the general consuming public of the United States. 15 U.S.C. § 1125(c)(2)(A). TSI's FAC has
failed to plead this requirement. Instead, it alleges fame in a niche market (*i.e.,* the "refrigerant
market"). *See* FAC ¶ 174. In *Global Brand*, the trademark dilution claim was dismissed where,
like TSI does here, the plaintiff failed to properly plead fame among the general consuming
public of the United States. In rejecting the sufficiency of such allegation and dismissing the
dilution claim, the Court concluded:

> [T]he Amended Complaint does not plausibly allege that plaintiff's "XOXO"
> marks are "famous" for the purposes of § 1125(c). Plaintiff points to its
> allegations that goods bearing its marks are sold nationwide and online through
> large, well-known retailers, and that it has spent millions of dollars to create
> consumer recognition in the marks. But, as the principles above make clear, this is
> insufficient in and of itself to plausibly allege fame to the general consuming
> public.

*Global Brand*, 2017 WL 6515419, at *5-6 (emphasis in original). For the same reasons, TSI's
trademark dilution claim should be dismissed.

Put simply, TSI has plead that it is famous in the "refrigerant market" while
simultaneously alleging that the Armor All Defendants have severely limited its ability to expand
and compete *in this same market*. These positions are mutually exclusive, casting doubt on the

veracity of TSI's pleadings.[3] Dismissal with prejudice is therefore proper in this case because there are no plausible facts that TSI could add to an amended complaint to prove that the AVALANCHE mark falls into the category of famous marks entitled to protection under the TDRA.

### C.   TSI'S FALSE ADVERTISING CLAIM (COUNT 4) SHOULD BE DISMISSED BECAUSE TSI BASES ITS CLAIM ON NON-ACTIONABLE PUFFERY

To state a claim for false advertising, a plaintiff must allege facts that could plausibly support a reasonable inference that: (1) "the challenged advertisement is literally false, *i.e.*, false on its face" or (2) "the advertisement, while not literally false, is nevertheless likely to mislead or confuse consumers." *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 153 (2d Cir. 2007). If the plaintiff chooses the latter option, relying on an "impliedly false" theory, the complaint must support a reasonable inference that the challenged advertisement contains material misrepresentations that are likely to mislead and confuse consumers. *See Hearst Bus. Publ'g, Inc. v. W.G. Nichols, Inc.*, 76 F. Supp. 2d 459, 468-69 (S.D.N.Y. 1999).

Courts in the Second Circuit and elsewhere have recognized that claims for false advertising under the Lanham Act are limited to factually-provable statements. *See e.g., Lipton v. Nature Co.*, 71 F.3d 464 (2d Cir. 1995). In contrast, "[s]ubjective claims about products, which cannot be proven either true or false" qualify as mere "puffery" which cannot support a false advertising claim. *Id.* at 474 (internal quotation marks omitted). More recently, the Second Circuit explained that at least two different forms of non-actionable puffery are recognized in this Circuit. *See Time Warner Cable*, 497 F.3d at 160 (adopting the Fifth Circuit's definition of "puffery" set forth in *Pizza Hut, Inc. v. Papa John's Int'l*, Inc., 227 F.3d 489, 497 (5th Cir.

---

[3] To the extent that TSI asserts that is has achieved fame in the "refrigerant market," such allegations are plainly inconsistent with TSI's antitrust claims set forth in Counts 5-8, discussed *infra* in Section IV.D.

13

2000)). As set forth in *Time Warner Cable*, the first form is "a general claim of superiority over comparable products that is so vague that it can be understood as nothing more than a mere expression of opinion" and the second form is "an exaggerated, blustering, and boasting statement upon which no reasonable buyer would be justified in relying." *Id.* (quoting *Pizza Hut, Inc.*, 227 F.3d at 497).

