# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

THE ARMOR ALL/STP PRODUCTS COMPANY,

*Plaintiff,*

v.

TSI PRODUCTS, INC., MICHAEL QUEST AND
WILLIAM QUEST

*Defendants.*

CIVIL ACTION NO. 3:17-CV-01131
**(LEAD)**

CIVIL ACTION NO. 3:18-CV-1682
**(CONSOLIDATED)**

## THE ARMOR ALL DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT FILED IN CIVIL ACTION NO. 3:17-CV-01131

Pursuant to Fed. R. Civ. P. 12(b)(6) and L. Civ. R. 7(a), Defendants The Armor All/STP Products Company ("AA/STP"), Spectrum Brands Holdings, Inc., ("Spectrum"), Guy Andrysick ("Andrysick") and Robert DeRidder ("DeRidder") (collectively "the Armor All Defendants") respectfully move to dismiss the Second Amended Complaint ("Second AC", Dkt. #96) filed by the consolidated plaintiff TSI Products, Inc. ("TSI") in Case No. 3:17-CV-01131.

In support of this motion, the Armor All Defendants rely on the accompanying Memorandum of Law and exhibits.

WHEREFORE, the Armor All Defendants respectfully request that the Court grant this motion and dismiss the Second AC.

CONSOLIDATED DEFENDANTS
The Armor All/STP Products Company

January 17, 2019

/s/ Andy I. Corea
Andy I. Corea (ct25925)
Terence Brunau (ct29363)
**MURTHA CULLINA LLP**
265 Church Street
New Haven, Connecticut 06510
Tel. (203) 772-7700
Fax. (203) 772-7723
acorea@murthalaw.com
tbrunau@murthalaw.com

Michael A. Grow
**ARENT FOX LLP**
1717 K Street, NW
Washington, DC 20006
Tel. (202) 857-6389
Fax. (202) 857-6395
michael.grow@arentfox.com

Marylee Jenkins
Michael Scarpati
**ARENT FOX LLP**
1301 Avenue of the Americas, Floor 42
New York, NY 10019
Tel. (212) 484-3900
Fax. (212) 484-3990
marylee.jenkins@arentfox.com
michael.scarpati@arentfox.com

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

THE ARMOR ALL/STP PRODUCTS COMPANY,

*Plaintiff,*

v.

TSI PRODUCTS, INC., MICHAEL QUEST AND
WILLIAM QUEST

*Defendants.*

CIVIL ACTION NO. 3:17-cv-01131
(LEAD)

CIVIL ACTION NO. 3:18-cv-1682
(CONSOLIDATED)

## <u>MEMORANDUM OF LAW IN SUPPORT OF THE ARMOR ALL DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT FILED IN CIVIL ACTION NO. 3:17-cv-01131</u>

# TABLE OF CONTENTS

| | | Page |
|---|---|---|

I.    INTRODUCTION ..........................................................................................1

II.   PRELIMINARY STATEMENT .....................................................................1

III.  LEGAL STANDARD ....................................................................................2

IV.  ARGUMENT.................................................................................................4

      A.    TSI'S TRADEMARK INFRINGEMENT AND UNFAIR
            COMPETITION CLAIMS (COUNTS 1 AND 2) SHOULD BE
            DISMISSED ........................................................................................4

            1.    TSI Has Failed To Plead Facts Sufficient To Support A Plausible
                     Claim for Trademark Infringement or Unfair Competition Based
                     Upon Keyword Advertising........................................................4

            2.    TSI Has Failed To Plead Facts Sufficient To Support Its Claim Of
                     Unfair Competition Based Upon the Asserted Mountain Logos...............7

      B.    TSI'S FALSE ADVERTISING CLAIM (COUNT 3) SHOULD BE
            DISMISSED BECAUSE TSI BASES ITS CLAIM ON NON-
            ACTIONABLE PUFFERY ....................................................................10

            1.    The "#1 Rated Coldest Air" and "#1 Coldest Air" Statements ...............10

            2.    The New Statements Added to TSI's SA Complaint Fail to Support
                     a Viable False Advertising Claim and Should be Struck From
                     TSI's SA Complaint ..................................................................13

      C.    TSI'S ANTITRUST CLAIMS UNDER THE SHERMAN ACT SHOULD
            BE DISMISSED ..................................................................................16

             1.    TSI Fails to Define the Relevant Market.................................16

             2.    TSI Fails to Allege Antitrust Injury.......................................18

             3.    TSI Fails to Allege Unlawful, Anticompetitive Conduct .........................20

                 a.    TSI's Section 1 Claim (Count 4) fails to identify an
                     anticompetitive conspiracy .........................................21

                 b.    TSI's Section 2 monopolization claims (Counts 5-6) fail to
                       identify anticompetitive behavior beyond mere recitation of
                       the elements of a monopoly claim ................................22

      D.    TSI'S COMPLAINT FAILS TO STATE A CLAIM UNDER CUTPA..............23

            1.    TSI Has Failed To Plead Facts Sufficient To Support A Plausible
                       Claim for Relief under CUTPA ................................................23

V.    CONCLUSION..............................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*4C Foods Corp. v. Package Automation Co.,*
   No. 14-Civ-2212, 2014 WL 6602535 (S.D.N.Y. Nov. 18, 2014) ............................................. 1

*A.V.E.L.A., Inc. v. Estate of Marilyn Monroe, LLC,*
   241 F. Supp. 3d 461 (S.D.N.Y. 2017) ............................................................................. 17, 22

*Acad. of Motion Picture Arts & Scis. v. GoDaddy.com, Inc.,*
   10-cv-03738, 2015 WL 5311085 (C.D. Cal. Sept. 10, 2015) ......................................... 5

*AD/SAT, Div. of Skylight, Inc. v. Assoc. Press,*
   181 F.3d 216 (2d Cir. 1999) .............................................................................. 16

*Affinity LLC v. GfK Mediamark Research & Intelligence, LLC,*
   547 F. App'x 54 (2d Cir. 2013) ............................................................................ 22

*Allied Interstate LLC v. Kimmel & Silverman P.C.,*
   No. 12 Civ 4204, 2013 WL 4245987 (S.D.N.Y. Aug. 12, 2013) ................................... 6

*Alzheimer's Disease & Related Disorders Ass'n, Inc. v. Alzheimer's Found. of
   Am., Inc.,* 307 F. Supp. 3d 260 (S.D.N.Y. 2018) .................................................... 5

*Alzheimer's Found. of Am., Inc. v. Alzheimer's Disease & Related Disorders
   Ass'n, Inc.,*
   No. 10-Civ-3314, 2015 WL 4033019 (S.D.N.Y. June 29, 2015) ................................... 5

*Am. Footwear Corp. v. Gen. Footwear Co., Ltd.,*
   609 F.2d 655 (2d Cir. 1979) .......................................................................... 4

*Anderson News, L.L.C. v. Am. Media, Inc.,*
   680 F.3d 162 (2d Cir. 2012) .......................................................................... 21

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ................................................................................. *passim*

*Atl. Richfield Co. v. United States Petroleum Co.,*
   495 U.S. 328 (1990) ................................................................................. 19

*Bailey v. Interbay Funding, LLC,*
   No. 3:17-CV-1457, 2018 WL 1660553 (D. Conn. Apr. 4, 2018) ............................. 8

*Balaklaw v. Lovell,*
   14 F.3d 793 (2d Cir. 1994) .......................................................................... 18

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)..................................................................................*passim*

*Bookhouse of Stuyvesant Plaza, Inc. v. Amazon.com, Inc.,*
    985 F. Supp. 2d 612 (S.D.N.Y. 2013) ..............................................................19

*Bridal Expo, Inc. v. Van Florestein,*
    No. 4:08-cv-03777, 2009 WL 255862 (S.D. Tex. Feb. 3, 2009)..........................12

