**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| TSI PRODUCTS, INC.,<br><br>   Plaintiff,<br><br>v.<br><br>ARMOR ALL/STP PRODUCTS CO., SPECTRUM BRANDS HOLDING CO., INC., GUY ANDRYSICK, and ROBERT DeRIDDER,<br><br>   Defendants. | No. 3:18-cv-1682 (MPS)<br>(CONSOLIDATED) |
| ARMOR ALL/STP PRODUCTS CO.,<br><br>   Plaintiff,<br><br>v.<br><br>TSI PRODUCTS, INC., MICHAEL QUEST, and WILLIAM QUEST,<br><br>   Defendants. | No. 3:17-cv-1131 (MPS)<br>(LEAD) |

**RULING ON MOTION TO DISMISS**

TSI Products, Inc. ("TSI")—plaintiff in the consolidated suit, No. 3:18-cv-1692—brings claims against Armor All/STP Products Company, Spectrum Brands Holdings, Inc., Guy Andrysick, and Robert DeRidder (collectively "Armor All" or "Consolidated Defendants") for trademark infringement, unfair competition, and false advertising under the Lanham Act, 15 U.S.C. §§ 1114 *et seq.*, for restraint of trade, monopolization, and attempted monopolization under the Sherman Act, 15 U.S.C. §§ 1 *et seq.*, and for violations of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §§ 42-110a *et seq.*

1

Consolidated Defendants move to dismiss TSI's Second Amended Complaint ("SAC"), ECF No. 96, in its entirety under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Mot. to Dismiss, ECF No. 102. Because I find that TSI has stated a plausible claim under each of its seven counts, I deny the motion to dismiss.

## I. Factual Allegations

The factual allegations below are drawn from TSI's Second Amended Complaint ("SAC") and are accepted as true for the purpose of adjudicating this motion.

### A. Refrigerant Products

Both TSI and Armor All create and sell do-it-yourself refrigerant products and recharge kits, which permit car owners to recharge their vehicle air conditioning ("AC") systems on their own, without the services of a professional mechanic. SAC, ECF No. 96 ¶¶ 26, 55. Refrigerant and recharge kits are sold in many automotive specialty stores in the United States, such as Advance Auto Parts, AutoZone, O'Reilly Auto Parts, NAPA, and Pep Boys, as well in as in the automotive departments of stores such as Walmart, Meijers, and Home Depot. *Id.* at ¶¶ 198–99.

TSI places do-it-yourself refrigerant products in "two subcategories: non-value-added refrigerant and value-added automotive AC recharge kits." *Id.* ¶ 178. "[T]he non-value-added refrigerant category consists mainly of cans of R-134a refrigerant, without any included additives, tools, gauges, or hoses. . . . [T]he category of value-added automotive AC recharge kits consist of cans of R-134a refrigerant that also typically contain some combination of additives, lubricants, hoses, gauges, or other tools." *Id.* ¶¶ 180–81. Both TSI and Armor All sell value-added products. *Id.* ¶¶ 55.

Armor All sells refrigerant—including the A/C Pro Professional Formula and the A/C Pro Ultra Synthetic Formula—that contains additives and lubricants. *Id.* ¶¶ 123–24. Armor All

also sells recharge kits consisting of refrigerant, a hose and trigger dispenser, and a gauge that measures the pressure on the low side of a car's AC system. *Id.* ¶ 61. TSI, similarly, offers value-added refrigerant and recharge kits. *Id.* ¶ 204. "Instead of a low-pressure-measuring gauge, some of TSI's AVALANCHE/AC AVALANCHE products are sold with [] Smart Clips, which instead of measuring the low-side pressure of the AC system, measure the vent temperature of the air in the passenger compartment to target the correct fill." *Id.* ¶ 145. "TSI's Smart Clips are constructed out of a thermochromic material that changes color due to changes in temperature." *Id.* ¶ 211.

**B.  TSI's Trademark Rights**

TSI sells its refrigerant and recharge kits under the brand names AVALANCHE, AC AVALANCHE, and BLACK DIAMOND AVALANCHE. *Id.* ¶ 25. TSI is the owner of the AVALANCHE word mark, registered under Registration No. 4,823,588. *Id.* ¶¶ 27, 31–33. TSI has continuously sold refrigerant products under the AC AVALANCHE mark since January 31, 2015 and holds trademark rights in the work mark AC AVALANCHE used in connection with refrigerant products. *Id.* ¶¶ 28–30. TSI also holds trademark rights in the BLACK DIAMOND AVALANCHE word mark, registered under Registration No. 5,065,364. *Id.* ¶¶ 34–36.

TSI holds trademark rights in the mountain logos used along with its AVALANCHE and AC AVALANCHE brands and its BLACK DIAMOND AVALANCHE brand. *Id.* ¶¶ 37–38. These logos are part of the trade dress associated with the three word marks, and the design appears on the products' labels and promotional materials. *Id.* at ¶¶ 39, 41. TSI has consistently used the mountain logo in connection with the sale of AVALANCHE and AC AVALANCHE products since January 2015, *id.* at ¶ 40, and in connection with the sale of BLACK DIAMOND AVALANCHE products since April 2015, *id.* at ¶ 42.

### C.  Armor All's Keyword Advertising

Armor All markets its brands, including its A/C PRO brand of refrigerant, online. *Id.* ¶ 135. As part of its online advertising, Armor All purchased "AC AVALANCHE" as a Google ad word. *Id.* ¶ 138. As a result, a Google search for "AC AVALANCHE" as of the date of TSI's original complaint yielded an advertisement for Armor All's AC/Pro website at the top of the search results. *Id.* ¶ 139–40. When a user clicked on the advertising link, the consumer was directed to the A/C Pro website. *Id.* ¶ 144. Armor All "made no effort to distinguish themselves and their products from TSI, either in the Google ad itself or on the linked AC Pro Website webpage." *Id.* ¶ 152.

### D.  Armor All Use of TSI's Mountain Logo

Armor All "had access to TSI's AC AVALANCHE/AVALANCHE mountain logo, as it had been used since 2015 in TSI's products sold in the very same stores selling [Armor All's] products, often in close proximity." *Id.* ¶ 156. Prior to 2017, Armor All did not "utilize any mountain imagery in its packaging of ARCTIC FREEZE products," *id.* ¶ 157, but it did begin using a mountain logo on those products in 2017, *id.* ¶ 159. The mountain logo used on the ARCTIC FREEZE packaging "looks confusingly similar" to the mountain logo on TSI's products, *id.* ¶ 161–65; TSI alleges on information and belief that Armor All's use of the mountain logo "causes customer confusion as to the source of the goods," *id.* ¶ 168.

### E.  Armor All's Misrepresentations regarding Refrigerants and AC Recharge Kits

Armor All has published advertising for its recharge kits and refrigerant products online, on its product packaging and promotional materials, and in videos and commercials. *Id.* ¶ 66. In this advertising, Armor All makes a number of statements about its recharge kits, including that they have the following characteristics and benefits:

- "Our kits come with everything you need to recharge your system with no additional tools or equipment," *id.* ¶ 76,
- "All-in-One Kit," *id.* ¶ 77,
- "Easy as 1, 2 . . . Squeeze," *id.* ¶ 77,
- "Extends A/C Life," *id.* ¶¶ 78, 80, 84,
- "fast and accurate recharging," *id.* ¶¶ 79, 81,
- "The trigger dispenser and measuring gauge make filling your system to the proper level fast and easy," *id.* ¶ 82,
- "fast, easy and accurate recharging," *id.* ¶ 83,
- "Protects System," *id.* ¶ 84,
- "easy, convenient, and accurate recharging," *id.* ¶ 85,
- "Bringing back the cool to your car's air-conditioning is a breeze with A/C Pro," *id.* ¶ 86,
- "just three easy steps," *id.* ¶ 87.

Armor All also makes statements about its refrigerant formula, including:

- "#1 Rated Coldest Air" and "#1 Coldest Air," *id.* ¶ 110,
- "Formula with 2X cooling boosters vs. the next leading brand of AC recharge kits: independently tested to deliver the coldest air from your vehicle's AC," *id.* ¶ 111,
- "A/C PRO ultra synthetic refrigerant kit features a specially designed formula that helps a vehicle's A/C produce the coldest air," *id.* ¶ 112.