Courts tasked with adjudicating false advertising claims have recognized that vague statements regarding the superiority of a given product (*e.g.*, referring to a product or service as "#1" with regard to an industry or quality) constitute non-actionable puffery. *See e.g.*, *Trex Co., Inc. v. CPG Int'l LLC*, No. 5:17-cv-00005, 2017 WL 3272013, at *10-11 (W.D. Va. Aug. 1, 2017) (granting motion to dismiss and finding *multiple* "#1" statements to be mere puffery); *Bridal Expo, Inc. v. Van Florestein*, No. 4:08-cv-03777, 2009 WL 255862, at *7 (S.D. Tex. Feb. 3, 2009) ("Houston's #1 Bridal Show" falls "neatly into the category of 'bald assertion of superiority or a general statement of superiority' that the *Pizza Hut* court described as puffery"); *Home Show Tours, Inc. v. Quad City Virtual, Inc.*, 827 F. Supp. 2d 924, 937 (S.D. Iowa 2011) ("the #1 FSBO destination in the [Quad-City Area]" is a bald assertion of superiority which qualifies as puffery); *Hacket v. Feeney*, No. 2:09-cv-02075, 2011 WL 4007531, at *4 (D. Nev. Sept. 8, 2011) ("Voted #1 Best Show in Vegas" qualifies as puffery).

In addition to recognizing such statements as bald assertions of superiority, courts have also recognized that "#1" statements qualify as puffery when it is unclear how a property should be measured (*e.g.*, resulting in an ambiguous statement that is open to interpretation). *See Rexall Sundown, Inc. v. Perrigo Co.*, 651 F. Supp. 2d 9, 34-35 (E.D.N.Y. 2009) (refusing to find that statement "No. 1 Dr. Recommended Joint Care Brand" is false because unclear how that term was being measured); *Hill's Pet Nutrition, Inc. v. Nutro Prods., Inc.*, 258 F. Supp. 2d 1197, 1209

(D. Kan. 2003) (dog food advertisement stating "Natural Choice – #1 in America's Pet Stores" found to be non-actionable because it did not specify how "#1" was being measured).

In the present case, TSI has merely alleged that the statements "#1 Rated Coldest Air" and "#1 Coldest Air" used on AA/STP's A/C Pro refrigerant product labels and marketing materials are either false or materially deceptive and likely to influence consumers' purchasing decisions. *See* FAC ¶¶ 183-190. However, courts have recognized that "#1" statements are common and routinely held to qualify as non-actionable puffery since consumers regularly recognize and discount such assertions. Alternatively, both statements qualify as puffery because neither statement specifies how the "#1" was measured, resulting in vague statements that are open to multiple reasonable interpretations. The "#1" statements challenged by TSI are classic examples of the vague and exaggerated puffery routinely encountered by consumers. As illustrated by the case law cited above, such statements cannot form the basis for an actionable claim of false advertising under the Lanham Act. TSI has not and cannot plead facts that would result in a plausible claim for relief and therefore this claim should be dismissed.

## D. TSI'S ANTITRUST CLAIMS UNDER THE SHERMAN ACT SHOULD BE DISMISSED.

To survive a motion to dismiss, a Sherman Act claim must: (1) define the relevant market; (2) allege an antitrust injury; and (3) allege conduct in violation of the antitrust laws. *Concord Assocs., L.P. v. Entm't Props. Tr.*, 817 F.3d 46, 52 (2d Cir. 2016). TSI fails to plead any of these elements. Vague, conclusory allegations of a conspiracy are insufficient as a matter of law to support a Sherman Act claim. *See In re Elevator Antitrust Litigation*, 502 F.3d 47, 51 (2d Cir. 2007) ("conclusory allegations of agreement at some unidentified point do not supply facts to show illegality"); *Arista Records LLC v. Lime Group LLC*, 532 F.Supp.2d 556, 577 (S.D.N.Y. 2007) ("[Plaintiff] sprinkles the words 'conspired,' 'concerted,' and 'concertedly' throughout the

15

[Complaint], but its pleading furnishes no clue as to which of the thirteen counter-defendants (much less which of their employees) supposedly agreed, or when and where the illicit agreement took place.") (internal alterations omitted). *Twombly* demands more than mere speculation. 550 U.S. at 555, 557 ("a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions" and "a naked assertion of conspiracy in a § 1 complaint . . . without some further factual enhancement . . . stops short of the line between possibility and plausibility of entitlement to relief" (internal alterations and quotations omitted)). Counts 5-8 of the FAC thus cannot support a plausible claim for relief and should be dismissed with prejudice.