*Cinema Vill. Cinemart, Inc. v. Regal Entm't Grp.,*
    No. 15-CV-05488 (RJS), 2016 WL 5719790 (S.D.N.Y. Sept. 29, 2016), *aff'd,*
    708 F. App'x 29 (2d Cir. 2017) ........................................................................18

*CollegeSource, Inc. v. AcademyOne, Inc.,*
    No. 10-3542, 2012 WL 5269213 (E.D. Pa., Oct. 25, 2012), *aff'd* 597 Fed.
    App'x. 116 (3d Cir. 2016) ................................................................................6

*Concord Assocs., L.P. v. Entm't Props. Tr.,*
    817 F.3d 46 (2d Cir. 2016) ..............................................................................16

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.,*
    911 F.2d 242 (9th Cir. 1990) ...........................................................................11

*E & L Consulting, Ltd. v. Doman Indus. Ltd.,*
    472 F.3d 23 (2d Cir. 2006) ..............................................................................21

*Edwards v. N. Am. Power & Gas, LLC,*
    120 F. Supp. 3d 132 (D. Conn. 2015)...............................................................24

*EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.,*
    228 F.3d 56 (2d Cir. 2000) ................................................................................7

*FLM Collision Parts, Inc. v. Ford Motor Co.,*
    543 F.2d 1019 (2d Cir.1976) ...........................................................................23

*FTC v. Whole Foods Market, Inc.*
    548 F.3d 1028 (D.C. Cir. 2008).......................................................................17

*Gen. Steel Domestic Sales, LLC v. Chumley,*
    No. 10-cv-01398, 2013 WL 1900562 (D. Colo. May 7, 2013) ............................6

*Goldline, LLC v. Regal Assets, LLC,*
    No. 14-cv-03680, 2015 WL 1809301 (C.D. Cal. Apr. 21, 2015)...........................5

*Gruner + Jahr USA Pub. v. Meredith Corp.,*
    991 F.2d 1072, 1074 (2d Cir. 1993) ..................................................................4

*Gupte v. Watertown Bd. of Educ.,*
    No. 3:17-cv-283, 2018 WL 4054880 (D. Conn. Aug. 24, 2018)............................................14

*Hackett v. Feeney,*
    No. 2:09-cv-02075, 2011 WL 4007531 (D. Nev. Sept. 8, 2011) ...........................................12

*Hearst Bus. Publ'g, Inc. v. W.G. Nichols, Inc.,*
    76 F. Supp. 2d 459 (S.D.N.Y. 1999) ..................................................................................11

*Hill's Pet Nutrition, Inc. v. Nutro Prods., Inc.,*
    258 F. Supp. 2d 1197 (D. Kan. 2003)...................................................................................12

*Home Show Tours, Inc. v. Quad City Virtual, Inc.,*
    827 F. Supp. 2d 924 (S.D. Iowa 2011) .................................................................................12

*Island Software & Computer Serv., Inc. v. Microsoft Corp.,*
    413 F.3d 257 (2d Cir.2005) ..................................................................................................10

*L.A. Limousine, Inc. v. Liberty Mut.. Ins. Co.,*
    509 F.Supp.2d 176 (D. Conn. 2007)......................................................................................24

*La. Wholesale Drug Co., Inc. v. Shire LLC,*
    929 F. Supp. 2d 256 (S.D.N.Y. 2013), *aff'd sub nom., In re Adderall XR*
    *Antitrust Litig.*, 754 F.3d 128 (2d Cir. 2014)........................................................................20

*Le Bouteiller v. Bank of New York Mellon,*
    No. 14-CIV-6013, 2015 WL 5334269 (S.D.N.Y. Sept. 11, 2015) ...........................................4

*Lipton v. Nature Co.,*
    71 F.3d 464 (2d Cir. 1995) ........................................................................................11, 14, 15

*In re Livent, Inc. Noteholders Sec. Litig.,*
    151 F. Supp. 2d 371 (S.D.N.Y. 2001) ..................................................................................3

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
    475 U.S. 574 (1986)...............................................................................................................21

*Mayor & City Council of Baltimore, Md. v. Citigroup, Inc.,*
    709 F.3d 129 (2d Cir. 2013) ...................................................................................................1

*NicSand, Inc. v. 3M Co.,*
    507 F.3d 442 (6th Cir. 2007) .................................................................................19, 22, 23

*In re Parcel Tanker Shipping Servs. Antitrust Litig.,*
    541 F. Supp. 2d 487 (D. Conn. 2008)......................................................................................3

*PepsiCo, Inc. v. Coca-Cola Co.,*
    315 F.3d 101 (2d Cir. 2002) .......................................................................................16, 18, 22

*Pizza Hut, Inc. v. Papa John's Int'l,*
    Inc., 227 F.3d 489, 497 (5th Cir. 2000)) ........................................................... 11, 12

*Rexall Sundown, Inc. v. Perrigo Co.,*
    651 F. Supp. 2d 9 (E.D.N.Y. 2009) .................................................................... 12

*Ruffolo v. Oppenheimer & Co.,*
    987 F.2d 129 (2d Cir. 1993) ............................................................................... 3

*RxUSA Wholesale, Inc. v. Alcon Labs., Inc.,*
    661 F. Supp. 2d 218 (E.D.N.Y. 2009), *aff'd sub nom*, 391 F. App'x 59 (2d
    Cir. 2010) ......................................................................................................... 23

*Saidin v. New York City Dep't of Educ.,*
    498 F. Supp. 2d 683 (S.D.N.Y. 2007) ................................................................ 4

*Telebrands Corp. v. Del Labs., Inc.,*
    719 F.Supp.2d 283 (S.D.N.Y. 2010) .................................................................. 8

*The Armor All/STP Products Co. v. TSI Products, Inc. et al.,*
    C.A. No. 3:17-cv-01131 ..................................................................................... 2

*Thompson Med. Co. v. Pfizer Inc.,*
    753 F.2d 208 (2d Cir.1985) ............................................................................... 7

*Time Warner Cable, Inc. v. DIRECTV, Inc.,*
    497 F.3d 144 (2d Cir. 2007) ............................................................................... 11

*Trex Co., Inc. v. CPG Int'l LLC,*
    No. 5:17-cv-00005, 2017 WL 3272013 (W.D. Va. Aug. 1, 2017) ...................... 12

*United States v. E.I. du Pont de Nemours & Co.,*
    351 U.S. 377 (1956) .......................................................................................... 16

*Virgin Atl. Airways, Ltd v. British Airways PLC,*
    257 F.3d 256 (2d Cir. 2001) ............................................................................... 18

*Vizio, Inc. v. Klee,*
    No. 3:15-cv-00929 (VAB), 2016 WL 1305116 (D. Conn. Mar. 31, 2016) ........... 3

**Statutes**

15 U.S.C. § 1 ............................................................................................................ 21

15 U.S.C. § 1114 ...................................................................................................... 4

15 U.S.C. § 1125(a) ................................................................................................. 4, 5

*Conn. Gen. Stat. Ann.* § 42-110b(a) ....................................................................... 24

Connecticut Unfair Trade Practices Act ...........................................................................23, 24, 25

Lanham Act .............................................................................................................................*passim*

Lanham Act Section 43(a)(1)(B) ............................................................................................ 15

Sherman Act ...........................................................................................................................*passim*

**Other Authorities**

Fed. R. Civ. P. 11.....................................................................................................................1, 13

Fed. R. Civ. P. 12(b)(6) ..........................................................................................................11, 22

## I.     **INTRODUCTION**

By Order dated December 4, 2018, this Court provided Plaintiff TSI Products, Inc. ("TSI") the chance to "plead[] as many facts as possible, consistent with Rule 11" to cure the specific, fatal deficiencies that Defendants The Armor All/STP Products Company ("AA/STP"), Spectrum Brands Holdings, Inc., ("Spectrum"), Guy Andrysick ("Andrysick") and Robert DeRidder ("DeRidder") (collectively "the Armor All Defendants") had identified in their previously-filed motion to dismiss TSI's earlier First Amended Complaint ("FA Complaint"). (Dkt. No. 94). *See* Dkt. No. 95 (December 4, 2018 Order). Despite that opportunity, TSI's Second Amended Complaint ("SA Complaint") fails to fix these deficiencies. Instead, TSI clogs the SA Complaint with further conclusory and speculative statements. Moreover, TSI has ignored the boundaries set by the Court's Order, which expressly limited the scope of permissible amendments to the addition of factual allegations *responsive to defects* identified in the original motion to dismiss. *See id.*