TSI alleges that all of these statements are false or misleading. *Id.* ¶¶ 89–109, 118–32.

### F. Armor All's Anticompetitive Conduct

Value-added automotive AC recharge kits—those that include refrigerant in addition to some combination of additives, lubricants, hoses, gauges, or other tools—is one of "two subcategories" in the larger sector for do-it-yourself automotive AC recharge products. *Id.* ¶¶ 178, 181. In the smaller "market for value-added auto AC recharge kits in the United States," Armor All had an estimated market share of 88% in 2017. *Id.* ¶ 193. TSI is Armor All's largest competitor in terms of market share, with approximately 10% share; all other competitors combined constitute only 2% market share. *Id.* ¶¶ 194–96.

Prior to TSI's entry into the value-added AC recharge kit market in 2015, Armor All did not face substantial competition in that market. *Id.* ¶ 201. After TSI launched its products in

2015, the two companies have competed "on the basis of both price and innovation." *Id. ¶* 207. TSI alleges on information and belief that Armor All experienced "downward pricing pressure" between 2015 and 2017 "in the face of competition from TSI," but has been able to "raise their prices to levels that approach their pre-competition pricing" since 2017. *Id. ¶¶* 213–14.

TSI alleges on information and belief that Armor All made an agreement with retailer Advance Auto in August 2016 in which Armor All "offered to pay Advance Auto cash remuneration, product discounts, and/or some other value in exchange for Advance Auto's agreement to renege on its agreement with TSI and refuse to allocate shelf space to TSI's products." *Id. ¶* 223–24. Advance Auto did not purchase any TSI products or allocate any shelf space to TSI products in 2017 or 2018. *Id. ¶* 226–29.

In 2018, TSI also learned from a representative of retailer Pep Boys that "Pep Boys had received a payment from [Armor All] . . . for display and channel allocation for [Armor All products] . . . [and] to keep TSI's competing . . . products off Pep Boys' shelves." *Id. ¶* 232. Pep Boys did not allocate any shelf space to TSI products in 2018 and has indicated that it will not do so in 2019, due to payments received from Armor All. *Id. ¶* 233.

After TSI launched its AVALANCHE products in 2015, attorneys representing Armor All's predecessor sent TSI a letter in November 2015, alleging that TSI's products infringed two of the predecessor's patents. *Id. ¶* 243. TSI "was forced to retain counsel and respond to the letter" in December 2015 and to send a follow-up letter in January 2016. *Id. ¶¶* 246, 248. Neither Armor All nor its predecessor responded to either letter. *Id. ¶¶* 247, 249. TSI alleges on information and belief that neither Armor All nor its predecessor had a "good faith belief that TSI infringed" either patent. *Id. ¶* 251. TSI also alleges on information and belief that Armor All

"notified retailers within the relevant market" about the companion lawsuit consolidated with this one, which Armor All filed against TSI in 2017, No. 3:17-cv-01131-MPS. *Id.* ¶ 253.

## II.     Procedural History

TSI first filed a complaint against Armor All on August 3, 2017 in the United States District Court for the Northern District of Texas and filed an amended complaint on November 8, 2017. Case No. 3:18-cv-1682, ECF Nos. 1, 9. That court transferred the case to this Court on October 5, 2018. ECF No. 62. TSI filed a Second Amended Complaint, ECF No. 96, on the lead docket on December 20, 2018.

Following the transfer of TSI's suit to Connecticut, the case was consolidated with Armor All's suit on October 24, 2018. Case No. 17-cv-1311, ECF No. 77. Armor All moved to dismiss TSI's operative Second Amended Complaint on January 17, 2019. ECF No. 102.

## III.    Legal Standard

Under Fed. R. Civ. P. 12(b)(6), the Court must determine whether plaintiffs have alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ray v. Watnick*, 688 F. App'x 41 (2d Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations and internal quotation marks omitted)). While the Court must "draw all reasonable inferences in favor of the non-moving party," *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008), it must grant the moving party's motion if "a complaint is based solely on wholly conclusory allegations and provides no factual support for such claims. . . ." *Scott v. Town of Monroe*, 306 F.Supp.2d 191, 198 (D. Conn. 2004).

## IV.    Discussion

### A.  Trademark Infringement Claim (Count One)

Section 1114 of the Lanham Act prohibits infringement of registered trademarks,

providing:

> Any person who shall, without the consent of the registrant . . . use in commerce any
> reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection
> with the sale, offering for sale, distribution, or advertising of any goods or services on or
> in connection with which such use is likely to cause confusion, or to cause mistake, or to
> deceive . . .  shall be liable in a civil action by the registrant.

15 U.S.C. § 1114(1)(a). Count One of the Second Amended Complaint asserts that Armor All

violated § 1114 by purchasing TSI's registered AVALANCHE word mark to use in keyword

advertising and using TSI's mark in a manner likely to cause consumer confusion. SAC, ECF

No. 96 ¶¶ 282–90. Armor All argues that TSI has failed to plead facts sufficient to support a

plausible trademark infringement claim based on keyword advertising. Mot. to Dismiss, ECF No.

102 at 13–16.

 "To prevail on a claim of [trade]mark infringement, a plaintiff must show, first, that its

mark merits protection, and, second, that the defendant's use of a similar mark is likely to cause

consumer confusion." *Int'l Info. Sys. Sec. Certification Consortium, Inc. v. Sec. Univ., LLC*, 823

F.3d 153, 160 (2d Cir. 2016) (internal quotation marks omitted); *see also Virgin Enterprises Ltd.*

*v. Nawab*, 335 F.3d 141, 146 (2d Cir. 2003) ("A claim of trademark infringement, whether

brought under 15 U.S.C. § 1114(1) (for infringement of a registered mark) or 15 U.S.C. §

1125(a) (for infringement of rights in a mark acquired by use), is analyzed under the familiar two

prong test . . . ."). TSI alleges that it owns and holds trademark rights in the AVALANCHE word

mark, which is registered under Registration No. 4,823,588. SAC, ECF No. 96 ¶¶ 31–33. These

allegations satisfy the first prong of the test, and Armor All does not dispute that TSI's AVALANCE word mark is entitled to protection.

The dispute between the parties, centered on the second prong, is whether TSI adequately pleaded that Armor All's use of TSI's mark in keyword advertising was likely to cause consumer confusion. "In determining whether there is a likelihood of consumer confusion for trademark infringement, [Second Circuit courts] apply the eight-factor balancing test set forth in *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492 (2d Cir. 1961)." *Int'l Info Sys.*, 823 F.3d at 160.[1] "The application of the *Polaroid* test is not mechanical, but rather, focuses on the ultimate question of whether, looking at the products in their totality, consumers are likely to be confused." *Id.* This Court applied the *Polaroid* factors to keyword advertising in *Edible Arrangements, LLC v. Provide Commerce, Inc.* and found that "the crux of the issue is whether a defendant's keyword purchases, *combined with the look and placement of that defendant's advertisement*, create a search results page which misleads, confuses or misdirects a consumer searching for a trademarked brand to the website of a competitor in a manner in which the source of the products offered for sale by the competitor is unclear." *Edible Arrangements, LLC v. Provide Commerce, Inc.*, No. 3:14-CV-00250 (VLB), 2016 WL 4074121, at *11 (D. Conn. July 29, 2016) (emphasis in original) (footnote omitted). The court adopted the "perspective of a user of the internet search engine at issue," and focused particularly on "(i) the strength of the plaintiff's mark as a unique search term related to a distinct line of products, . . . (ii) the similarity of the marks and whether the defendant's mark draws a clear distinction as a

---

[1] "The eight factors are: (1) strength of the trademark; (2) similarity of the marks; (3) proximity of the products and their competitiveness with one another; (4) evidence that the senior user may 'bridge the gap' by developing a product for sale in the market of the alleged infringer's product; (5) evidence of actual consumer confusion; (6) evidence that the imitative mark was adopted in bad faith; (7) respective quality of the products; and (8) sophistication of consumers in the relevant market." *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 115 (2d Cir.2009).

competing brand. . . . [and] (iii) what the consumer saw on the screen and reasonably believed, given the context." *Id.* at *12.