## 1.    TSI Fails to Define the Relevant Market.

The relevant market is the "'area of effective competition' within which the defendant operates." *AD/SAT, Div. of Skylight, Inc. v. Assoc. Press*, 181 F.3d 216, 227 (2d Cir. 1999) (quoting *Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 327-28 (1961)). A relevant product market consists of "products that have reasonable interchangeability for the purposes for which they are produced—price, use and qualities considered." *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 404 (1956). "Products will be considered to be reasonably interchangeable if consumers treat them as acceptable substitutes. *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (internal quotations omitted); *see FTC v. Cardinal Health, Inc.*, 12 F.Supp.2d 34, 46 (D.D.C. 1998). ("[T]he relevant market consists of all of the products that the Defendants' customers view as substitutes to those supplied by the Defendants."). "When the proposed relevant market is defined without 'reference to the rule of reasonable interchangeability and cross-elasticity of demand,' or 'clearly does not encompass all interchangeable substitute products . . . the relevant market is legally insufficient and a motion to dismiss may be granted.'" *A.V.E.L.A., Inc. v. Estate of Marilyn Monroe, LLC*, 241 F. Supp. 3d

461, 482 (S.D.N.Y. 2017) (*quoting Spinelli v. Nat'l Football League*, 96 F. Supp. 3d 81, 111 (S.D.N.Y. 2015)). The boundaries of a relevant product market within a broader market "may be determined by examining such practical indicia as industry or public recognition of the [relevant market] as a separate economic entity, the product's peculiar characteristics and uses, unique production facilities, distinct customers, distinct prices, sensitivity to price changes, and specialized vendors." *FTC v. Whole Foods Market, Inc*. 548 F.3d 1028, 1037-38 (D.C. Cir. 2008) (internal citation and quotation marks omitted).

TSI fails to identify how consumers choose among substitute products and, instead, asserts without explanation that the relevant market consists only of the narrow set of products offered by both TSI and the Armor All Defendants. This is flawed for several reasons. First, TSI uses two, conflicting descriptions. TSI at once describes the relevant market to include all "value-added, do-it-yourself automotive *refrigerant*[s]," FAC ¶ 39 (emphasis added), and also to include "all do-it-yourself automotive AC *recharge kits*," FAC ¶ 147 (emphasis added). TSI admits that these are different markets, alleging that the Armor All Defendants maintained different market shares in these two markets. *Compare* FAC ¶ 39 (alleging 85% share) *with* ¶ 149 (alleging 90% share). Yet nothing in the FAC clarifies how to understand the differences between these terms, or how to reconcile that competition appears to operate differently in each. Because it cannot be determined from TSI's conflicting allegations which market TSI contends has been restrained, or how these two markets operate, TSI has failed to define a relevant market adequately. *See Cinema Vill. Cinemart, Inc. v. Regal Entm't Grp*., No. 15-cv-05488, 2016 WL 5719790, at *6 (S.D.N.Y. Sept. 29, 2016), *aff'd*, 708 F. App'x 29 (2d Cir. 2017) ("dismissal is appropriate where, as here, a plaintiff has defined the relevant market in an inconsistent and facially implausible way").

Even if these definitions somehow defined a market (which they do not), they are implausible on their face. TSI's description of these products as "do-it-yourself" necessarily means that a consumer also has the option to seek professional help (*i.e.*, a service station). TSI fails to explain why or how competition and substitutability is restricted to the do-it-yourself market. Courts are rightly skeptical of this type of allegation, attempting to define a limited, one-product market. *See PepsiCo, Inc.*, 315 at 105 (refusing to allow Pepsi to narrow the market to only Coke and Pepsi when consumers have other substitutable options). Furthermore, TSI seems to allege that the relevant market consists only of competition for shelf space at retailers' stores. *See* FAC ¶¶ 117, 119. This ignores that do-it-yourselfers also will buy product online, without ever looking at shelf space. TSI fails to include any reason for this Court to conclude that the relevant market should be so limited. TSI's Sherman Act claims thus fail for lack of an alleged relevant market.