## II.    **PRELIMINARY STATEMENT**

Early dismissal of complaints that fail to meet the threshold requirement of plausibility promotes judicial economy and eliminates the unwarranted burden and expense of "unlock[ing] the doors of discovery." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *see also Mayor & City Council of Baltimore, Md. v. Citigroup, Inc.*, 709 F.3d 129, 137 (2d Cir. 2013) (affirming motion to dismiss and declining to "propel[ ] defendants into expensive antitrust discovery on the basis of acts that could just as easily turn out to have been rational business behavior as they could a proscribed antitrust conspiracy"); *4C Foods Corp. v. Package Automation Co.*, No. 14-Civ-2212, 2014 WL 6602535, at *5 (S.D.N.Y. Nov. 18, 2014) (granting motion to dismiss, denying plaintiff's request "to authorize a fishing expedition so it can try to fill in that glaring hole in its pleading," noting "[t]he point of *Twombly* and *Iqbal* was to end the practice of subjecting parties

to the considerable expense and inconvenience of litigation without cause") (citations omitted).

TSI's SA Complaint is the latest iteration of a retaliatory filing TSI made after AA/STP filed the lead case in this consolidated litigation.[1] Even at the pleading stage, the Court can dispose of all of TSI's claims, as they each continue to suffer from incurable deficiencies that render dismissal appropriate. By way of example, in Counts 4-6 of the SA Complaint, TSI cobbles together implausible antitrust claims contradicted by its own pleadings. TSI has also failed to allege facts that are necessary to sustain key elements of its antitrust claims (*e.g.*, it has not plead an antitrust injury, anticompetitive conduct, or properly defined a relevant market). The balance of the allegations in TSI's SA Complaint suffers from similar flaws.

All of TSI's claims fail on the pleadings. The overbreadth and implausibility of TSI's SA Complaint combine to demonstrate this is a retaliatory complaint that fails to set forth a well-plead basis for relief. The Armor All Defendants respectfully submit that this Court should not allow such action to waste court time and the parties' expenses and should narrow this action at this stage by dismissing with prejudice all of TSI's legally baseless claims and demands for damages.

## III.    **LEGAL STANDARD**

To survive a motion to dismiss, a plaintiff must plead sufficient "facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Iqbal*, 556 U.S. at 679 ("[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss.") (citation omitted). Under this standard, a plaintiff must allege "more than a

---

[1] In July 2017, AA/STP filed suit against TSI and two of its officers in a case pending before this Court as *The Armor All/STP Products Co. v. TSI Products, Inc. et al.*, C.A. No. 3:17-cv-01131 (i.e., the lead case in this consolidated action). Rather than responding to AA/STP's complaint, TSI instead assembled its own retaliatory complaint, which was filed in the U.S. District Court for the Northern District of Texas and eventually transferred to this Court for consolidation with AA/STP's earlier-filed action. The present motion is directed to TSI's consolidated action.

sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 679. Indeed, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). A plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (citation omitted). A court should not credit pleadings "that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice." *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 405-06 (S.D.N.Y. 2001).

Courts must be rigorous in ensuring that a plaintiff's claims rise to the level of plausibility, because this requirement serves a critical gate-keeping role in complex litigations, particularly those with antitrust claims, where the threat of vast and costly discovery can provide plaintiffs with significant leverage, regardless of the ultimate merits of their claims. *Twombly*, 550 U.S. at 557-59 (explaining, in the context of an antitrust class action, that the "obvious" "potential expense" of discovery can permit plaintiffs to extract "*in terrorem*" settlements from defendants through far-reaching but groundless claims). A complaint that merely states "labels and conclusions" or tenders "naked assertion[s]," without "further factual enhancement" is insufficient. *Id.* at 555, 557; *see also In re Parcel Tanker Shipping Servs. Antitrust Litig.*, 541 F. Supp. 2d 487, 492 (D. Conn. 2008) (dismissing conspiracy claim because "[a]lthough the complaint alleges conspiratorial activity, it does not allege facts tending to show how these activities were accomplished" but merely used "labels and conclusions").

Finally, it is well established that courts may dismiss claims with prejudice when it is

apparent that a plaintiff will be unable to state a viable cause of action. *See Vizio, Inc. v. Klee*, No. 3:15-cv-00929 (VAB), 2016 WL 1305116, at *28 (D. Conn. Mar. 31, 2016) (granting a motion to dismiss all claims with prejudice "because amendment of the Complaint would be futile"); *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) (affirming dismissal with prejudice because, "[w]here it appears that granting leave to amend is unlikely to be productive [] it is not an abuse of [the district court's] discretion to deny leave to amend"). Dismissal with prejudice is particularly appropriate when a court has previously granted leave to correct a defective pleading and the amended pleading does not cure its defects. *See Saidin v. New York City Dep't of Educ.*, 498 F. Supp. 2d 683, 690 (S.D.N.Y. 2007); *Le Bouteiller v. Bank of New York Mellon*, No. 14-CIV-6013, 2015 WL 5334269, at *11 (S.D.N.Y. Sept. 11, 2015) ("Plaintiff filed the Amended Complaint in response to Defendants' motion to dismiss the Complaint. . . . [H]owever, Plaintiff did not remedy any of the deficiencies Defendants had identified in their first motion to dismiss. . . . Accordingly, any amendment would be futile, and Plaintiff's claims will be dismissed without leave to amend.").

## IV.   ARGUMENT

### A.   TSI'S TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION CLAIMS (COUNTS 1 AND 2) SHOULD BE DISMISSED.

To succeed on its federal trademark infringement claim under 15 U.S.C. § 1114, TSI must prove that: (i) "its mark is entitled to protection;" and (ii) "even more important, that the defendant's use of its own mark will likely cause confusion with the plaintiff's mark." *Gruner + Jahr USA Pub. v. Meredith Corp.*, 991 F.2d 1072, 1074 (2d Cir. 1993). This same test also applies to TSI's claim for unfair competition under 15 U.S.C. § 1125(a). *See Am. Footwear Corp. v. Gen. Footwear Co., Ltd.*, 609 F.2d 655, 663-64 (2d Cir. 1979).

4

1.   **TSI Has Failed To Plead Facts Sufficient To Support A Plausible Claim for Trademark Infringement or Unfair Competition Based Upon Keyword Advertising.**

TSI alleges that AA/STP used the term AVALANCHE in keyword advertising, and that this use constitutes infringement under Section 1114. TSI then claims that use of the AVALANCHE and AC/AVALANCHE wordmarks in keyword advertising – without more – constitutes unfair competition under Section 1125(a) and that this is likely to cause consumer confusion in view of TSI's putative rights in the AVALANCHE and A/C AVALANCHE wordmarks.

To the contrary, "courts have repeatedly found that the purchase of a competitor's marks as keywords alone, *without additional behavior that confuses consumers*, is not actionable." *Alzheimer's Disease & Related Disorders Ass'n, Inc. v. Alzheimer's Found. of Am., Inc.*, 307 F. Supp. 3d 260, 287 (S.D.N.Y. 2018) (emphasis added) (citation omitted). Indeed, "[t]here is a growing consensus in the case authorities that keyword advertising does not violate the Lanham Act." *Acad. of Motion Picture Arts & Scis. v. GoDaddy.com, Inc.*, 10-cv-03738, 2015 WL 5311085, at *50-51 (C.D. Cal. Sept. 10, 2015) (citation omitted). The U.S. District Court for the Southern District of New York has provided the following instructive guidance, which explains why such use is typically non-actionable:

> Companies can and do regularly purchase other companies' marks as search keywords and use those companies' trademarks in the text of their search advertising in order to draw a contrast with the searched-for product and offer their own as an alternative. For instance, a Yahoo! search for the term "Honda Civic" brings up ads linking to websites from Hyundai, Volkswagen, and Toyota, comparing the Civic to their cars and suggesting that the consumer purchase an Elantra, Jetta, or Corolla instead. Although such advertisements use trademarked terms in commerce and are geared toward increasing the ad buyer's business at the trademark holder's expense, they do not implicate the Lanham Act because they draw a clear distinction between the products and do not imply the trademark holder's sponsorship or approval.