Armor All argues that TSI's claims fail because "the purchase of a competitor's marks as keywords alone, without additional behavior that confuses consumers, is not actionable." Mot. to Dismiss, ECF No. 102 at 14 (citing *Alzheimer's Disease & Related Disorders Ass'n, Inc. v. Alzheimer's Found. Of Am., Inc.*, 307 F. Supp. 3d 260, 287 (S.D.N.Y. 2018)). Armor All does not dispute that it purchased TSI's AVALANCE word mark as a keyword but argues that TSI has failed to plead that its purchase has created a likelihood of consumer confusion. TSI alleges that, as of the date it filed its original complaint, a search on Google for "AC Avalanche" yielded a Google ad word advertisement for Armor All's A/C Pro website, as follows:



SAC, ECF No. 96 ¶¶ 139–40.

Armor All asserts that its own link in the search results is "prominently label[ed] . . . as an Ad," that the link "is only one of several such 'Ads' produced in response to this query," and that the webpage hosted at the link address does not contain "*any* reference to TSI or its AVALANCHE products." Mot. to Dismiss, ECF No. 102 at 16. Armor All also asserts that the structure of the advertisement itself ("AC Avalanche – A/C Pro Saves You Time & Money – acprocold.com") separates the search term ("AC Avalanche") from Armor All's "comparative advertising slogan," making it unlikely that any consumer would be confused as to the source of the advertisement. Reply Br., ECF No. 106 at 8–9.

Armor All's arguments fail to establish that TSI's trademark infringement claim should be dismissed. First, the Second Amended Complaint pleads more than simply the purchase of a competitor's marks: TSI alleges that Armor All purchased "AC AVALANCHE" as a Google ad word, that the resulting advertisement "falsely suggested an affiliation between TSI's AC AVALANCHE/AVALANCHE brand and products and [Armor All's] A/C PRO brand and products," and that Armor All "made no effort to distinguish themselves and their products from TSI, either in the Google ad itself or on the linked AC Pro Website webpage." SAC, ECF No. 96 ¶¶ 138–43, 152. TSI asserts that the advertisement, due to the "hyphenated phrase in the headline," "falsely suggested an affiliation between TSI's AC AVALANCHE/AVALANCHE brand and products and [Armor All's] A/C PRO brand and products," diverted prospective customers' interest, influenced the customer's decision whether to purchase the product, and "wrongfully misappropriated the goodwill and reputation" of TSI's brand. *Id.* ¶¶ 142–43, 148–49. Drawing all reasonable inferences in favor of TSI, I find that the Second Amended Complaint states a plausible claim that Armor All's "keyword purchases, combined with the look

11

and placement of that defendant's advertisement, create a search results page which misleads, confuses or misdirects a consumer searching for a trademarked brand to the website of a competitor in a manner in which the source of the products offered for sale by the competitor is unclear." *Edible Arrangements*, 2016 WL 4074121, at *11.

TSI's allegations state a plausible claim that the hyphenated phrase in the headline of Armor All's advertisement, in the context of the results page as a whole, was likely to mislead. The court in *Edible Arrangements* focused in part on "whether the defendant's mark draws a clear distinction as a competing brand." *Id.* at *12. Here, the marks "AC Avalanche" and "A/C Pro" are not presented as competing brands in the context of the advertisement. Armor All argues that the advertisement has a clear "three-part structure: '[search keyword] – [advertising slogan] – [ website address].'" Reply Br., ECF No. 106 at 8. This argument is unconvincing when one looks at the search results page as a whole, rather than at the smaller screenshot contained in Armor All's brief. In the longer list of search results, pictured above, other sponsored advertisements use hyphens but follow different structures: the other two sponsored advertisements do not include the "AC Avalanche" search term at all, and neither appears to set forth two competing brands or companies. Armor All also argues that its advertisement is a clear example of "comparative advertising," which courts have found to be unlikely to confuse. In the examples Armor All cites, courts found that advertisements stating "Try Pepsi – It is Better than Coca-Cola" or "Stop Collection Calls—is Allied Interstate Calling You" were unlikely to confuse consumers as to the advertisement's source. *Alzheimer's*, 307 F. Supp. 3d at 287 (noting that a "consumer searching for 'Coca-Cola' may have been diverted, but she has not been confused or misled"); *Allied Interstate LLC v. Kimmel & Silverman P.C.*, No. 12 CIV. 4204 LTS SN, 2013 WL 4245987, at *6 (S.D.N.Y. Aug. 12, 2013) ("Defendants are plainly soliciting

complaints about Plaintiff's services and inviting searchers and visitors to Defendants' website to consider suing the Plaintiff."). Comparative advertisements like these examples "facially disassociate[]" the defendant advertiser from the plaintiff's trademark. *Allied Interstate*, 2013 WL 4245987, at *6. That is not the case in Armor All's advertisement, which makes no clear distinction between the terms "AC Avalanche" and "A/C Pro." SAC, ECF No. 96 ¶ 152. The overall context makes it plausible that the hyphen implies association rather than disassociation. Armor All's motion to dismiss is therefore denied with respect to Count One of the Second Amended Complaint.

### B. Unfair Competition Claim (Count Two)

In addition to prohibiting infringement on registered trademarks, the Lanham Act also prohibits unfair competition in the use of marks and advertising more broadly:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
> > (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . .
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(A). Count Two of the Second Amended Complaint alleges that Armor All violated this provision by (1) engaging in keyword advertising in a manner likely to cause consumer confusion, and (2) using TSI's AVALANCHE mountain logo on the packaging of Armor All products in a manner likely to cause consumer confusion. SAC, ECF No. 96 ¶¶ 292–98. I deny Armor All's motion to dismiss based on the adequacy of the allegations regarding keywords—the same allegations that are the subject of Count One—for the reasons explained above with respect to Count One. Armor All attacks the sufficiency of the allegations regarding

misuse of the mountain logos by arguing that TSI does not hold rights in those logos. I reject this argument for the reasons discussed below.

"A claim of trademark infringement, whether brought under 15 U.S.C. § 1114(1) (for infringement of a registered mark) or 15 U.S.C. § 1125(a) (for infringement of rights in a mark acquired by use), is analyzed under the familiar two prong test," looking "first to whether the plaintiff's mark is entitled to protection, and second to whether defendant's use of the mark is likely to cause consumers confusion as to the origin or sponsorship of the defendant's goods." *Virgin Enterprises*, 335 F.3d at 146. TSI alleges that it "holds trademark rights in the AC AVALANCHE/AVALANCHE mountain logo," that the logo is "part of the trade dress associated with the [Avalanche] word marks and the design appears on the products' labels and promotional materials," and that "TSI has continuously used the . . . mountain logo in connection with its sale of the [Avalanche] line of products since January 2015," SAC, ECF No. 96 ¶¶ 37–40. The complaint alleges that on August 2, 2017, Michael Quest assigned to TSI all rights to the Avalanche word marks, including "any trade dress, labels or designs associated therewith, including the mountain logos," and this assignment encompassed "any rights to sue for past, present, and future unfair competition, and/or infringement/dilution/misappropriation relating to the same." *Id.* ¶ 43. TSI then alleges that Armor All infringed on TSI's trademark rights in the mountain logo by "incorporat[ing] a confusingly similar version" of the logo "into its product packaging for some of the ARCTIC FREEZE products," *id.* ¶ 155, and that Armor All's use of a "substantially similar" logo is likely to cause consumer confusion as to the source of the goods, *id.* ¶¶ 162–68.

Armor All argues that Michael Quest retained rights in the mountain logos, attaching a copy of the Assignment Agreement between Quest and TSI, which was recorded at the U.S.