### 2.    TSI Fails to Allege Antitrust Injury.

It is a "fundamental tenet that the antitrust laws . . . were enacted for the protection of competition, not competitors." *Balaklaw v. Lovell*, 14 F.3d 793, 797 (2d Cir. 1994) (citations and internal quotation marks omitted). A plaintiff pursuing Sherman Act claims therefore must allege more than harm to itself – it must satisfy the requirement of "antitrust injury" by plausibly alleging harm to competition in the relevant market. *Id.* For a plaintiff to show harm to competition, it must show actual detrimental market effects, such as reduced output, increased prices, or decreased quality. *Virgin Atlantic Airways, Ltd v. British Airways PLC*, 257 F.3d 256, 264 (2d Cir. 2001). An "injury, although causally related to an antitrust violation, nevertheless will not qualify as 'antitrust injury' unless it is attributable to an anti-competitive aspect of the practice under scrutiny, since it is inimical to the antitrust laws to award damages for losses stemming from continued competition." *Atl. Richfield Co. v. United States Petroleum Co.*, 495

18

U.S. 328, 334 (1990) (citations and internal quotation marks omitted).

Antitrust injury is not demonstrated by simply alleging that a defendant entered into exclusive contracts. For this reason, another complaint alleging facts strikingly similar to TSI's was dismissed:  A "do it yourself" automotive sandpaper supplier alleged that its competitor paid money to enter into exclusive contracts with the very same retailers identified by TSI in its FAC. *NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 451 (6th Cir. 2007). The appeals court, ruling *en banc*, held that the plaintiff alleged only injury to itself, which could not satisfy the requirement of antitrust injury. *Id.*

The same is true here. TSI's allegations reflect only harm to TSI, not to the market and not to competition itself. TSI alleges that the Armor All Defendants "have harmed TSI through diminished sales and business opportunities" and that "TSI has been effectively prevented from reaching a minimum efficient scale to compete with [the Armor All Defendants] on a cost basis." FAC ¶¶ 150-51. Despite appearing to admit that other competitors exist, FAC ¶¶ 142, 145, TSI makes no allegation about how the market has been affected, what portion of the market has excluded TSI or its competitors, or how prices or quality have been affected in the market. TSI alleges only that the Armor All Defendants' conduct harmed TSI. This is insufficient to establish an actual antitrust injury because it fails to describe harm to the market. *See Capital Imaging Assocs. v. Mohawk Valley Med. Assocs.*, 996 F.2d 537, 543 (2d Cir. 1993) (must allege that "the challenged action has had an actual adverse effect on competition as a whole in the relevant market."). TSI is a disappointed competitor, against which the antitrust laws do not protect. Indeed competition exists even today, with the same retailers identified by TSI stocking multiple brands of the refrigerant products which TSI contends the Armor All Defendants have allegedly locked up.

Even if it were assumed that TSI were the Armor All Defendants' only competition, TSI fails to allege how losing out on sales reduced competition through increased prices or reduced quality for consumers.   Exclusive contracts in themselves do not harm competition. *See Bookhouse of Stuyvesant Plaza, Inc. v. Amazon.com, Inc.*, 985 F. Supp. 2d 612, 620 (S.D.N.Y. 2013) ("But consumers' inability to buy the same product from a different seller only harms that seller, and does no cognizable harm to competition as a whole."). Without antitrust injury, TSI's complaint necessarily fails. It simply is not enough for TSI to allege that it experienced reduced sales to a single retailer during a single year. Without harm to competition itself, TSI's FAC fails.