*Alzheimer's Found. of Am., Inc. v. Alzheimer's Disease & Related Disorders Ass'n, Inc.*, No. 10-

Civ-3314, 2015 WL 4033019, at *6 (S.D.N.Y. June 29, 2015). Courts have applied similar reasoning when dismissing claims for infringement and unfair competition at the motion to dismiss (and other) procedural stages. *See e.g., Goldline, LLC v. Regal Assets, LLC*, No. 14-cv-03680, 2015 WL 1809301, at *3 (C.D. Cal. Apr. 21, 2015) (dismissing trademark claims based on keyword advertising because use of marks as a search engine keyword, alone, was unlikely to cause confusion as to the origin or affiliation of defendant's products or services); *Gen. Steel Domestic Sales, LLC v. Chumley*, No. 10-cv-01398, 2013 WL 1900562, at *9 (D. Colo. May 7, 2013) (holding no likelihood of confusion where defendant used plaintiff's trademark in its Google AdWords advertisement and where defendant purchased plaintiff's trademark as keyword ad trigger for sponsored links); *CollegeSource, Inc. v. AcademyOne, Inc.*, No. 10-3542, 2012 WL 5269213, at *19-20 (E.D. Pa., Oct. 25, 2012), *aff'd* 597 Fed. App'x. 116 (3d Cir. 2016) (finding no likelihood of confusion where search engine results labeled sponsored links as ads).

Claims of trademark infringement and/or unfair competition related to the use of keywords may be decided at the motion to dismiss stage. *See Allied Interstate LLC v. Kimmel & Silverman P.C.*, No. 12 Civ. 4204, 2013 WL 4245987, at *6 (S.D.N.Y. Aug. 12, 2013) (granting motion to dismiss claims of trademark infringement, unfair competition, as well as other claims). In *Allied*, the plaintiff provided quotations from the defendant's advertising and exemplary internet search results (*e.g.,* analogous to the cited support in TSI's SA Complaint). The Court took notice of the fact that the format and labels provided with Google's search results mitigated the potential for confusion. "[T]he Google search result labels the sponsored advertising as 'Ads related to allied interstate' – a description that *in no way suggests that it is advertising for or by Plaintiff.*" *Id.* (emphasis added). The Court further found that the display of the defendant's services in the search results associated with the trademarked keyword did not result in confusion

stating:

> The allegations and exemplars demonstrate that, as a result of Defendants' use of the ALLIED INTERSTATE ™ mark, advertising for Defendants' services will be displayed in response to a query for "Allied Interstate." *That result is an indicator of the relevance, not of the source of Defendants' advertising.*

*Id.* (emphasis added).

An analogous analysis applies to TSI's pleadings in the present action. TSI's SA Complaint provides quotations and images showing exemplary search results generated by Google's search engine in response to a query containing TSI's alleged trademarks. *See* SA Complaint ¶ 139. TSI's SA Complaint relies on this screenshot as the foundation for its claim. *See e.g.*, SA Complaint ¶¶ 141-144. That said, TSI's own pleadings show that the search results produced by this query prominently label AA/STP's link as an "Ad." SA Complaint ¶ 140. Indeed, AA/STP's search result is only one of several such "Ads" produced in response to this query. *See id.* (showing additional third-party ad links for automotive air conditioner repair websites). Notably, TSI has failed to plead that the A/C Pro webpage hosted at the address associated with AA/STP's search result contains *any* reference to TSI or its AVALANCHE products.[2] In short, TSI has failed to set forth a plausible claim for either trademark infringement or unfair competition under the Lanham Act and dismissal with prejudice is therefore proper.

### 2. TSI Has Failed To Plead Facts Sufficient To Support Its Claim Of Unfair Competition Based Upon the Asserted Mountain Logos.

"A plaintiff claiming unfair competition under § 43(a) must show that it *owns* a valid trademark." *EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.*, 228 F.3d 56, 62 (2d Cir. 2000) (emphasis added); *see Thompson Med. Co. v. Pfizer Inc.*, 753 F.2d 208, 215

---

[2] TSI's SA Complaint includes a link to this webpage in ¶ 144. However, it has not provided a screenshot of this webpage. The Internet Archive website captured a snapshot of this webpage as it appeared to visitors five days before TSI filed its previous FA Complaint. *See* **Exhibit 1**, which shows the A/C Pro webpage identified in ¶ 144 of TSI's SA Complaint as it appeared on November 3, 2017).

(2d Cir.1985) ("The starting point of our examination [of a claim under § 43(a)] is determining whether a mark is eligible for protection."). TSI now apparently alleges that it has trademark rights related to the use of two logos in connection with the sale of refrigerant products (hereinafter, TSI's "Asserted Mountain Logos"). *See* SA Complaint ¶¶ 36-39. These logos include a blue and white logo containing the words AC AVALANCHE and a stylized mountain design, and a new black and white logo which includes the words BLACK DIAMOND AVALANCHE and a stylized mountain design. *See* SA Complaint ¶¶ 37-38. Images of both of the Asserted Mountain Logos are shown below:



The Asserted Mountain Logos

TSI alleges that it owns both of the Asserted Mountain Logos. *See* SA Complaint ¶¶ 37-38. Notably, however, TSI does not have any such rights: it never registered nor acquired any goodwill in the Asserted Mountain Logos, nor does it have the right to sue for damages or alleged unfair competition of these marks.

To the extent there are any rights in the Asserted Mountain Logos, *Michael Quest has them*. The August 2, 2017 assignment document that TSI recorded at the U.S. Patent and Trademark Office ("USPTO") confirms that Michael Quest has retained these rights. *See* **Exhibit 2** (courtesy copy of assignment document recorded at Reel No. 6121, Frame No. 0458 with USPTO ("Assignment agreement")).[3] Particularly:

- **Section I(A)** of this Assignment agreement identifies Michael Quest "as

---

[3] The Court may take judicial notice of this Assignment agreement when deciding the instant motion. *See Bailey v. Interbay Funding, LLC,* No. 3:17-CV-1457, 2018 WL 1660553, at *2 (D. Conn. Apr. 4, 2018) (granting a motion to dismiss and noting that "[a]t the pleading stage, courts may take judicial notice of matters of public record."); *Telebrands Corp. v. Del Labs., Inc.,* 719 F.Supp.2d 283, 287 n.3 (S.D.N.Y. 2010) ("The Court may properly take judicial notice of official records of the United States Patent and Trademark Office").

owner of the trademarks and any and all trade dress associated therewith ('the Marks') as described in Exhibit A . . . [and] the goodwill of the business symbolized thereby in connection with the goods and services on which, or in conjunction with which, the Marks are used."

- **Exhibit A** of the Assignment agreement is limited to four registered U.S. trademarks: AVALANCHE, SMART CLIP TECHNOLOGY, TRIPLE SEAL and BLACK DIAMOND AVALANCHE.

- **Section II (1.1)** of the Assignment agreement appears to state that Michael Quest assigned "all of [his] worldwide right, title, and interest in and to the Marks" listed on Exhibit A as well as "the goodwill" associated with and "all rights to sue for past, present and future unfair competition" relating to these specific Marks.

- **Section II (1.2)** further sets forth that Michael Quest "conveys, transfers, assigns, delivers, and contributes to [TSI] all rights in the trade dress, labels, and designs associated with the Marks."