Patent and Trademark Office ("USPTO") at Reel No. 6121, Frame No. 0458. Mot. to Dismiss,

ECF No. 102 at 17; *see also* Trademark Assignment Agreement, ECF No. 102-2. Armor All

interprets the Agreement to assign the right to sue for unfair competition only for the registered

word marks (such as "AVALANCHE" and "BLACK DIAMOND AVALANCHE") and not for

the "trade dress, labels, and designs" associated with those Marks. Mot. to Dismiss, ECF No. 102

at 18. Armor All also argues that TSI's allegations of "prior rights" in the mountain logos are not

plausible because TSI does not provide "any factual support" and because the allegations are

contradicted by Armor All's 2014 registered copyright on its "ARCTIC FREEZE Mountain

Label," which uses a mountain logo and which preceded TSI's alleged first use of the mountain

logos in 2015. *Id.* at 18–19; *see also* Arctic Freeze Mountain Label Copyright Registration, ECF

No. 102-3. Neither of these arguments succeeds at this motion to dismiss stage.

 Armor All's arguments regarding the Assignment Agreement suggest, at best, that the

contract is ambiguous, and on a motion to dismiss, courts "should resolve any contractual

ambiguities in favor of the plaintiff." *Luitpold Pharms., Inc. v. Ed. Geistlich Sohne A.G. Fur

Chemische Industrie*, 784 F.3d 78, 86 (2d Cir. 2015). TSI's proposed interpretation of the

Assignment Agreement, which is alleged in the complaint, is certainly reasonable: since the

agreement defines "the Marks" to include "trademarks and any and all trade dress associated

therewith," it is reasonable to read Section 1.1 as assigning the goodwill and the rights to sue of

both the word marks and the associated trade dress. Trademark Assignment Agreement, ECF No.

102-2 at 3; SAC, ECF No. 96 ¶ 43. Further, Section 1.2 expressly assigns "*all rights* in the trade

dress, labels, and designs," which does not suggest that the right to sue was omitted. *Id.*

(emphasis added). While Armor All's contrary interpretation is perhaps possible, it is certainly

not the only reasonable interpretation. This agreement, therefore, does not render TSI's allegations of trademark rights in the mountain logos implausible.

Armor All also claims that its 2014 copyright registration of the "ARCTIC FREEZE Mountain Label" contradicts TSI's allegations of prior use. Armor All is correct that "[t]he Court may properly take judicial notice of official records of . . . the United States Copyright Office." *Telebrands Corp. v. Del Labs., Inc.*, 719 F. Supp. 2d 283, 287 n.3 (S.D.N.Y. 2010). However, the existence of this copyright registration does not render TSI's claims of trademark infringement implausible. A "defendant's ownership of . . . a copyrighted image is no defense to a charge of trademark infringement." *Univ. of Alabama Bd. of Trustees v. New Life Art, Inc.*, 683 F.3d 1266, 1280 (11th Cir. 2012) (quoting 1 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 6:14 (5th ed.)); *see also Fed. Trade Comm'n v. Real Prods. Corp.*, 90 F.2d 617, 619 (2d Cir. 1937) ("A copyright is not a license to engage in unfair competition."). Indeed, copyrights and trademark rights are established based on different elements and provide different scopes of protection; trademark rights grow out of *use* rather than invention or original expression. *See United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 97 (1918) ("[A] trade-mark is [not] a right in gross or at large, like a statutory copyright or a patent for an invention, to either of which, in truth, it has little or no analogy. . . . [T]he right to a mark grows out of its use, not its mere adoption; its function is simply to designate the goods as the product of a particular trader and to protect his good will against the sale of another's product as his."). Armor All's copyright registration, therefore, does not indisputably establish that Armor All is the prior user of the logo or that Armor All did not infringe on TSI's rights in the logo. Rather, TSI alleges, and I accept as true, that it used the mountain logo in connection with the sale of AVALANCHE/AC AVALANCHE products since January 2015 and in connection with the sale of BLACK

DIAMOND AVALANCHE products since April 2015, SAC, ECF No. 96, ¶¶ 40–42, and that Armor All did not use any mountain imagery on its refrigerant products until 2017, *id.* ¶ 157–60. TSI's allegations are plausible and more than conclusory; TSI does not need robust "factual support" at this stage in the litigation. The motion to dismiss is therefore denied as to Count Two.

### C. False Advertising Claims (Count Three)

The Lanham Act prohibits false advertising by establishing liability for "[a]ny person who, on or in connection with any goods or services . . . uses in commerce any . . . false or misleading description of fact, or false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin" of her products. 15 U.S.C. § 1125(a)(1)(B). Count Three of TSI's Second Amended Complaint alleges that Armor All made false and misleading descriptions and false and misleading representations of fact in advertising for its pressure gauge recharge kits and refrigerant formulas. SAC, ECF No. 96 ¶¶ 301–02. Armor All moves to dismiss Count Three based on the argument that the advertising statements at issue are "non-actionable puffery." Mot. to Dismiss, ECF No. 102 at 20–25.

A plaintiff can state a claim for false advertising by alleging either "that the challenged advertisement is literally false, *i.e.*, false on its face" or "that the advertisement, while not literally false, is nevertheless likely to mislead or confuse consumers." *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 153 (2d Cir. 2007). The Second Circuit also accepts the "false by necessary implication" doctrine, which deems an advertisement to be literally false if, "considering the advertisement in its entirety, the audience would recognize the claim as readily as if it had been explicitly stated." *Novartis Consumer Health, Inc. v. Johnson & Johnson—*

*Merck Pharm. Co.*, 290 F.3d 578, 586–87 (3d Cir. 2002); *Time Warner*, 497 F.3d at 158 (citing

*Novartis* and "formally adopt[ing] what is known in other circuits as the 'false by necessary

implication' doctrine"). However, "liability for false advertising extends only to false

misrepresentations or statements *of fact*"; statements that constitute mere "puffery" are not

actionable under the Lanham Act. *Anthem Sports, LLC v. Under the Weather, LLC*, 320 F. Supp.

3d 399, 414 (D. Conn 2018) (emphasis in original) ("[S]tatements of opinion are generally not

the basis for Lanham Act liability."); *Lipton v. Nature Co.*, 71 F.3d 464, 474 (2d Cir. 1995)

(noting that assertions that are "mere puffing" are "not actionable" since "[s]ubjective claims

about products, which cannot be proven either true or false, are not actionable under the Lanham

Act").

The Second Circuit "has had little occasion to explore the concept of puffery in the false

advertising context," but has acknowledged other circuits' description of two categories of

puffery: (1) "a general claim of superiority over comparable products that is so vague that it can

be understood as nothing more than a mere expression of opinion," and (2) "an exaggerated,

blustering, and boasting statement upon which no reasonable buyer would be justified in

relying." *Time Warner*, 497 F.3d at 159–60 (citing *Lipton*, 71 F.3d at 474 and *Pizza Hut, Inc. v.

Papa John's Int'l, Inc.,* 227 F.3d 489, 497 (5th Cir. 2000)). The Third Circuit adds a definition of

puffery as "an exaggeration or overstatement expressed in broad, vague, and commendatory

language," which "is considered to be offered and understood as an expression of the seller's

opinion only, which is to be discounted as such by the buyer." *Castrol Inc. v. Pennzoil Co.*, 987

F.2d 939, 945 (3d Cir. 1993) (citing W. Page Keeton, et al., *Prosser and Keeton on the Law of

Torts* §109, at 756–57 (5th ed. 1984)). "Puffery is distinguishable from misdescriptions or false

representations of specific characteristics of a product." *Id.* Courts in this Circuit have identified

three main factors indicating puffery in advertising: "(i) vagueness; (ii) subjectivity; and (iii) inability to influence the buyers' expectations." *Avola v. Louisiana-Pacific Corp.*, 991 F. Supp. 2d 381, 392 (E.D.N.Y. 2013).