### 3.      TSI Fails to Allege Unlawful, Anticompetitive Conduct.

TSI's Sherman Act Section 1 (Count 5) and Section 2 (Counts 6-8) claims each lack any plausible description of anticompetitive conduct within the reach of the antitrust laws. "[N]ot every sharp-elbowed business practice . . . necessarily amounts to an antitrust violation...." *Louisiana Wholesale Drug Co. v. Shire LLC*, 929 F. Supp. 2d 256, 262 (S.D.N.Y. 2013). Yet this is all that TSI alleges.

### a.      TSI's Section 1 claim (Count 5) fails to identify a conspiracy or any illegal conduct beyond a single contract that cut TSI out of a single retailer for one year.

Courts apply the rule of reason to vertical arrangements like that alleged by TSI, which requires a plaintiff to plead that there was substantial harm to competition. *See Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 183 (2d Cir. 2012). The allegations must reflect conduct beyond normal competitive activity. It is well-settled that, "conduct as consistent with permissible competition as with illegal conspiracy does not, standing alone, support an inference of antitrust conspiracy." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). Exclusive agreements do not, on their own, represent anticompetitive activity. *E & L*

20

*Consulting, Ltd. v. Doman Indus. Ltd.*, 472 F.3d 23, 29 (2d Cir. 2006). This is especially true when there is not "a showing of actual adverse effect on competition market-wide." *Id.*

The FAC reflects merely conclusory allegations that, on their face, reflect typical competitive activity. TSI alleges in conclusory fashion that it *believes* the Armor All Defendants agreed with (unidentified) retailers to exclude TSI's products from those retailers' store shelves. FAC ¶¶ 111-19, 195. The FAC includes just a single purported "example" of such a conspiracy, which reflects TSI's conjecture that the Armor All Defendants offered a single retailer a reduced price to stock their products instead of TSI's for a one-year period.[4] FAC ¶¶ 112-17. The FAC says nothing to explain how offering a lower price is anticompetitive. And the FAC admits that this contract represented no more than "17% of the units sold in the market" that year. *Id.* at ¶ 113. A single allegation of a single year of a single exclusive contract cannot support a Section 1 claim. Without more, such allegations cannot represent anticompetitive conduct. *See NicSand*, 507 F.3d at 456-57 (a retailer acts reasonably to enter into an exclusive contract for a lower-priced good). TSI has failed to provide the type of plausible description of competitive harm necessary to satisfy *Iqbal/Twombly*.

> **b.      TSI's Section 2 monopolization claims (Counts 6-8) fail to identify anticompetitive behavior beyond mere recitation of the elements of a monopoly claim.**

To state a claim for monopolization under Section 2 of the Sherman Act, "a plaintiff must establish '(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident.'" *PepsiCo, Inc.*, 315

---

[4] Furthermore, TSI's conclusory allegations regarding a "conspiracy" between the Armor All Defendants fails because these entities cannot conspire as a matter of law. *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752 (1984); *see Schwimmer v. Sony Corp. of Am.*, 677 F.2d 946, 953 (2d Cir. 1982) ("collaborative action between a corporation and its employees, or among employees within a corporation, is not regarded as joint action within the meaning of § 1").

F.3d at 105 ((quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966)). A plaintiff must include facts sufficient at least to support an inference that the monopolist has "gained its market share via anticompetitive behavior rather than through growth or development as a consequence of a superior product." *Affinity LLC v. GfK Mediamark Research & Intelligence, LLC*, 547 F. App'x 54, 57 (2d Cir. 2013) (affirming dismissal of claim). Mere recital of the elements of monopolistic activity must be dismissed. *Iqbal*, 556 U.S. at 678, ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to save complaint from dismissal); *A.V.E.L.A.*, 241 F. Supp. 3d at 473, 488 ("[A]lthough a court" adjudicating a Rule 12(b)(6) motion "must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions.").