Notably, the Assignment document and its exhibit fail to mention the Asserted Mountain Logos in any form. Rather, the wording of these provisions indicates that the scope of rights transferred by Section II (1.1) was more extensive than the scope of rights transferred by Section II (1.2). Section II (1.2) is silent as to any transfer of the *goodwill* associated with trade dress, labels and design *or* damages *or* the right to sue for unfair competition. In view of the attention to detail in Section II (1.1), which includes a detailed inventory of the rights being transferred, the omission in Section II (1.2) confirms that TSI does not own these rights (*i.e.,* Michael Quest is the owner). TSI has thus failed to plead facts sufficient to show ownership of a right to sue for alleged unfair competition of the Asserted Mountain Logos or of the goodwill associated with these marks and therefore has failed to state a plausible claim upon which relief can be granted.

TSI has also failed to plead plausible allegations of prior rights in the Asserted Mountain Logos that could support an actionable claim. TSI's SA Complaint alleges a date of first commercial use of these marks in 2015. *See* Dkt. #96 ¶¶ 40-42 (identifying a date of first use in January 2015 for blue and white mountain logo and in April for the black and white mountain

logo). TSI then self-servingly asserts that AA/STP first used a mountain logo on its ARCTIC FREEZE products beginning in 2017, suggesting that AA/STP is the junior user of this mark in view of TSI's claimed date of first use in January 2015. *See id.*, ¶¶ 157, 159. This conclusory statement in the SA Complaint regarding AA/STP's date of first commercial use is not based on any factual support and runs contrary to indisputable facts of which this Court can take judicial notice. Indeed, AA/STP's first commercial use of a mountain logo on product labels and in marketing materials for its ARCTIC FREEZE product line began "in or prior to May 2014." Dkt. #9 at ¶ 30; *see id.* at ¶ 31 (showing exemplary images of AA/STP's ARCTIC FREEZE product featuring a mountain logo well prior to January 2017). AA/STP's position is specifically supported by U.S. Copyright Registration No. VA0002121770, entitled "ARCTIC FREEZE Mountain Label" which lists a date of publication of at least June 1, 2014, of which the Court may take judicial notice of at the motion to dismiss stage. *See e.g., Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 261 (2d Cir.2005) (taking judicial notice of federal copyright registrations, as published in the Copyright Office's registry); *see* **Exhibit 3**.

In short, TSI's claim of unfair competition relating to AA/STP's use of a mountain logo on its ARCTIC FREEZE products should be dismissed. TSI's SA Complaint sets forth a date of first commercial use in January 2015, at least several months *after* AA/STP's first commercial use of a mountain logo on its ARCTIC FREEZE products. While well-pleaded factual allegations in the complaint are presumed to be true for the purpose of a motion to dismiss, no such presumption is granted to conclusory statements. *See Iqbal*, 556 U.S. at 678. TSI's mere *speculation* regarding AA/STP's date of first commercial use of a mountain logo lacks factual support and cannot sustain a plausible claim for relief. As such, TSI's unfair competition claim should be dismissed with prejudice.

**B.     TSI'S FALSE ADVERTISING CLAIM (COUNT 3) SHOULD BE DISMISSED BECAUSE TSI BASES ITS CLAIM ON NON-ACTIONABLE PUFFERY.**

### 1.     The "#1 Rated Coldest Air" and "#1 Coldest Air" Statements.

To state a claim for false advertising, a plaintiff must allege facts that could plausibly support a reasonable inference that: (1) "the challenged advertisement is literally false, *i.e.*, false on its face" or (2) "the advertisement, while not literally false, is nevertheless likely to mislead or confuse consumers." *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 153 (2d Cir. 2007) (citations omitted). If the plaintiff chooses the latter option, relying on an "impliedly false" theory, the complaint must support a reasonable inference that the challenged advertisement contains material misrepresentations that are likely to mislead and confuse consumers. *See Hearst Bus. Publ'g, Inc. v. W.G. Nichols, Inc.*, 76 F. Supp. 2d 459, 468-69 (S.D.N.Y. 1999) (citations omitted). Courts may determine as a matter of law that a particular statement is puffery when ruling on a motion to dismiss under Rule 12(b)(6). *See e.g., Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 245 (9th Cir. 1990) ("District courts often resolve whether a statement is puffery when considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)[,] and we can think of no sound reason why they should not do so.").

Courts in the Second Circuit and elsewhere have recognized that claims for false advertising under the Lanham Act are limited to factually-provable statements. *See e.g., Lipton v. Nature Co.*, 71 F.3d 464, 474 (2d Cir. 1995). In contrast, "[s]ubjective claims about products, which cannot be proven either true or false" qualify as mere "puffery" which cannot support a false advertising claim. *Id.* (internal quotation marks omitted). More recently, the Second Circuit explained that at least two different forms of non-actionable puffery are recognized in this Circuit. *See Time Warner Cable*, 497 F.3d at 160 (adopting the Fifth Circuit's definition of "puffery" set forth in *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 497 (5th Cir.

2000)). The first form is "a general claim of superiority over comparable products that is so vague that it can be understood as nothing more than a mere expression of opinion" and the second form is "an exaggerated, blustering, and boasting statement upon which no reasonable buyer would be justified in relying." *Id.* (quoting *Pizza Hut, Inc.*, 227 F.3d at 497).

Courts tasked with adjudicating false advertising claims have recognized that vague statements regarding the superiority of a given product (*e.g.*, referring to a product or service as "#1" with regard to an industry or quality) constitute non-actionable puffery as a matter of law. *See e.g.*, *Trex Co., Inc. v. CPG Int'l LLC*, No. 5:17-cv-00005, 2017 WL 3272013, at *10-11 (W.D. Va. Aug. 1, 2017) (granting motion to dismiss and finding *multiple* "#1" statements to be mere puffery); *Bridal Expo, Inc. v. Van Florestein*, No. 4:08-cv-03777, 2009 WL 255862, at *7 (S.D. Tex. Feb. 3, 2009) ("Houston's #1 Bridal Show" falls "neatly into the category of 'bald assertion of superiority or a general statement of superiority' that the *Pizza Hut* court described as puffery"); *Home Show Tours, Inc. v. Quad City Virtual, Inc.*, 827 F. Supp. 2d 924, 937 (S.D. Iowa 2011) ("the #1 FSBO destination in the [Quad-City Area]" is a bald assertion of superiority which qualifies as puffery); *Hackett v. Feeney*, No. 2:09-cv-02075, 2011 WL 4007531, at *4 (D. Nev. Sept. 8, 2011) ("Voted #1 Best Show in Vegas" qualifies as puffery).

In addition to recognizing such statements as bald assertions of superiority, courts have also recognized that "#1" statements qualify as puffery when it is unclear how a property should be measured (*e.g.*, resulting in an ambiguous statement that is open to interpretation). *See Rexall Sundown, Inc. v. Perrigo Co.*, 651 F. Supp. 2d 9, 34-35 (E.D.N.Y. 2009) (refusing to find that statement "No. 1 Dr. Recommended Joint Care Brand" is false because it is unclear how that term was being measured); *Hill's Pet Nutrition, Inc. v. Nutro Prods., Inc.*, 258 F. Supp. 2d 1197, 1209 (D. Kan. 2003) (dog food advertisement stating "Natural Choice – #1 in America's Pet

Stores" found to be non-actionable because it did not specify how "#1" was being measured).

In the present case, TSI has merely alleged that the statements "#1 Rated Coldest Air" and "#1 Coldest Air" used on AA/STP's A/C Pro refrigerant product labels and marketing materials are either false or materially deceptive and likely to influence consumers' purchasing decisions. *See e.g.,* SA Complaint ¶¶ 110-134, 308. However, courts have recognized that "#1" statements are common and routinely held to qualify as non-actionable puffery since consumers regularly recognize and discount such assertions. Alternatively, both statements qualify as puffery because neither statement specifies how the "#1" was measured, resulting in vague statements that are open to multiple reasonable interpretations. The "#1" statements challenged by TSI are classic examples of the vague and exaggerated puffery routinely encountered by consumers. As illustrated by the caselaw cited above, such statements cannot form the basis for an actionable claim of false advertising under the Lanham Act. TSI has not and cannot plead facts that would result in a plausible claim for relief and therefore this claim should be dismissed.