At the motion-to-dismiss stage, courts in this Circuit have determined based on the pleadings alone that a false advertising claim is not plausible if the statements at issue are clearly subjective opinions. *E.g.*, *Anthem Sports*, 320 F. Supp. 3d at 415–16 (granting a motion to dismiss with respect to statements that "constitute opinion and puffery"); *Weight Watchers Int'l, Inc. v. Noom, Inc.*, No. 18-CV-9637 (PKC), 2019 WL 3890139, at *5 (S.D.N.Y. Aug. 19, 2019) (granting a motion to dismiss with respect to some advertising statements that "fall comfortably within the category of non-actionable puffery"). Other courts worry that a judge cannot determine on the basis of the pleadings alone whether consumers will perceive a statement as a "far-fetched opinion" or a "statement of fact." *Verizon Directories Corp. v. Yellow Book USA, Inc.*, 309 F. Supp. 2d 401, 407 (E.D.N.Y. 2004) (finding that the "issue cannot be resolved without surveys, expert testimony, and other evidence of what is happening in the real world of television watchers and advertisers in yellow pages"). The court's concerns in *Verizon Directories* are valid; at the motion to dismiss stage, courts must draw all reasonable inferences in favor of the non-moving party, and so should dismiss false advertising claims only if the statements "fall *comfortably* within the category of non-actionable puffery." *Weight Watchers*, 2019 WL 3890139, at *5 (emphasis supplied).

In the Second Amended Complaint, TSI identifies thirteen specific statements that it alleges are false or misleading. These statements relate either to Armor All's recharge kits or to its A/C Pro Professional Formula and A/C Pro Ultra Synthetic Formula refrigerants.

### 1. Recharge Kit Statements

Armor All sells recharge kits that consist of refrigerant, a hose and trigger dispenser, and a gauge that measures the "pressure on the low side of the AC system" and indicates a "suggested fill range." SAC, ECF No. 96 ¶¶ 61, 94. TSI alleges that measuring the pressure only on the low side of a car's AC system can "lead to unusable and inaccurate pressure readings" for the "[m]any AC systems [that] use a BLOCK or TXV valve [to] regulate the flow of refrigerant." *Id.* ¶¶ 89, 91. Because the valve "regulates the refrigerant flow to the low side of the AC system," a gauge measuring the pressure only on that low side could fail to accurately reflect the "amount of pressure" in the AC system as a whole. *Id.* ¶¶ 97–98. "[A] consumer relying on the unusable low-pressure-measuring gauge readings is likely to overcharge the AC system because the consumer will continue to add refrigerant mistakenly believing that the desired pressure has not been reached." *Id.* ¶ 101. Overcharged AC systems are costly to repair. *Id.* ¶ 105.

Based on this alleged feature of Armor All's recharge kits, TSI alleges that Armor All engaged in false advertising when it made the following statements regarding its products:

- "Our kits come with everything you need to recharge your system with no additional tools or equipment," *id.* ¶ 76,
- "All-in-One Kit," *id.* ¶ 77,
- "Easy as 1, 2 . . . Squeeze," *id.* ¶ 77,
- "Extends A/C/ Life," *id.* ¶¶ 78, 80, 84,
- "fast and accurate recharging," *id.* ¶¶ 79, 81,
- "The trigger dispenser and measuring gauge make filling your system to the proper level fast and easy," *id.* ¶ 82,
- "fast, easy and accurate recharging," *id.* ¶ 83,
- "Protects System," *id.* ¶ 84,
- "easy, convenient, and accurate recharging," *id.* ¶ 85,
- "Bringing back the cool to your car's air-conditioning is a breeze with A/C Pro," *id.* ¶ 86,
- "just three easy steps," *id.* ¶ 87.

TSI alleges that these statements are "literally false and likely to mislead and confuse consumers because the low-pressure-measuring gauges which are included in these recharge kits do not

provide accurate or usable readings for cars with BLOCK or TXV valves," such that "use of these recharge kits is thus likely to lead to overcharging and the failure of the AC systems." *Id.* ¶ 63. Armor All argues that these statements are all non-actionable because they "are clearly subjective in nature and thus cannot qualify as provable statements that could support a false advertising claim." Mot. to Dismiss, ECF No. 102 at 23.[2]

I agree that the some of these statements—such as "Extends A/C Life," "Protects [A/C] System," "just three easy steps," and "Easy as 1, 2 . . . Squeeze"—constitute non-actionable puffery, as does Armor All's use of the terms "fast," easy," "convenient," and "a breeze." These statements use "broad, vague, and commendatory language" and assert a "general claim of superiority . . . that is so vague that it can be understood as nothing more than a mere expression of opinion." *Verizon Directories*, 309 F. Supp. 2d at 405 (quoting *Castrol*, 987 F.2d at 945 and *Pizza Hut*, 227 F.3d at 497); *Avola*, 991 F. Supp. 2d at 392 ("the 'vagueness' factor applies when the disputed statements fail to describe a specific characteristic of the product on which the claims are based. . . . General descriptions about the product—*e.g.*, high-speed internet service as the 'fastest, easiest way to get online'; a truck as the 'most dependable, long-lasting'; or an insurance policy as providing that its policyholders are 'in Good Hands'—can constitute puffery."); *see also* Lipton, 71 F.3d at 474 (finding that assertions that defendant conducted "thorough" research are puffery); *Weight Watchers*, 2019 WL 3890139, at *5 (finding that statements promoting a "healthier you" and "tout[ing] the prospect of losing weight 'for good' through 'behavior change tools'" are non-actionable puffery); *Stokely-Van Camp, Inc. v. Coca-*

---

[2] Armor All also argues that the addition of claims related to these statements in the Second Amended Complaint "blatantly exceeded [TSI's] narrow leave to amend." Mot. to Dismiss, ECF No. 102 at 22–23. Armor All filed a motion to strike, ECF No. 103, based on this same argument. The Court denied that motion to strike on the record during a telephonic status conference on March 12, 2019. Order, ECF No. 113; *see* Tr., ECF No. 148. For the same reasons expressed during that conference, the Court considers the false advertising claims regarding these statements properly alleged in the Second Amended Complaint.

*Cola Co.*, 646 F. Supp. 2d 510, 526 (S.D.N.Y. 2009) ("[A]dvertising terms like 'complete' are puffery.").  These Armor All statements are all sufficiently broad and vague that they are not factually provable and are distinguishable from specific statements about "factually superior attributes." *E.g.*, *EP Henry Corp. v. Cambridge Pavers, Inc.*, 383 F. Supp. 3d 343, 351–52 (D.N.J. 2019) (finding statements about a "unique manufacturing process," a "proprietary formula," a "slip-resistant walking surface" that is "safer" and "stain resistant" to be actionable because they are "statements of fact that explicitly address attributes . . . that are important to customers and, furthermore, are potentially measurable"). Because these statements do not address any specific or measurable attributes of Armor All's recharge kits, they are not actionable as false advertising.

The other statements regarding the recharge kits, however, do address specific attributes. The statements "All-in-One Kit" and "Come with everything you need to recharge your system with no additional tools or equipment" are more specific and do make a factual statement—by implication and literally, respectively—that "no additional tools" are needed to recharge an AC system. Based on TSI's allegations, these statements are false because "[a]dditional tools and equipment are required to safely recharge AC systems with BLOCK or TXV valves when using [Armor All's] low-pressure-measuring gauge recharge kits, *e.g.* tools which measure[] the vent temperature of the air in the passenger compartment to target the correct fill." SAC, ECF No. 96, ¶ 93. TSI has thus plausibly alleged that these statements are literally false or likely to mislead for consumers with BLOCK or TXV valves on their cars.

Similarly, the statements that Armor All kits provide "accurate" recharging and "make filling your system to the *proper level* fast and easy" make statements of measurable fact (emphasis supplied). These statements address a specific attribute that can be proven true or

false. TSI alleges that these statements are literally false because, for cars with BLOCK or TSV valves, a gauge measuring only low-side pressure will "lead to unusable and inaccurate pressure readings." SAC, ECF No. 96 ¶ 91. TSI has sufficiently alleged that at least some of the statements regarding Armor All's recharge kits constitute false advertising.

### 2. *Refrigerant Formula Statements*

TSI also alleges false advertising with respect to a second category of statements concerning Armor All's refrigerant formula products. Armor All sells refrigerant products under the names "A/C Pro Professional Formula" and "A/C Pro Ultra Synthetic Formula," which contain lubricants and additives in addition to refrigerant. SAC, ECF No. 96 ¶ 65. TSI states in its complaint that other AC recharging products sold in the United States contain only refrigerant (R-134a), *id.* ¶ 180, and that a can containing only refrigerant will create colder air than a can of equal volume that contains refrigerant along with lubricant and/or additives. *Id.* ¶ 122; *see also id.* ¶ 128 (explaining that additives "do not boost the cooling provided by the AC system; rather, they diminish it by reducing the available volume in the product for straight refrigerant).