TSI's allegations to support Counts 6-8 merely restate, without more, the elements of a Sherman Act Section 2 claim. *See* FAC ¶¶ 204-215. TSI does not plead any anticompetitive activity beyond the limited, exclusive contract alleged to have occurred with one retailer in one year. Exclusive contracts, even when entered with several retailers, do not demonstrate anticompetitive activity, without more. *NicSand, Inc.*, 507 F.3d at 451. There is accordingly not a shred of plausible allegation to permit these Section 2 claims to proceed.

TSI also fails to plead how each of the defendant-companies possessed market power on their own, or why the individual defendants should be treated as a single actor in the alleged monopolistic activity. The Second Circuit has expressly rejected that Section 2 claims may be premised on a theory of "shared monopoly" among individual companies. *RxUSA Wholesale, Inc. v. Alcon Lab., Inc.*, 661 F. Supp. 2d 218, 235 (E.D.N.Y. 2009), *aff'd sub nom*, 391 F. App'x 59 (2d Cir. 2010) (citing *H.L. Hayden Co. of N.Y., Inc. v. Siemens Med. Sys., Inc.*, 879 F.2d 1005, 1018 (2d Cir. 1989)). TSI thus cannot base its monopoly claims on the multiple

22

defendants' conduct, as this is really a Section 1 claim in disguise. *See FLM Collision Parts, Inc. v. Ford Motor Co.*, 543 F.2d 1019, 1030 (2d Cir.1976) (allegations of a "shared monopoly" amount to no more than a "§ 1 claim under another name").

Additionally, Count 7's conspiracy claim must be dismissed because it rests upon the contention that the Armor All Defendants conspired amongst themselves to monopolize the market. *See* FAC ¶¶ 208-11. This alleged scheme is also asserted as the basis for TSI's attempted monopolization claim against AA/STP and Spectrum (Count 8). *See* FAC ¶ 212. At the time that the alleged conduct purportedly took place, the four Armor All Defendants constituted a parent corporation (Spectrum), its wholly-owned subsidiary (AA/STP) and two of its corporate officers (Andrysick and DeRidder). FAC ¶¶ 3, 4, 6, 8. As members of the same corporate family, and officers of those companies, the Armor All Defendants cannot, as a matter of law, have conspired amongst one another. *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752 (1984) (parent/subsidiary incapable of conspiring); *Surgical Care Ctr. of Hammond, L.C. v. Hosp. Serv. Dist. No. 1 of Tangipahoa Par.,* 309 F.3d 836, 841 (5th Cir. 2002) (company and agents incapable of conspiring for purposes of Section 2 conspiracy); *In re Zinc Antitrust Litig.*, 155 F. Supp. 3d 337, 383 (S.D.N.Y. 2016) (same). TSI's Section 2 claims thus also should be dismissed with prejudice.

## V.   **CONCLUSION**

For all of the reasons set out above, the Armor All Defendants respectfully request that the Court dismiss Plaintiff's FAC in its entirety with prejudice.

CONSOLIDATED DEFENDANTS – The Armor All/STP Products Company

November 30, 2018

/s/ Andy I. Corea
Andy I. Corea (ct25925)
Terence Brunau (ct29363)
**MURTHA CULLINA LLP**
265 Church Street
New Haven, Connecticut 06510
Tel. (203) 772-7700
Fax. (203) 772-7723
acorea@murthalaw.com
tbrunau@murthalaw.com

Michael A. Grow
**ARENT FOX LLP**
1717 K Street, NW
Washington, DC  20006
Tel. (202) 857-6389
Fax. (202) 857-6395
michael.grow@arentfox.com

Marylee Jenkins
Michael Scarpati
**ARENT FOX LLP**
1301 Avenue of the Americas, Floor 42
New York, NY 10019
Tel. (212) 484-3900
Fax. (212) 484-3990
marylee.jenkins@arentfox.com
michael.scarpati@arentfox.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 30, 2018, a copy of the foregoing Memorandum of Law in Support of Motion To Dismiss The First Amended Complaint Filed In Civil Action No. 3:18-Cv-1682 was filed electronically and served by mail on any party unable to accept electronic filing.  Notice of this filing will be sent via email to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's CM/ECF System.

/s/ Andy I. Corea
Andy I. Corea