      **2.       The New Statements Added to TSI's SA Complaint Fail to Support a Viable False Advertising Claim and Should be Struck From TSI's SA Complaint.**

TSI has greatly expanded this count in the SA Complaint, and now asserts allegations of false advertising regarding 12 additional statements unrelated to the two statements identified in TSI's previous FA Complaint. In doing so, TSI has blatantly exceeded the narrow leave to amend authorized by the Court's December 4, 2018 Order. *See* Dkt. #95. This Order instructed TSI to "plead[] as many facts as possible, consistent with Rule 11, *to address the alleged defects* discussed in Defendants' memorandum of law." *Id.* (emphasis added). It did *not* grant TSI free reign for adding a laundry list of additional unrelated statements to its false advertising count as well as numerous allegations purportedly in support of those gratuitous additions. All of the new statements cited by TSI were in use on publicly-available product labels and marketing materials

13

well before the filing of TSI's *original* complaint nearly 18 months ago. The addition of these statements to the present action at this stage is inexplicable, untimely, and prejudicial to the Armor All Defendants.

This Court has previously recognized that it is proper to deny amendments submitted after an inordinate delay, particularly, in cases where the plaintiff fails to provide a satisfactory explanation for the delay, and where such amendments would prejudice a defendant. *See Gupte v. Watertown Bd. of Educ.*, No. 3:17-cv-283, 2018 WL 4054880, at *2 (D. Conn. Aug. 24, 2018) (citing *Grace v. Rosenstock*, 228 F.3d 40, 53–54 (2d Cir. 2000)). TSI's introduction of "new" facts and additional causes of action, all of which could have been pled almost 18 months ago at the inception of this litigation should be stricken from the SA Complaint. The Armor All Defendants have thus respectfully moved the Court to strike portions of TSI's SA Complaint in a separate motion concurrently submitted with this motion to dismiss.[4] In the event that TSI is allowed to proceed with this significant number of new allegations and claims under this Count, defendant AA/STP reserves the right to seek leave to expand similarly the false advertising Count in its own complaint filed in the lead case of this consolidated litigation.

Notwithstanding the above, the new statements challenged by TSI may be disposed of at this stage because they are non-actionable (*i.e.*, as non-misleading statements of fact, as subjective statements of opinion, or as mere puffery). As noted above, courts in the Second Circuit have recognized that claims for false advertising under the Lanham Act are limited to factually-provable statements. *See Lipton*, 71 F.3d at 464. The following statements identified by TSI in ¶ 342 of the SA Complaint are clearly subjective in nature and thus cannot qualify as provable statements that could support a false advertising claim:

---

[4] *See* The Armor All Defendants' Partial Motion to Strike (Dkt. #103). The Court's December 4, 2018 Order indicates that TSI will not be given any further opportunities to amend its complaint. *See* Dkt. No. 95.

a.      "Extend AC Life";

b.      "Protect [AC] system";

c.      "Come with everything you need to recharge your system with no additional tools or equipment";

d.      Provide an "all-in-one solution";

e.      Permit one to recharge their system in "just three easy steps";

f.      Include gauges which provide for fast, easy, and/or convenient recharging;

g.      Include gauges which provide for accurate recharging; and

h.      "[M]ake filling your system to the proper level fast and easy."

None of these statements recite *specific* performance or comparative claims that could conceivably be proven true or false (*e.g.*, there is no objective basis to measure or evaluate these statements). Furthermore, several of these statements include subjective terms – *e.g.*, references to "fast," "easy" or "convenient" steps or elements.[5] "Subjective claims about products, which cannot be proven either true or false" qualify as mere "puffery" which cannot support a false advertising claim. *Lipton,* 71 F.3d at 474. In view of this well-established principle, there are no facts which TSI could plead to render these claims anything more than mere puffery.

The additional statements included in ¶ 340 are similarly non-actionable:

a. "[P]rovide the coldest air;"

d. Have "2X cooling boosters"; and

e. Have been "independently tested to deliver the coldest air from your vehicle" and help "a vehicle's A/C produce the coldest air."

These statements do not recite claims that could be proven true or false, and as above, represent

---

[5] Section 43(a)(1)(B) of the Lanham Act only prohibits false or misleading statements of fact *made by a defendant.* Statements (f) and (g) appear to be Plaintiff providing its own interpretation of Defendants' products and so neither constitutes a "statement" capable of redress under the false advertising provisions of the Lanham Act.

mere puffery which cannot support a false advertising claim. TSI's false advertising claims should thus be dismissed with prejudice.

**C.   TSI'S ANTITRUST CLAIMS UNDER THE SHERMAN ACT SHOULD BE DISMISSED.**

As already noted above, Amended Counts 4-6 of the SA Complaint cannot support a claim for relief and should be dismissed with prejudice. To survive a motion to dismiss, a Sherman Act claim must: (1) define the relevant market; (2) allege an antitrust injury; and (3) allege conduct in violation of the antitrust laws. *Concord Assocs., L.P. v. Entm't Props. Tr.*, 817 F.3d 46, 52 (2d Cir. 2016). TSI fails to plead any of these elements. Vague, conclusory allegations of anticompetitive conduct are insufficient as a matter of law to support a Sherman Act claim. *See Twombly*, 550 U.S. at 555, 557.

**1.   TSI Fails to Define the Relevant Market.**

The relevant market is the "'area of effective competition' within which the defendant operates." *AD/SAT, Div. of Skylight, Inc. v. Assoc. Press*, 181 F.3d 216, 227 (2d Cir. 1999) (quoting *Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 327–28 (1961)). A relevant product market consists of "products that have reasonable interchangeability for the purposes for which they are produced—price, use and qualities considered." *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 404 (1956). "Products will be considered to be reasonably interchangeable if consumers treat them as 'acceptable substitutes.'" *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (quoting *FTC v. Cardinal Health, Inc.*, 12 F.Supp.2d 34, 46 (D.D.C.1998) ("[T]he relevant market consists of all of the products that the Defendants' customers view as substitutes to those supplied by the Defendants.")). This requires a plaintiff to define a market by reference to how consumers choose among the relevant products: "When the proposed relevant market is defined without 'reference to the rule of reasonable

interchangeability and cross-elasticity of demand,' or 'clearly does not encompass all interchangeable substitute products . . . the relevant market is legally insufficient and a motion to dismiss may be granted.'" *A.V.E.L.A., Inc. v. Estate of Marilyn Monroe, LLC*, 241 F. Supp. 3d 461, 482 (S.D.N.Y. 2017) (*quoting Spinelli v. Nat'l Football League*, 96 F. Supp. 3d 81, 111 (S.D.N.Y. 2015)). The boundaries of a relevant product market within a broader market "may be determined by examining such practical indicia as industry or public recognition of the [relevant market] as a separate economic entity, the product's peculiar characteristics and uses, unique production facilities, distinct customers, distinct prices, sensitivity to price changes, and specialized vendors." *FTC v. Whole Foods Market, Inc.* 548 F.3d 1028, 1037–38 (D.C. Cir. 2008).