Because the products with only refrigerant will produce colder air than products—like Armor All's—that contain additives, TSI alleges that the following advertising statements regarding Armor All refrigerant products are false:

- "#1 Rated Coldest Air" and "#1 Coldest Air," *id.* ¶ 110,
- "Formula with 2X cooling boosters vs. the next leading brand of AC recharge kits: independently tested to deliver the coldest air from your vehicle's AC," *id.* ¶ 111,
- "A/C PRO ultra synthetic refrigerant kit features a specially designed formula that helps a vehicle's A/C produce the coldest air," *id.* ¶ 112.

TSI argues that these statements "are actionable because they are specific, factual assertions about a measurable characteristic (*i.e.*, temperature) that may be proven true or false." Opp'n Br., ECF No. 104 at 31. Armor All argues that these statements, too, are non-actionable puffery. Mot.

23

to Dismiss, ECF No. 102 at 21–22. In particular, Armor All argues that many courts have found "referring to a product or service as '#1' with regard to an industry or quality" to be puffery. *Id.* at 21.

None of these statements "fall[s] comfortably" within the category of mere puffery, *Weight Watchers*, 2019 WL 3890139, at *5, so I deny the motion to dismiss the false advertising claims regarding these statements. As Armor All notes, many courts have found "#1" advertising statements to be non-actionable "when it is unclear how a property should be measured." Mot. to Dismiss, ECF No. 102 at 21–22; *e.g.*, *Trex Co., Inc. v. CPG Int'l LLC*, No. 5:17-CV-00005, 2017 WL 3272013, at *7 (W.D. Va. Aug. 1, 2017) (granting a motion to dismiss as to several "#1 statements" because they constituted puffery). Armor All's statements are distinguishable, however, because they are not a "general statement of superiority"—such as "Houston's #1 Bridal Show" or "#1 FSBO destination" or "Voted #1 Best Show in Vegas"—but rather a statement of superiority in a specific, measurable attribute. *Id.* at *6 (citing *Bridal Expo, Inc. v. van Florestein*, No. 4:08-cv-03777, 2009 WL 255862, at *7 (S.D. Tex. Feb. 3, 2009); *Home Show Tours, Inc. v. Quad City Virtual, Inc.*, 827 F. Supp. 2d 924, 939 (S.D. Iowa 2011); *Hacket v. Feeney*, No. 2:09-cv-02075, 2011 WL 4007531, at *4 (D. Nev. Sept. 8, 2011)). Armor All states superiority only in temperature, which can be measured and proven true or false.

Courts have also been skeptical of superlatives in creating actionable statements of false advertising. *In re Toshiba Am. HD DVD Mktg. & Sales Practices Litig.*, 2009 WL 2940081, at *9 (D.N.J. Sept. 11, 2009) ("Whether something is the 'best' is highly subjective, is almost always a matter of opinion, and is the type of statement regularly made by companies in promoting their products."); *see, e.g.*, *Gillette Co. v. Wilkinson Sword, Inc.*, No. 89 CIV. 3586, 1989 WL 82453, at *4 (S.D.N.Y. July 6, 1989) (finding that advertising a razor as providing the

"smoothest, most comfortable shave" and "the most extraordinary shave" to be mere puffery);

*EP Henry Corp. v. Cambridge Pavers, Inc.*, 383 F. Supp. 3d 343, 350 (D.N.J. 2019) (finding

statements that paving product was "a step above the rest" to be puffery). Among these

superlatives, however, Armor All's statements are again distinguishable. Armor All's claims that

its refrigerant products produce the "coldest air" or have "2Xs the cooling boosters" are

"objectively verifiable, performance-based." *EP Henry Corp.*, 383 F. Supp. 3d at 350; *see also*

*Castrol*, 987 F.2d at 946 (claim of "longer engine life and better engine protection" is "both

specific and measurable"); *Am. Home Prods. Corp. v. Johnson & Johnson*, 654 F. Supp. 568

(S.D.N.Y. 1987) (treating Tylenol's advertising statement that "[y]ou can't buy a more potent

pain reliever without a prescription" as actionable). The statements that Armor All's products

have been "independently tested to deliver the coldest air from your vehicle" and contain "a

specially designed formula that helps a vehicle's A/C produce the coldest air" state even more

specifics; claims of testing are typically actionable. *Weight Watchers*, 2019 WL 3890139, at *10

(finding statements that a weight-loss method was "proven effective" cannot be "resolve[d] at

the pleading stage"); *Castrol*, 987 F.2d at 946 (finding that defendant's "reference to testing"

defeats assertion that "claims constitute only puffery").

    As the Third Circuit pointed out, statements of superiority in a specific, measurable

attribute must be actionable; otherwise, "the Ford Motor Company could claim that its Pinto

model offers the best rear end protection as long as no competitor is specifically named. Such a

result is impractical and illogical." *Castrol*, 987 F.2d at 946.  When all reasonable inferences are

drawn in favor of TSI, Armor All's claims that air is the "coldest" is not mere puffery, and

TSI has alleged that they are objectively false. TSI has sufficiently alleged false advertising with

respect to at least some of the identified statements, so I deny the motion to dismiss with respect to Count Three.

### D. Antitrust Claims (Counts Four, Five, and Six)

TSI brings three claims under the Sherman Act—restraint of trade in violation of Section 1 and monopolization and attempted monopolization in violation of Section 2. The complaint describes agreements between Armor All and various retailers, such as Advance Auto Parts and PepBoys, to display and sell only Armor All products in retail locations; TSI argues that these agreements diminished its sales, harmed consumers through higher prices and diminished choice, and harmed competition in the AC recharge kit market. SAC, ECF No. 96 ¶¶ 320–22. TSI also alleges that Armor All used these exclusive agreements, along with a "campaign of threats, intimidation, and bad faith litigation," to remove TSI as a competitor. *Id.* ¶ 242. Armor All moves to dismiss all TSI's antitrust claims based on three alleged shortcomings in the Second Amended Complaint: failure to define the relevant market, failure to allege an antitrust injury, and failure to allege unlawful, anticompetitive conduct. Mot. to Dismiss, ECF No. 102 at 25–31.

#### 1. *Relevant Market*

To support its antitrust claims, TSI must plead a relevant market within which the defendant's alleged restraint on competition or abuse of monopoly power is felt. "The relevant market is defined as all products 'reasonably interchangeable by consumers for the same purposes,' because the ability of consumers to switch to a substitute restrains a firm's ability to raise prices above the competitive level." *Geneva Pharms. Tech. Corp. v. Barr Labs. Inc.*, 386 F.3d 485, 496 (2d Cir. 2004). Courts within the Second Circuit often use a "hypothetical monopolist test," focused on reasonable interchangeability or cross-elasticity of demand among products, to test a proposed definition of a relevant market:

> The Court . . . imagin[es] that a hypothetical monopolist has imposed a small but significant non-transitory increase in price ("SSNIP") within the proposed market. If the hypothetical monopolist can impose this SSNIP without losing so many sales to other products as to render the SSNIP unprofitable, then the proposed market is the relevant market. By contrast, if consumers are able and inclined to switch away from the products in the proposed market in sufficiently high numbers to render the SSNIP unprofitable, then the proposed market definition is likely too narrow and should be expanded.

*United States v. Am. Express Co.*, 838 F.3d 179, 199 (2d Cir. 2016), *aff'd sub nom. Ohio v. Am. Express Co.*, 138 S. Ct. 2274 (2018). Determining reasonable interchangeability and defining the relevant market eventually "require[] a fact-intensive inquiry that includes consideration of such practical indicia as . . . the product's peculiar characteristics and uses, . . . distinct customers, distinct prices, sensitivity to price changes, and specialized vendors." *Geneva Pharms.*, 386 F.3d at 496. At the pleading stage, however, dismissal can be appropriate where plaintiff "defined the relevant market in an inconsistent and facially implausible way." *Cinema Vill. Cinemart, Inc. v. Regal Entm't Grp.*, No. 15-CV-05488 (RJS), 2016 WL 5719790, at *6 (S.D.N.Y. Sept. 29, 2016), *aff'd*, 708 F. App'x 29 (2d Cir. 2017).