TSI fails to identify how consumers choose among substitute products and, instead, asserts in conclusory fashion that the relevant market consists only of the narrow set of products that TSI sells: "value-added automotive AC recharge kits." SA Complaint ¶¶ 180-181, 193-200. TSI's description of this narrow market is implausible on its face, glossing over at least three sets of competitors that necessarily expand the relevant market and render meaningless TSI's definition. First, TSI's description of the relevant product market as "do-it-yourself" products necessarily means that a consumer also has the option to seek professional help (*i.e.*, a service station). TSI fails to explain why or how competition and substitutability is restricted to the do-it-yourself market. Second, despite alleging that "value-added" products are not substitutable with "non-value-added products," TSI admits that consumers choose among these products. *See* SA Complaint ¶¶ 178-186. While TSI describes the differences, TSI fails to explain how they are not part of the same market, competing for the same consumers' purchases. TSI even contradicts itself, admitting several times that competition may be assessed for the "overall market for DIY

automotive recharge in the United States" and not just the narrowed set of value-added products. SA Complaint ¶¶ 1, 197, 200. <u>Third</u>, TSI's allegations refer only to the market for retailers' shelf space. *See* SA Complaint ¶¶ 215-233. This ignores that do-it-yourselfers also buy product online, without ever looking at shelf space. TSI makes no allegation about whether its products were excluded from retailers' online storefronts. Indeed, a simple online search confirms that retailers about which TSI complains sell the Armor All Defendants' refrigerant products alongside products marketed by TSI and/or other third party refrigerant manufacturers. *See* **Exhibit 4** (screenshots of the AutoZone and Wal-Mart websites captured on January 17, 2019).

In sum, TSI fails to include any reason for this Court to reasonably conclude that the relevant market should be limited in the way TSI asserts. Courts are rightly skeptical of attempts like TSI's to define such a narrow, one-product market. *See PepsiCo, Inc.*, 315 F.3d at 101, 105 (fountain drink market includes more than just Coke and Pepsi); *Cinema Vill. Cinemart, Inc. v. Regal Entm't Grp.*, No. 15-CV-05488 (RJS), 2016 WL 5719790, at *6 (S.D.N.Y. Sept. 29, 2016), *aff'd,* 708 F. App'x 29 (2d Cir. 2017) ("dismissal is appropriate where, as here, a plaintiff has defined the relevant market in an inconsistent and facially implausible way"). TSI's Sherman Act claims thus fail for lack of an alleged relevant market.

### 2.      TSI Fails to Allege Antitrust Injury.

It is a "fundamental tenet that '[t]he antitrust laws . . . were enacted for the protection of competition, not competitors.'" *Balaklaw v. Lovell*, 14 F.3d 793, 797 (2d Cir. 1994) (citations and internal quotation marks omitted). A plaintiff pursuing Sherman Act claims must allege more than harm to itself—it must satisfy the requirement of "antitrust injury" by plausibly alleging harm to competition in the relevant market. *Id.* For a plaintiff to show harm to competition, it must show actual detrimental market effects, such as reduced output, increased prices, or decreased quality. *Virgin Atl. Airways, Ltd v. British Airways PLC*, 257 F.3d 256, 264

(2d Cir. 2001). An "injury, although causally related to an antitrust violation, nevertheless will not qualify as 'antitrust injury' unless it is attributable to an anticompetitive aspect of the practice under scrutiny, 'since [i]t is inimical to [the antitrust] laws to award damages' for losses stemming from continued competition." *Atl. Richfield Co. v. United States Petroleum Co.*, 495 U.S. 328, 334 (1990) (citation omitted).

Antitrust injury is not demonstrated by simply alleging that a defendant entered into exclusive contracts. Exclusive contracts in and of themselves do not harm competition. *See Bookhouse of Stuyvesant Plaza, Inc. v. Amazon.com, Inc.*, 985 F. Supp. 2d 612, 620 (S.D.N.Y. 2013) ("But consumers' inability to buy the same product from a different seller only harms that seller, and does no cognizable harm to competition as a whole"). For this reason, another complaint alleging facts strikingly similar to TSI's was dismissed where a "do it yourself" automotive sandpaper supplier alleged that its competitor paid money to enter into exclusive contracts with the very same retailers identified by TSI in its FA Complaint. *NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 451 (6th Cir. 2007). The appeals court, ruling *en banc*, held that the plaintiff alleged only injury to itself, which could not satisfy the requirement of antitrust injury. *Id.* The court recognized that the upfront payments were nothing more than a form of discount, which is the core of competition. *Id.* at 452. And the court acknowledged that the antitrust laws will not punish exclusive agreements that retailers choose to enter in a competitive environment. *Id.* at 454.

The same is true here. TSI's allegations reflect only harm to TSI, not to the market and not to competition itself. TSI alleges that the Armor All Defendants "have harmed TSI through diminished sales and business opportunities" and that "TSI has been effectively prevented from reaching a minimum efficient scale to compete with [the Armor All Defendants] on a cost basis."

SA Complaint ¶¶ 266-67. TSI admits that other companies' products compete, even in the narrow market TSI identifies. SA Complaint ¶ 196. Yet TSI offers nothing to explain how the market has been effected, how other competitors have fared, what portion of the market has excluded TSI or its competitors, or how prices or quality have been effected in the market as whole. TSI merely alleges that half of the largest retailers have entered into exclusive arrangements with the Armor All Defendants and thus presented their customers with fewer choices. SA Complaint ¶ 276. Such rational buying decisions by a fraction of the industry cannot form the basis of an antitrust claim. Similarly, TSI's conclusory allegation that the Armor All Defendants have been able to raise their prices (SA Complaint ¶ 275) cannot justify permitting the SA Complaint to proceed to discovery because TSI fails plausibly to tie any price changes to the alleged Section 1 conspiracy – indeed, the entire premise of TSI's conspiracy claim is that the retailers chose to buy the Armor All Defendants' products because they were offered *lower* prices than what TSI offered.

TSI thus alleges only that the Armor All Defendants' conduct harmed TSI. This is insufficient to establish an actual antitrust injury because it fails to describe harm to the market. TSI is a disappointed competitor, which the antitrust laws do not protect against. Indeed competition exists even today, with several of the same retailers identified by TSI stocking several brands of the refrigerant products that TSI alleges that the Armor All Defendants have locked up. *See* **Exhibit 4** (screenshots of the AutoZone and Wal-Mart websites captured on January 17, 2019). Without antitrust injury, TSI's complaint necessarily fails.

### 3.    TSI Fails to Allege Unlawful, Anticompetitive Conduct.

TSI's Sherman Act Section 1 claim (Count 4) and Section 2 claim (Counts 5-6) each lack any plausible description of anticompetitive conduct within the reach of the antitrust laws. "[N]ot every sharp-elbowed business practice . . . necessarily amounts to an antitrust violation." *La.*

*Wholesale Drug Co., Inc. v. Shire LLC*, 929 F. Supp. 2d 256, 262 (S.D.N.Y. 2013), *aff'd sub nom.*, *In re Adderall XR Antitrust Litig.*, 754 F.3d 128 (2d Cir. 2014), *as corrected* (June 19, 2014). Yet this is all that TSI alleges.

### a.   TSI's Section 1 Claim (Count 4) fails to identify an anticompetitive conspiracy.

Count 4 of TSI's SA Complaint asserts that the Armor All Defendants conspired with certain retailers to exclude TSI from those retail shelves, in restraint of trade under 15 U.S.C. § 1. *See* SA Complaint ¶ 317. Courts apply the rule of reason to this type of vertical arrangement, which requires a plaintiff to plead that there was substantial harm to competition that outweighs the otherwise competitive activity. *See Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 183 (2d Cir. 2012). It is well-settled that, "conduct as consistent with permissible competition as with illegal conspiracy does not, standing alone, support an inference of antitrust conspiracy." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986) (citation omitted). Exclusive agreements do not, on their own, represent anticompetitive activity. *E & L Consulting, Ltd. v. Doman Indus. Ltd.*, 472 F.3d 23, 29 (2d Cir. 2006). This is especially true when there is not "a showing of actual adverse effect on competition market-wide." *Id.*

The SA Complaint lacks any allegation of a conspiracy. TSI fails to allege that any retailer "conspired" with the Armor All Defendants for the purpose of excluding TSI. Instead, the SA Complaint reflects typical competitive activity. TSI alleges that the Armor All Defendants offered discounts that caused about half of the major retailers to enter into one-year, exclusive contracts to stock their products on the shelves. *See generally* SA Complaint ¶¶ 215-241. TSI fails to explain how offering a lower price is anticompetitive, and admits that the Armor All Defendants' prices were always above marginal cost and thus not predatory. SA Complaint ¶ 260. Exclusion from a fraction of the retail shelf space for a single year in a market that consists

21

of many options for consumers cannot support a Section 1 claim. Moreover, there is no allegation that any retailer desired to exclude TSI—the only incentive the retailers have, according to the SA Complaint, were discounts. Thrusting the word "conspire" into that arrangement does not make it an antitrust violation. *Twombly* requires more. 550 U.S. at 555, 557; *Iqbal*, 556 U.S. at 696 ("a naked assertion of conspiracy in a § 1 complaint . . . without some further factual enhancement . . . stops short of the line between possibility and plausibility of entitlement to relief") (internal quotations omitted).