In the Second Amended Complaint, TSI defines the relevant market as "value-added automotive AC recharge kits" sold in the United States and its territories. SAC, ECF No. 96 ¶¶ 263–64; *id.* ¶ 181 (defining "value-added" kits as those that include refrigerant along with "some combination of additives, lubricants, hoses, gauges, or other tools"). Armor All argues that TSI's "description of this narrow market is implausible on its face, glossing over at least three sets of competitors that necessarily expand the relevant market." Mot. to Dismiss, ECF No. 102 at 26 (pointing to professional help and non-value-added refrigerant products as reasonable substitutes for value-added recharge kits). I disagree. The complaint alleges, and I accept as true, that value-added kits have peculiar characteristics and uses separate from other products (or professional services) in the larger AC recharging sector. *See* SAC, ECF No. 96 ¶¶ 183–84 (alleging that

"cans of non-value-added refrigerant are not close substitutes to value-added automotive AC recharge kits," since the non-value-added cans would require "separate equipment to install" and do not "allow [do-it-yourself] users to detect and mitigate the underlying causes of refrigerant loss in aging automotive AC systems"). TSI also points to a "significant price difference between value-added automotive AC recharge kits and non-value-added refrigerant," and notes that "[i]in the face of [a] SSNIP [small but significant and non-transitory increase in price for value-added kits], sales of value-added automotive AC recharge kits in 2018 actually increased," indicating that "the products from these two market segments are not cross-substitutable." *Id.* ¶¶ 185–89. It is reasonable to infer from these allegations that the price of non-value-added refrigerant did not increase during the same period. TSI also alleges that other sellers in the non-value-added market did not provide competitive pressure on Armor All in the value-added market, while the entry of TSI in the value-added market did exert downward pricing pressure, leading Armor All to lower its prices. *Id.* ¶¶ 203, 213. These factual allegations make it plausible that the relevant market is as TSI states: the details provided regarding product differences and price differences show a lack of cross-elasticity of demand with products outside value-added refrigerant, and the allegations regarding the effect of Armor All's price increases on its sales satisfy the hypothetical monopolist test. TSI plausibly pleads a relevant market.

### 2. *Antitrust Injury*

To satisfy both standing requirements and substantive elements of antitrust law, plaintiffs must show an "antitrust injury," which is an "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977). It is axiomatic that "what the antitrust laws are designed to protect is competitive conduct, not individual competitors." *Virgin Atl. Airways*

Case 3:17-cv-01131-MPS   Document 151   Filed 09/23/19   Page 29 of 36

*Ltd. v. British Airways PLC*, 257 F.3d 256, 259 (2d Cir. 2001). Antitrust injuries, therefore, include factors "like reduced output, increased prices and decreased quality." *Id.* at 264.

Armor All argues that TSI's allegations are "insufficient to establish an actual antitrust injury because [they] fail[] to describe harm to the market." Mot. to Dismiss, ECF No. 102 at 28–29. The motion to dismiss claims that "TSI offers nothing to explain how the market has been [a]ffected, how other competitors have fared, what portion of the market has excluded TSI or its competitors, or how prices or quality have been [a]ffected in the market as [a] whole" as a result of Armor All's alleged anticompetitive practices. *Id.* at 29. On the contrary, TSI alleges that "at least three of the six retailers that comprise 80% of the market for value-added auto AC recharge kits have agreed not to carry TSI's auto AC recharge products due to anticompetitive agreements made with [Armor All]," SAC, ECF No. 96 ¶ 234, that Armor All has been "able to raise prices for its own value-added automotive AC recharge kits" since making agreements with retailers, *id.* ¶ 273, that "consumers shopping in at least three of the six largest retailers in the United States for automotive products have faced diminished choices," *id.* ¶ 276, and that "at least a subset of consumers has been denied access to TSI's innovations such as its 'Smart Clip' technology," *id.* ¶ 277. Armor All rightly points out that TSI's allegations regarding consumer prices are conclusory and contradictory: TSI does not plead that Armor All has any influence or control over the eventual retail prices of its products, and indeed TSI alleges that Armor All secured exclusive agreements with retailers by offering *discounts* on its products. *See* Reply Br., ECF No. 106 at 13. However, even if TSI's allegation of increased consumer prices is implausible, the Second Amended Complaint alleges other harms to competition such as reduced consumer choice and reduced product quality.

### 3.  *Unlawful, Anticompetitive Conduct*

Finally, Armor All argues that TSI has failed to allege conduct that violates either Section 1 or Section 2 of the Sherman Act.

#### a)   Section 1 Claim: Anticompetitive Vertical Restraint

Section 1 of the Sherman Act states that "[e]very contract . . . or conspiracy, in restraint of trade . . . is declared to be illegal." 15 U.S.C. § 1. To establish a Section 1 claim, "a plaintiff must present evidence of a combination or some form of concerted action between at least two legally distinct economic entities in the form of a conscious commitment to a common scheme designed to achieve an unlawful objective." *Anderson News, L.L.C. v. Am. Media, Inc.*, 899 F.3d 87, 97 (2d Cir. 2018) ("*Anderson III*"). "At the pleading stage, a complaint claiming conspiracy, to be plausible, must plead enough factual matter (taken as true) to suggest that an agreement was made." *Anderson News, L.L.C. v. Am. Media, Inc.,* 680 F.3d 162, 184 (2d Cir. 2012) ("*Anderson II*"). "Agreements within the scope of § 1 may be . . . 'vertical,' *i.e.*, combinations of persons at different levels of the market structure, *e.g.*, manufacturers and distributors." *Id.* at 182. Vertical agreements "that do not involve price-fixing are generally judged under the rule of reason, which requires a weighing of the relevant circumstances of a case to decide whether a restrictive practice constitutes an unreasonable restraint on competition." *Id.* at 183.

Armor All first argues that TSI failed to plead a conspiracy within the meaning of § 1 because "there is no allegation that any retailer desired to exclude TSI." Mot. to Dismiss, ECF No. 102 at 31. But Armor All conflates the element of agreement with the question whether that agreement constitutes an "unreasonable restraint on competition." It is enough to plead that Armor All and the retailers "had an intent to adhere to an agreement" that restricted their dealing; proof of "specific intent to restrain trade is not required." *Geneva Pharms. Tech. Corp. v. Barr*

*Labs. Inc.*, 386 F.3d 485, 507 (2d Cir. 2004); *see also Dickson v. Microsoft Corp.*, 309 F.3d 193, 205 (4th Cir. 2002) ("The co-conspirators need not share the same motive or goal."). The complaint pleads an express, "multi-year" agreement between Armor All and the retailer Advance Auto to pay "cash remuneration, product discounts, and/or some other value in exchange for Advance Auto's agreement to renege on its agreement with TSI and refuse to allocate shelf space to TSI's products." SAC, ECF No. 96 ¶¶ 224–25; *see also id.* ¶¶ 232–33 (alleging a similar agreement between Armor All and retailer Pep Boys where Pep Boys "received a payment from [Armor All]," where "half was to keep TSI's competing value-added auto AC recharge products off Pep Boys' shelves"). TSI clearly alleges that agreements were formed within the meaning of § 1.

Beyond pleading the existence of an exclusive agreement, however, TSI does need to plead that the agreement violated the rule of reason: that it caused substantial harm to competition that outweighed otherwise competitive activity. *Anderson II*, 680 F.3d at 183. Exclusive agreements—like the ones alleged with Auto Advance and Pep Boys—are not anticompetitive *per se*; plaintiff's burden in asserting a § 1 claim based on such an agreement "necessarily involves an inquiry into the actual effect of the exclusive contract on competition." *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 29 (1984); *see Bookhouse of Stuyvesant Plaza, Inc. v. Amazon.com, Inc.*, 985 F Supp. 2d 612, 619–20 (S.D.N.Y. 2013) (requiring proof that exclusive arrangement was "unreasonable"). The plaintiff bears an initial burden of showing that the defendant's conduct "had an actual adverse effect on competition as a whole in the relevant market." *Geneva Pharms.*, 386 F.3d at 506–07.