TSI's allegations of rational contracts with a fraction of the nation's retailers concerning only in-store shelf space cannot represent anticompetitive conduct. *See NicSand, Inc.*, 507 F.3d at 456-57 (a retailer acts reasonably to enter into an exclusive contract for a lower-priced good). TSI has failed to provide the type of plausible description of competitive harm necessary to satisfy *Iqbal/Twombly*.

      **b.**     **TSI's Section 2 monopolization claims (Counts 5-6) fail to identify anticompetitive behavior beyond mere recitation of the elements of a monopoly claim.**

To state a claim for monopolization under Section 2 of the Sherman Act, "a plaintiff must establish '(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident.'" *PepsiCo, Inc.*, 315 F.3d at 105 (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 570–71 (1966)). A plaintiff must include facts sufficient at least to support an inference that the monopolist has "gained its market share via anticompetitive behavior rather than through growth or development as a consequence of a superior product." *Affinity LLC v. GfK Mediamark Research & Intelligence, LLC*, 547 F. App'x 54, 57 (2d Cir. 2013) (affirming dismissal of claim). A mere recital of the elements of monopolistic activity is insufficient and must be dismissed. *Iqbal*, 556 U.S. at 678,

("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to save a complaint from dismissal."); *A.V.E.L.A., Inc.*, 241 F. Supp. 3d at 473, 488 (""[A]lthough a court' adjudicating a Rule 12(b)(6) motion 'must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions'").

TSI's allegations to support Counts 5 and 6 merely restate, without more, the elements of a Sherman Act Section 2 claim. *See* SA Complaint ¶¶ 327-336. TSI does not allege anticompetitive activity beyond the limited, exclusive contracts alleged to have occurred with a few retailers in one year. Exclusive contracts, even when entered with several retailers, do not demonstrate anticompetitive activity, without more. *NicSand*, 507 F.3d at 451. TSI even admits that the Armor All Defendants share the market evenly with their competitors, when the market is more properly defined at least to all value-added and non-value added automotive refrigerant products. SA Complaint ¶ 197. The SA Complaint is bereft of plausible allegations that would permit these Section 2 claims to proceed.

TSI also fails to plead how each of the defendant companies possessed market power on its own, or why the individual defendants should be treated as a single actor in the alleged monopolistic activity. TSI instead lumps the Armor All Defendants together. The Second Circuit has expressly rejected that Section 2 claims may be premised on this type of "shared monopoly" among individual companies. *RxUSA Wholesale, Inc. v. Alcon Labs., Inc.*, 661 F. Supp. 2d 218, 235 (E.D.N.Y. 2009), *aff'd sub nom*, 391 F. App'x 59 (2d Cir. 2010) (citing *H.L. Hayden Co. of N.Y., Inc. v. Siemens Med. Sys., Inc.*, 879 F.2d 1005, 1018 (2d Cir. 1989)). TSI thus cannot base its monopoly claims on the multiple defendants' conduct, as this is really a Section 1 claim in disguise. *See FLM Collision Parts, Inc. v. Ford Motor Co.*, 543 F.2d 1019 (2d Cir. 1976) (allegations of a "shared monopoly" amount to no more than a "§ 1 claim under another name").

Thus, TSI's Section 2 claims thus should also be dismissed with prejudice.

### D.   TSI'S COMPLAINT FAILS TO STATE A CLAIM UNDER CUTPA.

#### 1.   TSI Has Failed To Plead Facts Sufficient To Support A Plausible Claim for Relief under CUTPA.

To state a claim under Connecticut Unfair Trade Practices Act ("CUTPA"), a plaintiff

must demonstrate that a defendant engaged in deceptive or unfair acts or practices. *Conn. Gen.*

*Stat. Ann.* § 42-110b(a). When determining whether conduct is "unfair" pursuant to CUTPA:

> Connecticut courts apply the cigarette rule and look to (1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—in other words, is it within at least the penumbra of some common law, statutory or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive or unscrupulous; and (3) whether it causes substantial injury to consumers, competitors or other businesspersons.

*Edwards v. N. Am. Power & Gas, LLC*, 120 F. Supp. 3d 132, 141 (D. Conn. 2015) (citation and

internal quotation marks omitted).

In an omnibus fashion, TSI alleges that the Armor All Defendants violated CUTPA's

prohibition on deceptive and unfair practices in view of the overall, alleged conduct cited as the

bases for Counts 1-6. As outlined herein, TSI has failed to allege plausible facts sufficient to

maintain Counts 1-6 and so correspondingly has not identified conduct that violates any statutory

or common law rights. TSI has similarly failed to plead that this conduct "offends public policy"

or that it is "immoral, unethical, oppressive or unscrupulous" under the law governing unfair

competition or otherwise. Moreover, TSI's Sherman Act claims do not state a plausible claim for

relief based on a recognized antitrust injury (*e.g.,* and by extension fail to set forth a plausible

injury to consumers or competition under CUTPA).

TSI's CUTPA claims are based on allegations of the same underlying conduct as Counts

1-6 of the SA Complaint. As demonstrated above, those claims are fatally deficient and should

be dismissed. In order for the CUTPA claim to survive dismissal, it must elaborate on that conduct to show an independent violation of CUTPA. *See L.A. Limousine, Inc. v. Liberty Mut. Ins. Co.*, 509 F.Supp.2d 176, 183 (D. Conn. 2007) (dismissing CUTPA claim where facts were identical to dismissed Connecticut Unfair Insurance Practices Act claim). However, the SA Complaint alleges no additional facts in support of the independent CUTPA claim. In view of the deficiencies in Claims 1-6, TSI's CUTPA claim is similarly defective, fails to establish an independent violation of CUTPA, and should be dismissed with prejudice.

## V.    **CONCLUSION**

For all of the reasons set out above, the Armor All Defendants respectfully request that the Court dismiss Plaintiff's SA Complaint in its entirety with prejudice.

CONSOLIDATED DEFENDANTS
The Armor  All/STP Products Company

January 17, 2019          */s/ Andy I. Corea*
                              Andy I. Corea (ct25925)
                              Terence Brunau (ct29363)
                              **MURTHA CULLINA LLP**
                              265 Church Street
                              New Haven, Connecticut 06510
                              Tel. (203) 772-7700
                              Fax. (203) 772-7723
                              acorea@murthalaw.com
                              tbrunau@murthalaw.com

                              Michael A. Grow
                              **ARENT FOX LLP**
                              1717 K Street, NW
                              Washington, DC  20006
                              Tel. (202) 857-6389
                              Fax. (202) 857-6395
                              michael.grow@arentfox.com

Marylee Jenkins
Michael Scarpati
**ARENT FOX LLP**
1301 Avenue of the Americas, Floor 42
New York, NY 10019
Tel. (212) 484-3900
Fax. (212) 484-3990
marylee.jenkins@arentfox.com
michael.scarpati@arentfox.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 17, 2019, copies of the foregoing Motion To Dismiss The Second Amended Complaint Filed In Civil Action No. 3:17-CV-01131 And Memorandum Of Law In Support were filed electronically and served by mail on any party unable to accept electronic filing. Notice of this filing will be sent via email to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

/s/ *Andy I. Corea*
Andy I. Corea