For the same reasons discussed above, TSI does adequately allege that Armor All's exclusive contracts with at least Auto Advance and Pep Boys caused harm to the relevant market

in the form of reduced competition, reduced consumer choice, and lower quality products. *See, e.g.*, SAC, ECF No. 96 ¶ 234 (alleging upon information and belief that "at least three of the six retailers that comprise 80% of the market for value-added auto AC recharge kits have agreed not to carry TSI's auto AC recharge products due to anticompetitive agreements made with [Armor All]"). As the litigation progresses, Armor All can certainly "offer evidence of the pro-competitive effects of their agreement" and argue that, on balance, the agreements tend to promote competition. *Geneva Pharms.*, 386 F.3d at 507. But at this stage, TSI has met its initial burden of alleging that the contracts between Armor All and the retailers had an "actual adverse effect on competition as a whole in the relevant market," *id.* at 506–07, and has therefore stated a claim under Section 1.

b) Section 2 Claims: Monopolization and Attempted Monopolization

TSI also makes claims under Section 2, which provides that "[e]very person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce . . . shall be deemed guilty of a felony." 15 U.S.C. § 2.[3] "To establish a violation of § 2, plaintiffs must prove that defendants possessed monopoly power, and willfully acquired or maintained that power in the relevant market." *Geneva Pharms.*, 386 F.3d at 495 (citing *United States v. Grinnell Corp.*, 384 U.S. 563, 570–71 (1966)). Monopoly power is defined as "the power to control prices or exclude competition," and can be proven either directly "through evidence of control over prices or the exclusion of competition" or inferred based on market share. *Geneva Pharms.*, 386 F.3d at 500. "The willful acquisition or maintenance of monopoly power is to be distinguished from growth or

---

[3] The Clayton Act, 15 U.S.C. § 15, allows "any person . . . injured in his business or property by reason of" any violations of the Sherman Act or other antitrust laws to sue for treble damages plus attorney's fees.

development that is the result of superior product, business acumen or historical accident." *Id.* at 495. The second element of "willful acquisition or maintenance" is satisfied if the defendant "use[s] monopoly power to foreclose competition, to gain a competitive advantage, or to destroy a competitor." *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 482–83 (1992). Attempted monopolization requires proof "(1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power." *Spectrum Sports v. McQuillan*, 506 U.S. 447, 457 (1993).

Armor All moves to dismiss TSI's monopolization claims (Counts Five and Six) on the grounds that TSI's complaint "fails to plead how each of the defendant companies possessed market power on its own" and "does not allege anticompetitive activity beyond the limited, exclusive contracts alleged." Mot. to Dismiss, ECF No. 102 at 32. Based on these shortcomings, Armor All argues, TSI did not plead monopoly power or any willful maintenance of such power. Armor All's first argument misunderstands the law regarding "shared monopoly" power. As TSI points out, courts do look to the collective market share of parent companies and their subsidiaries in § 2 analyses. *See, e.g.*, *Grinnell Corp.*, 384 U.S. at 567, 571 (noting that "the three companies that Grinnell controls have over 87% of the business" and finding that this combined market share "leaves no doubt that the congeries of these defendants have monopoly power"). The cases Armor All cites address the aggregation of *unrelated* companies' market shares, which courts have disapproved. *E.g.*, *H.L. Hayden Co. of New York v. Siemens Med. Sys., Inc.*, 879 F.2d 1005, 1018 (2d Cir. 1989). TSI alleges that Spectrum Brands Holdings, Inc. wholly owns the Armor All/STP Products Company, SAC, ECF No. 96 ¶ 3, that Defendant Guy Andrysick served as both President of Armor All/STP Products Company and as General Manager of Spectrum Brands' Global Auto Care product segment, *id.* ¶ 5, that the Armor All/STP Products Company

33

and Spectrum Brands together sell the value-added, do-it-yourself automotive refrigerant products at issue in the complaint, *id.* ¶ 55, and that those products enjoy an "estimated market share of 88% in 2017," *id.* ¶ 193. These allegations allow a reasonable inference of monopoly power. *Grinnell Corp.*, 384 U.S. at 571 (finding that 87% of the market is a monopoly); *American Tobacco Co. v. United States*, 328 U.S. 781, 797 (1946) (finding a "substantial monopoly, amounting to . . . over 80% of the field of comparable cigarettes, and with the opposition confined to several small competitors").

Armor All's second argument on the § 2 claims mischaracterizes the Second Amended Complaint. In fact, the Second Amended Complaint does allege anticompetitive activity beyond the exclusive contracts: TSI alleges that Armor All has conducted a "campaign of threats, intimidation, and bad faith litigation," pointing specifically to allegedly frivolous accusations of patent infringement in an "attempt to create a cloud over TSI's lawful right to sell its AVALANCHE products," "keep TSI out of the market," and "caus[e] further barriers to market entry for TSI." SAC, ECF No. 96 ¶¶ 242–53. These allegations, along with the primary allegation in the complaint of exclusive contracts with retailers, sufficiently plead willful maintenance of monopoly power by "foreclos[ing] competition and destroy[ing] a competitor. *Eastman Kodak*, 504 U.S. at 482–83.

While Armor All does not directly address TSI's attempted monopolization claim, that claim survives as well. TSI alleged anticompetitive conduct with intent to monopolize or maintain monopoly. *Spectrum Sports*, 506 U.S. at 456. And by pleading that Armor All holds an 88% market share, TSI adequately alleges that there is a dangerous probability of achieving monopoly power. *Id.* The motion to dismiss Counts Five and Six are therefore denied.

**E.  CUTPA Claim (Count Seven)**

Finally, TSI brings a claim under the Connecticut Unfair Trade Practices Act ("CUTPA"). Conn. Gen. Stat. § 42-110a *et seq*. CUTPA prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce," § 42-110b, and provides a private right of action to "[a]ny person who suffers any ascertainable loss . . . as a result of the use or employment of a method, act or practice prohibited by section 42-110b," § 42-110g. Count Seven of the Second Amended Complaint alleges that Armor All violated CUTPA by (1) "engaging in keyword advertising in a manner which is likely to cause consumer confusion", (2) making "false or misleading statements of fact regarding their A/C Pro Professional Formula and A/C Pro Ultra Synthetic Formula refrigerants," (3) making "false or misleading statements of fact regarding their . . . low-pressure-measuring-gauge recharge kits," (4) and "pursu[ing] anticompetitive agreements with retailers." SAC, ECF No 96 ¶¶ 339–44. TSI alleges that these acts constitute unfair methods of competition, offend public policy, and are "immoral, unethical, oppressive, and/or unscrupulous." *Id.* ¶¶ 345–47. Finally, Count Seven incorporates prior references in the complaint to TSI's injuries stemming from Armor All's conduct and additionally states that "[c]onsumers are substantially injured" by these acts. *Id.* ¶¶ 337, 348.

Armor All moves to dismiss this count based only on the argument that "TSI has failed to allege plausible facts sufficient to maintain Counts 1-6 and so correspondingly has not identified conduct that violates any statutory or common law rights." Mot. to Dismiss, ECF No. 102 at 33. Armor All also incorrectly states that TSI has "failed to plead that this conduct 'offends public policy' or that it is 'immoral, unethical, oppressive or unscrupulous.'" *Id.* Because I find that TSI *has* alleged plausible facts sufficient to maintain Counts 1-6, and because TSI does, in fact, plead

that Armor All's conduct violates federal statutes and thus public policy, I deny the motion to dismiss Count Seven.

## V.      Conclusion

For the foregoing reasons, Armor All's motion to dismiss, ECF No. 102, is DENIED as to all Counts.

_____/s/_____
Michael P. Shea, U.S.D.J.

Dated:          Hartford, Connecticut
                September 23, 2019